Miscellaneous Docket No. _____

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## IN RE YAHOO HOLDINGS, INC.

*Petitioner*.

*On Petition for a Writ of Mandamus to the U.S. District Court
for the Eastern District of New York in Case No. 1:16-cv-01557-ILG-SMG
Judge I. Leo Glasser*

## YAHOO HOLDINGS, INC.'S PETITION FOR A WRIT OF MANDAMUS

Charles K. Verhoeven
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
415-875-6600 telephone
415-875-6700 facsimile

Miles D. Freeman
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
213-443-3000 telephone
213-443-3100 facsimile

*Attorneys for Yahoo Holdings, Inc.*

October 20, 2017

Patrick D. Curran
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
212-849-7000 telephone
212-849-7100 facsimile

# CERTIFICATE OF INTEREST FOR YAHOO! INC.

Pursuant to Federal Circuit Rule 47.4(a) and Federal Rule of Appellate Procedure 26.1, counsel for Petitioner Yahoo Holdings, Inc. certifies the following:

1.     The full name of every party represented by the undersigned is Yahoo Holdings, Inc.

2.     There are no other real parties in interest represented by the undersigned.

3.     Verizon Communications, Inc., a publicly traded company, has more than 10% ownership of Yahoo Holdings, Inc.  No publicly held company owns 10% or more of Verizon Communications, Inc.'s stock.

4.     The names of all law firms and the partners or associates that appeared for the party now represented by the undersigned in the trial court or agency, or are expected to appear in this Court, are:

Quinn Emanuel Urquhart & Sullivan LLP:  Charles K. Verhoeven, Patrick D. Curran, Jennifer Kash, Brian E. Mack, John T. McKee, Miles D. Freeman

5.     Counsel is unaware of any cases in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this appeal.


DATED:  October 20, 2017                    /s/ *Charles K. Verhoeven*
                                            Attorneys for Yahoo Holdings, Inc.

ii

# TABLE OF CONTENTS

**Page**

RELIEF SOUGHT ...................................................................................3

ISSUES PRESENTED..............................................................................3

STATEMENT OF FACTS ........................................................................4

    A.    Plaintiffs File Suit In The Eastern District Of New York And Yahoo Reserves Its Right To Challenge Venue Based On *TC Heartland*...................................................................................4

    B.    The Supreme Court Changes The Controlling Law On Venue ...........5

    C.    Yahoo Moves To Dismiss For Improper Venue Under *TC Heartland*...................................................................................6

    D.    The District Court Orally Denies Yahoo's Venue Motion ..................7

STANDARD OF REVIEW ........................................................................8

REASONS WHY THE WRIT SHOULD ISSUE ....................................9

I.    THE RIGHT TO A WRIT IS CLEAR AND INDISPUTABLE .................12

    A.    The District Court Clearly Abused Its Discretion By Finding That *TC Heartland* Was Not A Change In The Law .........................12

    B.    The District Court Clearly Abused Its Discretion By Finding That Yahoo Waived Its Right To Challenge Venue ..........................21

        1.    The district court failed to make findings or rulings on the application of Rule 12(h). ........................................................21

        2.    The district court clearly erred in holding that Yahoo waived venue because it "should have known" *Stonite* and *Fourco* were controlling law....................................................24

II.    ISSUANCE OF A WRIT IS APPROPRIATE HERE .................................27

III.    YAHOO HAS NO OTHER ADEQUATE MEANS OF RELIEF...............29

CONCLUSION .......................................................................................30

# TABLE OF AUTHORITIES

Page

## CASES

*Caldwell-Baker Co. v. Southern Ill. Railcar Co.*,
　225 F. Supp. 2d 1243 (D. Kan. 2002) .................................................. 23, 24

*Chatman-Bey v. Thornburgh*,
　864 F.2d 804 (D.C. Cir. 1988)........................................................9

*Cooter & Gell v. Hartmax Corp.*,
　496 U.S. 384 (1990).....................................................................12

*Custforth, Inc v. LEMM Liquidating Co., LLC*,
　No. 12-cv-1200, 2017 WL 3381816 (D. Minn. Aug. 4, 2017) ...................20

*Engel v. CBS, Inc.*,
　886 F. Supp. 728 (C.D. Cal. 1995) ...............................................13

*GenCorp, Inc. v. Olin Corp.*,
　477 F.3d 368 (6th Cir. 2007) ........................................................9

*Glater v. Eli Lilly Co.*,
　712 F.2d 735 (1st Cir. 1983).....................................................9, 13

*Hartling v. Woodloch Pines, Inc.*,
　No. 97-cv-2587, 1998 WL 575138 (S.D.N.Y. Sept. 8, 1998)......................13

*Hawknet, Ltd. v. Overseas Shipping Agencies*,
　590 F.3d 87 (2d Cir. 2009) ............................................. 10, 12, 26

*Holland v. Big River Minerals Corp.*,
　181 F.3d 597 (4th Cir. 1999) ........................................................9

*Holzsager v. Valley Hosp.*,
　646 F.2d 792 (2d Cir. 1981) ....................................... 9, 12, 13, 20

*Hsin Ten Enterprise USA, Inc. v. Clark Enterprises*,
　138 F. Supp. 2d 449 (S.D.N.Y. 2000) ...........................................18

*In re BP Lubricants USA Inc.*,
　637 F.3d 1307, 1313 (Fed. Cir. 2011) .........................................27

*In re Cray Inc.*,
　No. 2017-129, 2017 WL 4201535 (Fed. Cir. Sept. 21, 2017)......................9

*In re EMC Corp.*,
　677 F.3d 1351 (Fed. Cir. 2012) ...................................................12

*In re Hughes Network Sys., LLC*,
　No. 17-130, 2017 WL 3167522 (Fed. Cir. July 24, 2017) ..........................29

iv

# TABLE OF AUTHORITIES

*(continued)*

**Page**

*In re Nintendo of Am., Inc.*,
No. 17-127, 2017 WL 4581670 (Fed. Cir. July 26, 2017) ...........................28

*In re Queen's Univ. at Kingston*,
820 F.3d 1287 (Fed. Cir. 2016) ...................................................................27

*In re Sea Ray Boats, Inc.*,
No. 2017-124, 2017 WL 2577399 (Fed. Cir. June 9, 2017) ................. 28, 29

*In re Sims*,
534 F.3d 117 (2d Cir. 2008) ...................................................................9, 27

*In re TC Heartland LLC*,
821 F.3d 1339 (Fed. Cir. Apr. 29, 2016) ....................................................18

*In re Techtronic Indus. N. Am., Inc.*,
No. 17-125, 2017 WL 4685333 (Fed. Cir. July 25, 2017) ...........................28

*In re the City of New York*,
607 F.3d 923 (2d Cir. 2010) ...................................................................8, 9

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008) ...................................................................29

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .......................................................................30

*ISA Chicago Wholesale, Inc. v. Swisher Int'l, Inc.*,
No. 08-cv-3461, 2009 WL 971432 (N.D. Ill. Apr. 7, 2009) ................. 22, 25

*Johnson Gas Appliance Co. v. VE Holding Corp.*,
499 U.S. 922 (1991)......................................................................................21

*JPW Industries, Inc. v. Olympia Tools Int'l, Inc.*,
No. 16-cv-3153, 2017 WL 3263215 (M.D. Tenn. July 19, 2017) ........ 22, 25

*Kennedy Krieger Inst., Inc. v. Brundage Mgmt. Co., Inc.*,
No. 14-cv-1680, 2015 WL 926139 (D. Md. Mar. 3, 2015)................... 23, 24

*Koninklijke Philips NV v. AsusTek Comp. Inc.*,
No. 1:15-cv-1125, 2017 WL 3055517 (D. Del. July 19, 2017) ...................28

*Leroy v. Great W. United Corp.*,
443 U.S. 173 (1979)......................................................................................29

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998)........................................................................................30

# TABLE OF AUTHORITIES

*(continued)*

**Page**

*OptoLum, Inc. v. Cree, Inc.*,
  No. 16-cv-3828, 2017 WL 3130642 (D. Ariz. July 24, 2017) .............. 26, 27

*Realtime Data LLC v. Carbonite, Inc.*,
  No. 6:17-cv-121, 2017 WL 3588048 (E.D. Tex. Aug. 21, 2017) ...............28

*Reebok International Ltd. v. TRB Acquisitions LLC*
  No. 16-cv-1618, 2017 WL 3016034 (D. Ore. July 14, 2017) .....................24

*Remley v. Lockheed Martin Corp.*,
  No. 00-cv-2495, 2001 WL 681257 (N.D. Cal. June 4, 2001) .............. 23, 24

*Schlagenhauf v. Holder*,
  379 U.S. 104 (1964).................................................................................27

*Script Security Solutions L.L.C. v. Amazon.com, Inc.*,
  170 F. Supp. 3d 928 (E.D. Tex. 2016) ........................................................18

*Simpson Performance Products, Inc. v. NecksGen, Inc.*,
  No. 16-cv-153, 2017 WL 3616764 (W.D.N.C. Aug. 23, 2017)...................19

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  No. 16-341, 581 U.S.___, 2017 WL 2216934 (May 22, 2017) ........... passim

*TeleSign Corp. v. Twilio Inc.*,
  No. 15-cv-3240, 2015 WL 12765482 (C.D. Cal. Oct. 16, 2015).................18

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
  917 F.2d 1574 (Fed. Cir. 1990) ........................................................... passim

*Westech Aerosol Corp. v. 3M Co.*,
  No. 17-cv-5067, 2017 WL 2671297 (W.D. Wash. June 21, 2017)........ 18, 27

## STATUTORY AUTHORITIES

28 U.S.C. § 1391(b) .........................................................................................4

28 U.S.C. § 1391(c) .........................................................................................4

28 U.S.C. § 1400(b) ......................................................................................4, 5

28 U.S.C. § 1406..............................................................................................6

## RULES AND REGULATIONS

FED. R. CIV. P. 11(b)(2)...............................................................................26

# TABLE OF AUTHORITIES

*(continued)*

**Page**

FED. R. CIV. P. 12(h) ........................................................................ passim

## STATEMENT OF RELATED CASES

No appeals in or from the same civil action or proceeding in the lower court have previously been before the Federal Circuit or any other appellate court.

For 27 years, this Court's decision in *VE Holding v. Johnson Gas Appliance Co.* required that venue for patent infringement actions would lie in any district where personal jurisdiction could be acquired over the defendant. On May 22, 2017, the Supreme Court handed down its decision in *TC Heartland* and changed the venue landscape. No longer would venue be effectively co-extensive with jurisdiction. Now, under Supreme Court law, venue is confined to those districts where either the defendant is incorporated or where the defendant has a regular and established place of business.

Recognizing this significant change in patent venue law, Yahoo moved to dismiss for improper venue. In opposing Yahoo's motion, Plaintiffs conceded that venue in the Eastern District of New York is now improper. Indeed, Yahoo lacks any qualifying connection to that jurisdiction. Instead, Plaintiffs relied solely on the argument that Yahoo waived its right to challenge venue. And the district court subsequently adopted, with little to no analysis of its own, Plaintiffs' erroneous arguments.

The district court committed clear legal error in denying Yahoo's venue motion on the ground of waiver. Waiver does not apply if there is a change in the controlling law. To reach its waiver ruling, the district court ruled that *TC Heartland* did not change the law of venue. The district court also ruled that Yahoo should have known *Fourco* was controlling law, notwithstanding *VE Holding* and its

progeny, and therefore waived its venue objection by not asserting it in its answer, before *TC Heartland* had been decided.

The district court's rulings are legal errors worthy of mandamus. It cannot seriously be disputed that *TC Heartland* changed the law on venue. For 27 years this Court, and district courts nationwide, have followed *VE Holding*. The Supreme Court's reversal of *VE Holding* changed the meaning of "resides" from "personal jurisdiction" to "state of incorporation," thus changing the law.

The district court's waiver ruling is clear error as well. Yahoo expressly provided notice in its Answer of the reservation of its right to challenge venue based specifically on the upcoming *TC Heartland* case. In finding waiver, the district court erred by failing to address Rule 12(h) and instead holding that Yahoo should have known that *Fourco* was "then controlling law." Both of the district court's bases are significant errors worthy of mandamus.

Mandamus is further appropriate in this case because district courts around the country are split as to whether *TC Heartland* constituted a change in the law sufficient to avoid waiver. More than a dozen district courts have correctly found that *TC Heartland* is a change in the law sufficient to avoid waiver and one member of this Court has stated that "there is little doubt that the Court's decision in *TC Heartland* . . . was a change in the law of venue." Despite this, the district court here, and many others, have reached a contradictory conclusion, a conclusion that

every practitioner knows is a fiction. This Court should grant mandamus to settle this conflict among the district courts.

This case also represents an appropriate vehicle to settle this question. Unlike other mandamus petitions to reach this Court in the wake of *TC Heartland*, this case is not close to trial. No trial date has been set, discovery largely has not commenced, and substantive proceedings, such as the claim construction hearing, are still months away. Furthermore, unlike other cases, the parties here agree that there can be no claim that the Eastern District of New York is a proper venue for suit against Yahoo post-*TC Heartland*. Accordingly, this case presents the narrow questions of whether *TC Heartland* changed the law of venue, and whether a defendant, who failed to contest venue when *VE Holding* was binding law, waived its ability to later challenge venue based on *TC Heartland*.

## RELIEF SOUGHT

Yahoo respectfully petitions for a writ of mandamus directing the District Court for the Eastern District of New York to vacate its order denying Yahoo's Motion to Dismiss, and to order the case be dismissed for lack of proper venue.

## ISSUES PRESENTED

1.     Did the district court clearly abuse its discretion by finding that *TC Heartland* did not constitute a change in the law where both parties agreed that, after *TC Heartland,* venue was no longer proper?

3

2.    Did the district court clearly abuse its discretion by finding that Yahoo had waived its right to challenge venue where both parties agreed that, after *TC Heartland,* venue was improper?

## STATEMENT OF FACTS

### A.    Plaintiffs File Suit In The Eastern District Of New York And Yahoo Reserves Its Right To Challenge Venue Based On *TC Heartland*

The Plaintiffs AlmondNet, Inc., Datonics, LLC, and Intent IQ, LLC (collectively "Plaintiffs") filed a Complaint against Defendant Yahoo! Inc. ("Yahoo") in the Eastern District of New York alleging infringement of 10 patents. Plaintiffs' Complaint alleged that Yahoo's advertising technology infringes more than 140 patent claims from these 10 patents.  Appx0015.

On July 11, 2016, Yahoo filed a *Twombly* motion, seeking dismissal due to the lack of any detail in the infringement averments of Plaintiffs' Complaint.  On December 13, 2016, the parties reached an agreement whereby Yahoo voluntarily withdrew its Motion to Dismiss prior to any ruling by the Court.  Appx0125.

Yahoo then filed its Answer to Plaintiff's Complaint on January 20, 2017.  Appx0030.  With regard to Plaintiffs' venue allegations, Yahoo responded:

> This paragraph contains a legal conclusion. Yahoo admits that venue exists in this district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b). However, *Yahoo reserves the right to challenge venue based upon any change in law, including the Supreme Court's upcoming decision in TC Heartland LLC v. Kraft Foods Group Brands LLC,*

4

> *No. 16-341.* Yahoo denies the remaining allegations of
> this paragraph.

Appx0031 (emphasis added). Thus, although Yahoo conditionally admitted venue

was proper under the then-controlling law of *VE Holding* and its progeny, Yahoo

expressly noted the *TC Heartland* case and expressly reserved "the right to challenge

venue" once the Supreme Court made its ruling

A scheduling conference took place on September 29, 2016. Discovery has

largely yet to begin. No depositions have taken place and only minimal written

discovery has been exchanged. Appx0123. A claim construction hearing has been

set for January 26, 2018. *Id.* No further dates have been set.

## B.    The Supreme Court Changes The Controlling Law On Venue

On December 14, 2016, while this case was pending before the district court,

the Supreme Court granted certiorari in *TC Heartland v. Kraft Food Group Brands*

to review this Court's long-standing interpretation of 28 U.S.C. § 1400(b). In *TC*

*Heartland*, the plaintiff had filed suit in the District of Delaware alleging

infringement of its patents by Kraft, an entity incorporated and having its principle

place of business in the state of Indiana. No. 16-341, 581 U.S.___, 2017 WL

2216934, at *3 (May 22, 2017) (hereinafter "*TC Heartland*"). Kraft moved to

dismiss under Rule 12(b)(3) because it neither "resided in" nor had a "regular and

established place of business" in the District of Delaware. *Id.* The district court

denied Kraft's motion and this Court declined to issue a writ of mandamus based on

5

its holding in *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990) that a defendant "resided" in any district where personal jurisdiction existed. *TC Heartland,* No. 16-341, 2017 WL 2216934, at *3, *6.

On May 22, 2017, the Supreme Court reversed the denial of mandamus relief. The Supreme Court rejected this Court's long-standing interpretation of the word "reside" as any district where personal jurisdiction could be established, and instead found that "as applied to domestic corporations, 'residence' in § 1400(b) refers only to the [defendant's] State of incorporation." *Id.,* at *8.  In so doing, the Supreme Court made clear that it was expressly reversing the "reaffirm[ance of] *VE Holding*." *Id.,* at *6-7.  This decision overturned roughly 27 years of Federal Circuit precedent.

### C.     Yahoo Moves To Dismiss For Improper Venue Under *TC Heartland*

On June 12, 2017, within days of the Supreme Court's decision in *TC Heartland*, Yahoo moved to dismiss for lack of proper venue.[1]  Appx0038.  Yahoo is a domestic corporation incorporated in the state of Delaware with its principle place of business in Sunnyvale, California.  Appx0052.  Yahoo has no "permanent and continuous presence" in the Eastern District of New York that would qualify

---

[1]   Yahoo requested a dismissal rather than the alternative remedy of transfer under 28 U.S.C. § 1406.  Before filing its motion, Yahoo contacted Plaintiffs to inquire whether they would stipulate to transfer of the case to the Northern District of California in light of *TC Heartland*.  Appx0073-74.  Plaintiffs would not agree to a voluntary transfer so Yahoo proceeded with its motion.

that district as a "regular and established place of business" for Yahoo.  *Id.*  Yahoo has no offices in the Eastern District of New York and does not own, lease, maintain, or operate any facilities there.  *Id.*  Thus, under the new test set forth in *TC Heartland*, Yahoo neither "resides" in nor has a "regular and established place of business" in the Eastern District of New York.  Appx0038.

Plaintiffs opposed Yahoo's motion.  Importantly, ***Plaintiffs did not contest that venue was improper***.  Appx0053.  Rather, Plaintiffs argued that Yahoo had waived its right to challenge venue (despite Yahoo's express reservation in its Answer) and argued that *TC Heartland* was not a change in the law (despite 27 years of case law to the contrary).  Appx0053-57.  Plaintiffs made no attempt to explain why the Eastern District of New York was a proper venue under *TC Heartland*. Their silence constituted an admission that under the new rule, venue is improper and – absent Plaintiffs' waiver argument – the case should be dismissed.

### D.    The District Court Orally Denies Yahoo's Venue Motion

On September 1, 2017, the district court held a 56-minute hearing on Yahoo's Motion.  At the hearing, the district court denied Yahoo's motion on two bases.  First, the district court ruled that *TC Heartland* did not change the law of venue. According to the court, *Fourco* was always the controlling law, even during the 27 years under *VE Holding*.  Appx0083; Appx0086-0088; Appx0096.

The district court also found that Yahoo had waived its right to challenge

venue under *TC Heartland*. The court ruled that by conditionally admitting venue (even with an express reservation of rights to challenge venue under *TC Heartland*), Yahoo waived any subsequent objection because it "should have known" *Fourco* was already controlling law. According to the district court, Yahoo was required to challenge venue in its responsive pleading, notwithstanding that *VE Holding* and its progeny were then followed by both the Federal Circuit and all district courts, and notwithstanding that *TC Heartland* had not yet been decided. Appx0099-100; Appx0104.

Notably, the district court failed to address Plaintiffs' waiver argument – that Yahoo waived its right to challenge venue under Rule 12(h). Although brief argument was presented on this issue, the district court failed – even through colloquy – to indicate any findings or rulings concerning waiver under this rule. *See* Appx0113. At the end of the hearing, the court summarily denied Yahoo's motion: "Your motion to dismiss for failure of venue is denied for all the reasons I've indicated on the record, including fairness." Appx0114.

## STANDARD OF REVIEW

The Second Circuit approves of the use of mandamus where, *inter alia*, a lower court's decision constitutes "a clear abuse of discretion." *In re the City of New York*, 607 F.3d 923, 931 (2d Cir. 2010) (quotation omitted). A district court "abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law or on

a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citations and quotations omitted). "There are three conditions that must be established before a writ of mandamus may issue . . .: (1) the party seeking issuance of the writ must have no other adequate means to attain the relief it desires; (2) the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances; and (3) the petitioner must demonstrate that the right to issuance of the writ is clear and indisputable." *City of New York*, 607 F.3d at 932 (granting mandamus relief) (quotation omitted).

## REASONS WHY THE WRIT SHOULD ISSUE

First, the district court erred when it ruled that *TC Heartland* did not change the law of venue. Waiver is not a bar when there has been a change in the law. The Second Circuit's case law is clear: "[A] party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made." *Holzsager v. Valley Hosp.,* 646 F.2d 792, 796 (2d Cir. 1981).[2]

---

[2]   This Court's law governs questions involving the application of the patent venue statute. *In re Cray Inc.*, No. 2017-129, 2017 WL 4201535, at *4 (Fed. Cir. Sept. 21, 2017). To the extent that regional circuit law controls the procedural question of waiver, the "change in law" exception to waiver is by no means unique to the Second Circuit. *See e.g., Glater v. Eli Lilly Co.,* 712 F.2d 735, 738-39 (1st Cir. 1983) (citing *Holzsager* and acknowledging exception to waiver); *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) (same); *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 374 (6th Cir. 2007) (same); *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 813 n. 9 (D.C. Cir. 1988) (same).

"[T]he doctrine of waiver demands conscientiousness, not clairvoyance, from parties" and does not apply where a new decision is "directly contrary to controlling precedent." *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009).

Numerous district courts around the country have recognized that, prior to *TC Heartland*, *VE Holding* was the controlling law on venue. Under *VE Holding*, Yahoo had no basis to argue that venue was improper in the Eastern District of New York. Now, under *TC Heartland*, Plaintiffs have conceded that they have no basis to argue that venue is proper there. These dramatic changes in position by all parties are obviously a result of a change in law. The district court clearly erred in holding otherwise.

Second, the district court also erred in finding waiver because it failed to address Rule 12(h) of the Federal Rules of Civil Procedure. Under that rule, waiver of venue occurs where a party fails to preserve its objection by failing to "include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." Yahoo complied with Rule 12(h) by expressly reserving its right to challenge venue in its Answer. The district court's failure to even address Rule 12(h) was error. The court also committed clear error when it ruled that Yahoo waived any challenge to venue by conditionally admitting venue was proper at the time it filed its Answer, notwithstanding Yahoo's express reservation of rights in the next

10

sentence.  The district court's ruling, that Yahoo should have known that *Fourco* and not *VE Holding* was "then controlling law" is wrong as a matter of law and fact.

Moreover, there is a major split in opinion among district courts around the country as to whether *TC Heartland* changed the law of venue.  Many district courts have held it did.  But many other decisions, mostly in the Eastern District of Texas, but in certain other districts too, have held it did not change the law.  Granting a writ of mandamus on this issue will provide the district courts and litigants with clarity.  There remain hundreds of patent cases in which this "change of law" issue has not been resolved.  The litigants in those cases should not be subject to disparate rulings depending solely on where plaintiffs chose to file their pre-*TC Heartland* complaint.

Finally, the present case represents an appropriate vehicle to settle this question.  Unlike the other mandamus petitions to reach this Court in the wake of *TC Heartland*, this case is nowhere close to trial.  No trial date has been set, discovery largely has not commenced, and substantive proceedings, such as the claim construction hearing, are still months away.  Furthermore, unlike other cases, the parties here agree that, under *TC Heartland*, there can be no claim that the Eastern District of New York is a proper venue for suit against Yahoo.  Accordingly, this case presents the narrow question of whether *TC Heartland* changed the law of venue, and whether a defendant, who conditionally failed to contest venue when *VE Holding* was controlling law, waived its ability to later challenge venue based on *TC*

11

*Heartland.*

## I.    THE RIGHT TO A WRIT IS CLEAR AND INDISPUTABLE

Yahoo has a clear and indisputable right to relief here.  Mandamus may be employed to correct "a clear abuse of discretion or usurpation of judicial power." *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012).  A district court "necessarily abuse[s] its discretion if it based its ruling on an erroneous view of the law." *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405 (1990).  The district court committed legal error in holding there was no change in the law under the Second Circuit's unambiguous standard.   Moreover, the district court clearly errored in finding waiver, with no analysis of Rule 12(h), even though Yahoo in its Answer expressly reserved its right to challenge waiver in view of *TC Heartland.*

### A.    The District Court Clearly Abused Its Discretion By Finding That *TC Heartland* Was Not A Change In The Law

Yahoo is entitled, under controlling Second Circuit law, to raise a venue challenge in the aftermath of *TC Heartland.*   Second Circuit case law is unambiguous: "[A] party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made." *Holzsager v. Valley Hosp.,* 646 F.2d 792, 796 (2d Cir. 1981).  Indeed, the Second Circuit has clearly held that "the doctrine of waiver demands conscientiousness, not clairvoyance, from parties" and does not apply where a new decision is "directly contrary to controlling precedent."  *Hawknet, Ltd. v. Overseas Shipping Agencies*,

12

590 F.3d 87, 92 (2d Cir. 2009).

Courts around the country, at both the district and circuit levels, have for decades held that waiver could not apply to a defense that had previously been foreclosed, including one of improper venue. *See, e.g., In re LIBOR-Based Fin. Instrument Antitrust Litig.*, No. 11-MDL-2262, 2016 WL 7378980, at *14 (S.D.N.Y. Dec. 20, 2016) (applying *Holzsager* and finding no waiver where "[a]fter the Supreme Court's decision, defendants . . . moved on personal jurisdiction grounds in this Court at the first opportunity they could"); *Glater v. Eli Lilly Co.*, 712 F.2d 735, 738 (1st Cir. 1983) ("This language of Rule 12(g) logically also applies to Rule 12(h) with the result that under that subsection defendants do not waive the defense of personal jurisdiction if it was not available at the time they made their first defensive move."); *Engel v. CBS, Inc.*, 886 F. Supp. 728, 730 (C.D. Cal. 1995) (holding that defendant did not waive venue challenge by failing to make a Rule 12 motion at the start where venue statute was amended in the middle of the litigation).

*TC Heartland* constituted a sea change in the law of venue for patent infringement actions. In *TC Heartland*, the Supreme Court reversed nearly three decades of case law from this Court that had interpreted "resides" in the context of §§ 1391 & 1400(b) to mean any district where personal jurisdiction could be established. *TC Heartland*, 581 U.S.___, 2017 WL 2216934, at *6 (May 22, 2017). In reversing the Federal Circuit, the Supreme Court eliminated the "personal

jurisdiction" test for "resides" and replaced it with a "state of incorporation" test. It held: "As applied to domestic corporations, 'reside[nce]' in §1400(b) refers only to the State of incorporation." *Id.*

The district court committed clear error by orally holding that *TC Heartland* was not a change in the law. For example, at the hearing, the court stated:

> ***TC Heartland makes it very clear we're not making any change in law.*** Back as far as 1947 or somewhere in the 1940s, the Supreme Court in *Stonite* decided precisely what the court reaffirmed in *Fourco*. And in *TC Heartland* the Supreme Court very clearly says all we're doing is applying the law as it has existed at least as far back as *Stonite*.
>
> Your argument really requires an assertion that a Circuit Court can overrule a Supreme Court decision which has been undisturbed for well over 60 years. That's essentially what your argument is.

Appx0083 (emphasis added).

In response, Yahoo explained that *VE Holding* did not purport to overrule the Supreme Court's *Stonite* and *Fourco* decisions. Appx0092-0095. Rather *VE Holding* addressed the subsequent 1988 amendments to § 1391, finding that Congress had made the definition of corporate residence applicable to patent cases and thereby expanded the "resides" element of the venue statute to any place where there was personal jurisdiction. Appx0092.

The district court rejected Yahoo's argument and provided the following reasoning:

> Let me read to you what the Court said in 1942 in *Stonite*. ***I don't want to read the statutes, the specific acts, they have different numbers and***

14

***different acts.*** "Even assuming that the revised statute Section 740 covered patent litigation prior to the Act of 1987 [sic, 1897], we do not think that its application survived that act which was intended to define the exact limits of venue in patent infringement suits. There is little reason to assume that Congress intended to authorize suits in districts other than those mentioned in that act, [sic, "] that act being the act which was intended to define the exact limits of venue in patent litigation. That was *Stonite* in 1942.

In *Fourco*, in 1957, the Court concludes by saying we hold that 28 United States Code 1400(b) is the sole and exclusive provision controlling venue in patent infringement litigation, and that it is not to be supplemented by the provisions of 1391(c) . . . .

What they're saying in 1957 in *Fourco* is precisely what the Court was saying in 1942. The act was intended to define the exact limits of venue in patent infringement suits. There's little reason to assume that Congress intended to authorize suits in district other than those mentioned in that act. And that's referring to the statute, the exact same statute as the 1988 amendments, 1391(c) and 1391(b) extending the venue provision. . . .

With all due respect, you know when a Circuit Court in its opinion makes reference of a learned court below, what they are really saying is the idiot judge below, but in a very respectful way, the learned court below. The learned courts below the Supreme Court that was deciding VE were wrong. Looking at *Stonite*, looking at *Fourco*, they couldn't have arrived at that conclusion. That isn't the first time.

Appx0095-0097 (emphasis added).

The district court's reasoning is legal error. Nowhere does *TC Heartland* state or make "very clear" it was "not making any change in law," as the district court found. Appx0083. And nowhere does the Supreme Court address or rule on *Fourco*

holding. As the Court stated, neither party was even seeking reconsideration of

*Fourco*: "Congress has not amended §1400(b) since *Fourco,* and neither party asks us to reconsider our holding in that case." *TC Heartland*, 2017 WL 2216934, at *2.

Rather the issue before the Supreme Court in *TC Heartland* was the Federal Circuit's interpretation of the 1988 amendments to § 1391. As the Court clearly stated: "the ***only*** question we must answer is whether Congress changed the meaning of § 1400(b) when it amended § 1391." *Id.* (emphasis added). It is undisputed that the Supreme Court had not ruled on the 1988 amendments to § 1391 before *TC Heartland*. The Court was not reaffirming the existing law. It was doing the opposite – reversing the Federal Circuit's interpretation of the 1988 amendments to § 1391, an interpretation that had been controlling law in all district court patent cases for the last 27 years.

In addressing the change of law issue, the district court should have analyzed whether the Supreme Court changed the Federal Circuit's interpretation of those amendments. It did not. Instead, the district court ruled there was no change in the law because *VE Holding* was wrong. The district court's statements below illustrate this point:

> Your argument essentially is that the fact that a Circuit Court decided a case and decided a case erroneously, completely ignoring what the Supreme Court of the United States said, that precludes me from making an argument based upon what is clear authority in the Supreme Court of the United States because some lower court disagreed with it or took a different view.

Appx086.  Whether or not this Court was wrong is beside the point.  The question is whether the Supreme Court's reversal of the Federal Circuit's interpretation of the 1988 amendments was a change in law.  Nowhere does the district court address this question.  Indeed, if anything, by adding its own opinion that this Court's *VE Holdings* decision was "wrong," the district court implicitly concedes that the Supreme Court's reversal was a change in law.

The district court also clearly erred in ruling that *VE Holding* was never controlling law.  At the hearing, Yahoo pointed out that, at the time it filed its Answer, *VE Holding* was "then controlling law," and that is why Yahoo admitted venue, while also reserving its right to challenge venue in the future based on *TC Heartland*.  Appx0100-0101.  In response, the district court ruled that *VE Holding* was ***not*** "then controlling law":

> THE COURT: The then Federal Circuit controlling law.
>
> MR. VERHOEVEN: Exactly.
>
> THE COURT: ***At that time*** in view of the controlling Supreme Court of the United States law the result was not ***the Federal Circuit law which clearly isn't controlling*** in the light of Supreme Court decision which is directly contrary to it.

Appx0091 (emphasis added).  By denying the fact that *VE Holding* was controlling law for the last 27 years, the district court plainly erred. As this Court itself recognized in its *TC Heartland* opinion:

> In *VE Holding,* we found that the Supreme Court's decision in *Fourco* with regard to the appropriate

17

> definition of corporate residence for patent cases in the absence of an applicable statute to be no longer the law because in the 1988 amendments Congress had made the definition of corporate residence applicable to patent cases.

*In re TC Heartland LLC*, 821 F.3d 1339, 1342 (Fed. Cir. Apr. 29, 2016), *reversed by TC Heartland,* 581 U.S.___, 2017 WL 2216934 (May 22, 2017). This Court went on to hold that "*Fourco* was not and is not the prevailing law that would have been captured." *Id.* at 1343. Notably, the Supreme Court did ***not*** disagree with this Court's finding that *Fourco* was not "the prevailing law." Rather, it's reversal was based solely on this Court's interpretation of the 1988 amendments to § 1391.

Prior to *TC Heartland*, the district courts uniformly have recognized and respected *VE Holding* as controlling law. *See, e.g., Script Security Solutions L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 933 (E.D. Tex. 2016) (Bryson, J.) (rejecting defendant's argument that *Fourco*, not *VE Holding,* controlled question of venue); *TeleSign Corp. v. Twilio Inc.*, No. 15-cv-3240, 2015 WL 12765482, at *5 (C.D. Cal. Oct. 16, 2015) ("The Court . . . declines to hold that [sic] *VE Holdings* is no longer good law . . . [the Court] looks to [sic] *VE Holdings*, the law at the time of enactment, not *Fourco*, which hadn't been good law for twenty years."); *Hsin Ten Enterprise USA, Inc. v. Clark Enterprises*, 138 F. Supp. 2d 449, 464 n. 15 (S.D.N.Y. 2000) (citing *VE Holding* and holding that "the *Fourco* decision is no longer good law").

And many district courts have recognized that it would have been futile to challenge *VE Holding* prior to the issuance of *TC Heartland*.  For example, in *Westech Aerosol Corp. v. 3M Co.*, the Western District of Washington granted a motion to dismiss post-*TC Heartland*, noting:

> *TC Heartland* changed the venue landscape. For the first time in 27 years, a defendant may argue credibly that venue is improper in a judicial district where it is subject to a court's personal jurisdiction but where it is not incorporated and has no regular and established place of business. Defendants could not have reasonably anticipated this sea change, and so did not waive the defense of improper venue by omitting it from their initial pleading and motions.

No. 17-cv-5067, 2017 WL 2671297, at *2 (W.D. Wash. June 21, 2017).  The *Westech* court recognized the obvious fact that the practical reality for litigants for more than twenty-five years was the rule set forth in *VE Holding*.[3]  *See also Simpson Performance Products, Inc. v. NecksGen, Inc.*, No. 16-cv-153, 2017 WL 3616764, at *6 (W.D.N.C. Aug. 23, 2017) ("*VE Holding* remained binding precedent on this Court, and every other district court relative to patent litigation, for twenty-seven years, with the Federal Circuit reaffirming its ruling in *VE Holding* multiple times prior to *TC Heartland*."); *Custforth, Inc v. LEMM Liquidating Co., LLC,* No. 12-cv-

---

[3]  As set forth in greater detail in Section II below, while many district courts have correctly held that *TC Heartland* was a change in the law, others have reached the contrary (and incorrect) conclusion, further demonstrating the appropriateness of mandamus here.

1200, 2017 WL 3381816, at *4 (D. Minn. Aug. 4, 2017) ("Defendants cannot fairly be held to have waived the defense of improper venue because the defense was not available to them before the Supreme Court's decision in *TC Heartland,* which the Court finds to have been an intervening change in the law.")

In sum, *TC Heartland* constitutes the exact kind of "change in the law" that the Second Circuit envisioned in its case law addressing waiver. The Second Circuit's decision in *Holzsager* is, in fact, highly similar to the scenario presented here. In *Holzsager*, the plaintiff sued the defendant alleging jurisdiction under a quasi-in-rem theory (referred to as *Seider*-type attachment). *Holzsager v. Valley Hosp.*, 646 F.2d 792, 794 (2d Cir. 1981). During the pendency of the litigation, the Supreme Court held that this form of quasi-in-rem jurisdiction was unconstitutional. *Id.* at 794-95. Accordingly, the defendant moved to dismiss for lack of jurisdiction. *Id.* at 795. The district court denied the motion but certified questions for interlocutory appeal, including whether the defendant waived the jurisdictional defense by failing to move to dismiss at the outset of the case. *Id.* The Second Circuit concluded that the defendant had not waived its jurisdictional defense because "a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made, especially when it does raise the objections as soon as their cognizability is made apparent." *Id.* at 796.

20

In *Holzsager*, the defendant – like Yahoo – had referenced the jurisdictional defect in its Answer but simply could not have known that the theory of jurisdiction would subsequently be struck down as unconstitutional. Yahoo likewise had no way of knowing that 27-years of controlling venue law would be overturned.[4]

## B.   The District Court Clearly Abused Its Discretion By Finding That Yahoo Waived Its Right To Challenge Venue

There are also at least two clear errors in the district court's ruling on waiver. First, the court erred because it made no findings and no ruling on waiver under Rule 12(h). Second, the district court erred because it held that Yahoo "should have known" that *Stonite* and *Fourco* were controlling law and therefore was required, on pain of waiver, to object to venue outright in its responsive pleading.

### 1.   The district court failed to make findings or rulings on the application of Rule 12(h).

The district court clearly erred in failing to rule or make any findings with respect to Rule 12(h). Plaintiffs relied primarily on this rule as their basis for waiver. Appx0053-57. The district court only vaguely stated that "I can refer to Rule 12(b), I can refer to [sic] Rule H(1) or H(1)(b)II", but the court provided no indication whether in fact it ***was*** referring to Rule 12(h) to support its ruling. Appx0113. Nor did the district court provide any findings under Rule 12(h), address any of the

---

[4] Yahoo's reliance is also justified given that the Supreme Court denied a petition for writ of certiorari in *VE Holding* itself, thus further supporting the conclusion that *TC Heartland* changed venue law. *See Johnson Gas Appliance Co. v. VE Holding Corp.*, 499 U.S. 922 (1991).

parties' arguments under Rule 12(h) or provide any basis for how this rule supported denial of Yahoo's venue motion. The district court's failure to provide any findings, address any issues or even state whether its waiver was based on Rule 12(h) constitutes clear error.

Under Rule 12(h), Yahoo plainly ***has not*** waived its venue challenge. Under that rule, waiver occurs only where a party fails to preserve an objection either by failing to "make it by motion under this rule" or failing to "include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." FED. R. CIV. P. 12(h). Although not addressed by the district court, neither circumstance applies here. Yahoo's Answer stated clearly and unambiguously that:

> Yahoo reserves the right to challenge venue based upon any change in law, including the Supreme Court's upcoming decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC,* No. 16-341.

This notice was all that was required of Yahoo to preserve its objection to venue. *JPW Industries, Inc. v. Olympia Tools Int'l, Inc.*, No. 16-cv-3153, 2017 WL 3263215, at *1-2 (M.D. Tenn. July 19, 2017) (objection to venue in Answer sufficient to preserve later Rule 12 venue motion); *ISA Chicago Wholesale, Inc. v. Swisher Int'l, Inc.*, No. 08-cv-3461, 2009 WL 971432, at *2-3 (N.D. Ill. Apr. 7, 2009) (same).

Indeed, in Plaintiffs' opposition brief below, they did not even allege that Yahoo's Answer somehow constituted a waiver under Rule 12(b). Appx0053-57.

22

(arguing waiver only by way of Rule 12(h)(1) in light of Yahoo's prior Rule 12 motion).  The notice provided in Yahoo's Answer preserved its right to object to venue based on the upcoming *TC Heartland* case. Nowhere below, either in Plaintiffs' papers or in the district court's colloquy at the hearing, is the adequacy of Yahoo's notice challenged.

Unable to show lack of notice, Plaintiffs fall back on the technical argument that under Rule 12(h) notice was not provided in Yahoo's "first response" to the Complaint.  Specifically, Plaintiffs claim that Yahoo waived its venue challenge because notice of the venue issue was not given in Yahoo's initial *Twombly* motion. *See* Appx0053-57.  Yahoo did file a *Twombly* motion, seeking dismissal due to the lack of any detail in the infringement averments of Plaintiff's Complaint.  That motion was **withdrawn,** however, after the parties reached agreement to provide additional detail by other means.  Appx0125.  At no time did the district court rule on Yahoo's *Twombly* motion.  And it is not disputed that the motion withdrawn.

It is well established that, under these circumstances, there is no waiver under Rule 12(h).  *See Caldwell-Baker Co. v. Southern Ill. Railcar Co.*, 225 F. Supp. 2d 1243, 1259 (D. Kan. 2002) (no waiver where defendants withdrew Rule 12 motion and then subsequently moved to dismiss for lack of personal jurisdiction); *Remley v. Lockheed Martin Corp.*, No. 00-cv-2495, 2001 WL 681257, at *2-3 (N.D. Cal. June 4, 2001) (holding that withdrawn Rule 12(b)(6) motion did not constitute waiver of

right to bring subsequent Rule 12(b)(3) motion to dismiss for improper venue); *see also Kennedy Krieger Inst., Inc. v. Brundage Mgmt. Co., Inc.*, No. 14-cv-1680, 2015 WL 926139, at *3 n. 18 (D. Md. Mar. 3, 2015) (citing *Caldwell-Baker* and finding no waiver of personal jurisdiction defense where defendants filed and then withdrew motion for summary judgment prior to adjudication).   As the *Caldwell-Baker*, *Remley*, and *Kennedy Krieger* courts all observed "[w]ithdrawal of a motion has a practical effect as if the party had never brought the motion." *Caldwell-Baker*, 225 F. Supp. 2d at 1259.

None of Plaintiffs' cases address a situation as here where the plaintiff was given express notice of the *TC Heartland* venue issue.  Indeed, the only district court case cited by Plaintiffs to even come close to addressing the issue – *Reebok International Ltd. v. TRB Acquisitions LLC* – involved a situation where the defendant took flip-flopping positions on the issue of venue by raising it at one stage and then subsequently conceding it at the next.  No. 16-cv-1618, 2017 WL 3016034, at *3 (D. Ore. July 14, 2017).  Plaintiffs have no such argument here.

###  2.   The district court clearly erred in holding that Yahoo waived venue because it "should have known" *Stonite* and *Fourco* were controlling law.

While the district court failed to address waiver under Rule 12(h), the Court *did* make statements in colloquy at the hearing concerning waiver.  The district court ruled – notwithstanding that Yahoo gave notice of *TC Heartland* and reserved is

right to challenge venue – that Yahoo still waived venue because it conceded venue at the time of its Answer when it should have known that *Stonite* and *Fourco* were "then controlling law." Appx0084-85.

At the hearing, Yahoo argued that there was no waiver because Yahoo provided clear notice that it reserved its right to challenge venue based on *TC Heartland* in its Answer to the Complaint. Appx0090-91. Yahoo also argued that it would be inequitable to find that Yahoo must have challenged venue at the time of its Answer because everyone – the patent bar, the district courts and the Federal Circuit – understood the test for "resides" was personal jurisdiction, not state of incorporation. Appx0098-99. The district court did not dispute or even address Yahoo's argument that it provided adequate notice. Instead, the district court ruled that Yahoo should have known that everyone (except defense counsel in *TC Heartland*) was wrong. *See, e.g.,* Appx0084; Appx0095-0100.

This waiver ruling is clear error and abuse of discretion. Indeed, Plaintiffs never made this argument or mentioned it at all  – it came solely from the district court at argument. First, Rule 12(h) is controlling on the waiver issue here. Rule 12(h) merely requires a party to provide notice. *See JPW Industries, Inc. v. Olympia Tools Int'l, Inc.*, No. 16-cv-3153, 2017 WL 3263215, at *1-2 (M.D. Tenn. July 19, 2017) (objection to venue in Answer sufficient to preserve later Rule 12 venue motion); *ISA Chicago Wholesale, Inc. v. Swisher Int'l, Inc.*, No. 08-cv-3461, 2009

WL 971432, at *2-3 (N.D. Ill. Apr. 7, 2009) (same).  To repeat, nowhere does the district court address the adequacy of Yahoo's notice.  The district court's insertion of requirements beyond adequate notice in Yahoo's responsive pleading was clear error.

Second, the district court's ruling that, upon pain of wavier, a party must accurately predict the future – and take positions in its responsive pleading based on bets about future Supreme Court outcomes – is clearly erroneous.  *See* Appx0084 ("THE COURT: Well, it's strange that the plaintiff in *TC Heartland* didn't believe that. They didn't think that a defense of lack of venue is unavailable or challenge the venue provision.").  The fact that Yahoo "could have" filed an objection to venue in hope of a Supreme Court reversal does not mean the objection was realistically "available" to Yahoo.  As stated in *OptoLum, Inc. v. Cree, Inc.*, No. 16-cv-3828, 2017 WL 3130642, at *4 (D. Ariz. July 24, 2017):

> "[T]he Court does not find that this potentially lengthy and expensive litigation strategy, with the mere possibility that *VE Holding* might be overturned, rendered the defense of improper venue 'available' to Cree when it filed its answer and initial motion to dismiss."

There is no law requiring the parties to have a crystal ball.  No one knows the future.  Positions are, and must be, based on then-existing law.  *See* FED. R. CIV. P. 11(b)(2); *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009) (holding "the doctrine of waiver demands conscientiousness, not clairvoyance, from parties" and does not apply where a new decision is "directly contrary to controlling

precedent"). The district court's conclusions to the contrary constitute clear error.

## II.    ISSUANCE OF A WRIT IS APPROPRIATE HERE

In addition to correcting clear error, issuance of a writ here would also be appropriate as this case raises "basic and undecided" questions that have divided the community broadly. *In re BP Lubricants USA Inc.,* 637 F.3d 1307, 1310, 1313 (Fed. Cir. 2011) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104 (1964)). A writ is also appropriate where it will "further supervisory or instructional goals" regarding "issues [that] are unsettled and important." *In re Queen's Univ. at Kingston,* 820 F.3d 1287, 1291 (Fed. Cir. 2016); *see also In re Sims*, 534 F.3d 117 (2d Cir. 2008) (writ appropriate where case required "extension of an established principle to an entirely new context") (quotation omitted). This Court regularly finds mandamus relief appropriate where an issue "has split the district courts," such that "[i]mmediate resolution of [the] issue will avoid further inconsistent development of [the] doctrine." *Queen's Univ., 820 F.3d at 1292*.

Presently, district courts around the country are divided as to whether *TC Heartland* "changed the law." Many have correctly held *TC Heartland* constituted a "change in the law" of venue. *See e.g., Westech Aerosol Corp. v. 3M Co.*, No. 17-5067, 2017 WL 2671297, at *2 (W.D. Wash. June 21, 2017) ("For the first time in 27 years, a defendant may argue credibly that venue is improper in a judicial district where it is subject to a court's personal jurisdiction but where it is not incorporated

and has no regular and established place of business."); *OptoLum, Inc. v. Cree, Inc.*, No. 16-cv-3828, 2017 WL 3130642, at *3-*5 (D. Ariz. July 24, 2017) ("*TC Heartland* changed the venue landscape just as *VE Holding* had done 27 years earlier."). Yet, many other district courts have incorrectly held that *TC Heartland* did not change the law. *See e.g., Realtime Data LLC v. Carbonite, Inc.*, No. 6:17-cv-121, 2017 WL 3588048 (E.D. Tex. Aug. 21, 2017); *Koninklijke Philips NV v. AsusTek Comp. Inc.*, No. 1:15-cv-1125, 2017 WL 3055517 (D. Del. July 19, 2017).

These conflicting decisions have created confusion among litigants regarding their rights and are impeding the orderly resolution of patent cases. Indeed, as Judge Newman recently noted:

> There is little doubt that the Court's decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, __ U.S. __, 137 S. Ct. 1514, __ L. Ed. 2d __ (2017), was a change in the law of venue . . . [t]he issue of proper forum following the return to *Fourco* requires our resolution.

*In re Sea Ray Boats, Inc.,* No. 2017-124, 2017 WL 2577399, at *1 (Fed. Cir. June 9, 2017) (Newman, J., dissenting).

This case presents the proper vehicle to resolve this important question. Unlike the prior mandamus petitions filed on this issue (which were filed years into the litigation and weeks, if not days, before trial), this case is in its infancy. *See e.g., In re Nintendo of Am., Inc.,* No. 17-127, 2017 WL 4581670 , at *2 (Fed. Cir. July 26, 2017) (fewer than three months until trial); *In re Techtronic Indus. N. Am., Inc.,*

No. 17-125, 2017 WL 4685333, at *1 (Fed. Cir. July 25, 2017) (fewer than two months until trial); *In re Hughes Network Sys., LLC,* No. 17-130, 2017 WL 3167522, at *1 (Fed. Cir. July 24, 2017) (less than two months before trial); *In re Sea Ray Boats,* 2017 WL 2577399 at *1 (approximately two weeks before trial). In contrast to those cases, no trial date has been set here, discovery has only just begun, and claim construction deadlines are still weeks, if not months away. Appx0123. And unlike other cases to address the issue, Plaintiffs here do not argue (nor could they argue) that the Eastern District of New York is the proper venue under *TC Heartland*. Now is the right time to clarify this area of the law and this case is the right vehicle to do so.

## III.    YAHOO HAS NO OTHER ADEQUATE MEANS OF RELIEF

Finally, absent mandamus, Yahoo will not have an adequate remedy for the district court's failure to dismiss this case. *See In re TS Tech USA Corp.,* 551 F.3d 1315, 1322 (Fed. Cir. 2008) (granting mandamus for denial of venue motion due to lack of other adequate means of relief). Mandamus is an appropriate vehicle to correct clear errors in the district court below. Indeed, the *TC Heartland* case itself rose though the appellate courts though a petition for mandamus. *TC Heartland*, 2017 WL 2216934, at *3. Yahoo's right to a proper venue would be rendered meaningless if it were forced to litigate this case through a final judgment in the Eastern District of New York before it could contest venue via appeal. The venue

statute serves to "protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.,* 443 U.S. 173, 183-84 (1979). Trial in an improper venue requires reversal on appeal. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 41 (1998). It would be a large waste of both judicial and party resources to require that the case be litigated to final judgment before relief could be granted. *See In re Volkswagen of Am., Inc.,* 545 F.3d 304, 319 (5th Cir. 2008) ("[T]he harm—inconvenience to witnesses, parties and other—will already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle."). Absent relief here, Yahoo would lack any effective means to obtain a proper venue for this case.

## CONCLUSION

For the foregoing reasons, Yahoo requests that this Court issue a writ of mandamus directing the district court to vacate its order denying Yahoo's Motion to Dismiss and to dismiss this action.

Dated:  October 20, 2017    Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:*/s/ Charles K. Verhoeven*
    Charles K. Veroheven
    *Attorneys for Yahoo Holdings, Inc.*

# **APPENDIX**

## **TABLE OF CONTENTS**

| File Date | Docket No. | Description | Appx. No. |
|-----------|-----------|-------------|-----------|
| -- | -- | Docket Sheet | 0001 |
| 3/30/2016 | 1 | Complaint | 0015 |
| 1/20/2017 | 55 | Answer | 0030 |
| 6/12/2017 | 70-1 | Memorandum of Law In Support of Yahoo! Inc.'s Motion to Dismiss for Improper Venue | 0038 |
| 6/12/2017 | 70-2 | Declaration of David Brightman In Support of Yahoo! Inc.'s Motion to Dismiss for Improper Venue | 0051 |
| 6/26/2017 | 71-1 | Memorandum of Law In Opposition to Yahoo! Inc.'s Motion to Dismiss and In Support of Plaintiffs' Conditional Cross-Motion to Transfer Venue | 0053 |
| 7/10/2017 | 72 | Yahoo! Inc.'s Reply In Support of Motion to Dismiss for Improper Venue and Opposition to Plaintiffs' Conditional Cross-Motion to Transfer | 0062 |
| 8/28/2017 | 77 | Yahoo! Inc.'s Notice of Supplemental Authority In Support of Motion to Dismiss for Improper Venue | 0077 |
| 10/6/2017 | 90 | Transcript of Proceedings Held on September 1, 2017 | 0080 |
| 9/7/2017 | 85 | Order Denying Yahoo! Inc.'s Motion to Dismiss for Improper Venue | 0122 |
| 10/6/2017 | 91 | Joint Letter Amending Case Schedule | 0123 |
| 12/13/16 | 43 | Yahoo! Inc.'s Notice of Withdrawal of Motion to Dismiss | 125 |

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:16-cv-01557-ILG-SMG

AlmondNet, Inc. et al v. Yahoo! Inc.
Assigned to: Judge I. Leo Glasser
Referred to: Magistrate Judge Steven M. Gold
Cause: 35:271 Patent Infringement

Date Filed: 03/30/2016
Jury Demand: Defendant
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**AlmondNet, Inc.**

represented by **Louis James Hoffman**
Hoffman Patent Firm
7689 East Paradise Lne
Suite 2
Scottsdale, AZ 85260
480-948-3295
Fax: 480-948-3387
Email: louis@valuablepatents.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William Christopher Carmody**
Susmen Godfrey LLP
1301 Avenue of the Americas
32nd floor
New York, NY 10019
212-336-8330
Fax: 212-336-8340
Email: bcarmody@susmangodfrey.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ian B. Crosby**
Susman Godfrey L.L.P.
1301 Avenue of the Americas
32nd Floor
New York, NY 10019-6023
206-516-3880
Fax: 206-516-3883
Email: icrosby@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Mark Howard Hatch-Miller**
Susman Godfrey
1301 Avenue Of The Americas
32nd Fl
New York, NY 10019
(212)336-8330
Fax: (212)336-8340

Email: mhatch-miller@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Datonics, LLC**                        represented by   **Louis James Hoffman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William Christopher Carmody**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ian B. Crosby**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Howard Hatch-Miller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Intent IQ, LLC**                       represented by   **Louis James Hoffman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William Christopher Carmody**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ian B. Crosby**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Howard Hatch-Miller**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Yahoo! Inc.**                          represented by   **Charles K. Verhoeven**
Quinn Emanuel
50 California St, 22nd Flr
San Francisco
San Francisco, CA 94111
415-875-6600
Fax: 415-875-6700

Appx0002

Email:
charlesverhoeven@quinnemanuel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian E. Mack**
Quinn Emanuel Urquhart & Sullivan
50 California Street
22nd Floor
San Francisco, CA 94111
415-875-6600
Fax: 415-875-6700
Email: brianmack@quinnemanuel.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Kash**
Quinn Emanuel et al
50 California Street
Suite 22nd Flr
San Francisco, CA 94111
415-875-6600
Fax: 415-875-6700
Email: jenniferkash@quinnemanuel.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John T. McKee**
Quinn Emanuel
51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7000
Fax: 212-849-7100
Email: johnmckee@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Patrick D. Curran**
Quinn Emanuel Urquhart & Sullivan
51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7000
Fax: 212-849-7100
Email: patrickcurran@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/30/2016 | 1 | COMPLAINT against Yahoo! Inc. filing fee $ 400, receipt number 0207-8493274 Was the Disclosure Statement on Civil Cover Sheet completed -YES,, filed by AlmondNet, Inc., Intent IQ, LLC, Datonics, LLC. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons, # 3 Exhibit A, # 4 Exhibit A-1, # 5 Exhibit B, # 6 Exhibit B-1, # 7 Exhibit C, # 8 Exhibit D, # 9 Exhibit D-1, # 10 Exhibit E, # 11 Exhibit F, # 12 Exhibit G, # 13 Exhibit |

| | | |
|---|---|---|
| | | H, # <u>14</u> Exhibit I, # <u>15</u> Exhibit I-1, # <u>16</u> Exhibit J) (Carmody, William) (Entered: 03/30/2016) |
| 03/30/2016 | | Case assigned to Judge I. Leo Glasser and Magistrate Judge Steven M. Gold. Please download and review the Individual Practices of the assigned Judges, located on our <u>website</u>. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Bowens, Priscilla) (Entered: 03/31/2016) |
| 03/30/2016 | <u>2</u> | Summons Issued as to Yahoo! Inc.. (Bowens, Priscilla) (Entered: 03/31/2016) |
| 03/30/2016 | | This is a patent case and is eligible for the Patent Pilot Project. (Bowens, Priscilla) (Entered: 03/31/2016) |
| 03/31/2016 | <u>3</u> | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences. Do NOT return or file the consent <u>unless</u> all parties have signed the consent.** (Bowens, Priscilla) (Entered: 03/31/2016) |
| 03/31/2016 | <u>4</u> | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (Bowens, Priscilla) (Entered: 03/31/2016) |
| 03/31/2016 | <u>5</u> | Notice of Report on the filing of an action regarding a Patent or Trademark. (Attachments: # <u>1</u> Complaint, # <u>2</u> Exhibit A, # <u>3</u> Exhibit A-1, # <u>4</u> Exhibit b, # <u>5</u> Exhibit B1, # <u>6</u> Exhibit C, # <u>7</u> Exhibit D, # <u>8</u> Exhibit D 1, # <u>9</u> Exhibit E, # <u>10</u> Exhibit F, # <u>11</u> Exhibit G, # <u>12</u> Exhibit H, # <u>13</u> Exhibit I, # <u>14</u> Exhibit I 1, # <u>15</u> Exhibit J) (Rocco, Christine) (Entered: 03/31/2016) |
| 04/04/2016 | <u>6</u> | MOTION for Refund of Fees Paid Electronically *of $400 for filing of the Complaint* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC. (Carmody, William) (Entered: 04/04/2016) |
| 04/05/2016 | <u>7</u> | <u>6</u> Application for Refund of Fees Paid Electronically. Approved by August Marziliano, Operations Manager on 4/5/2016. (Marziliano, August) (Entered: 04/05/2016) |
| 04/06/2016 | <u>8</u> | MOTION for Leave to Appear Pro Hac Vice *for Ian B. Crosby* Filing fee $ 150, receipt number 0207-8511596. by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC. (Attachments: # <u>1</u> Affidavit in Support, # <u>2</u> Proposed Order, # <u>3</u> Certificate of Good Standing) (Crosby, Ian) (Entered: 04/06/2016) |
| 04/06/2016 | | ORDER granting <u>8</u> Motion for Leave for Ian B. Crosby to Appear Pro Hac Vice for plaintiffs. If not already done, the attorney shall register for ECF, registration is available online at the NYEDs homepage. Once registered, the attorney shall file a notice of appearance and ensure that s/he receives electronic notification of activity in this case. Also, the attorney shall ensure that the $150 admission fee be submitted to the Clerks Office. So Ordered by Magistrate Judge Steven M. Gold on 4/6/2016. (Vasquez, Lea) (Entered: 04/06/2016) |
| 04/07/2016 | <u>9</u> | ORDER, granting admitted attorney Ian B. Crosby's <u>8</u> MOTION for Leave to Appear Pro Hac Vice *in whole or in part as counsel for plaintiffs. Ordered by Judge I. Leo Glasser on 4/7/2016.* (Layne, Monique) *(Additional attachment(s) added on 4/7/2016: # <u>1</u> Certificate of Good Standing) (Layne, Monique). (Entered: 04/07/2016)* |
| 04/07/2016 | <u>10</u> | NOTICE of Appearance by Ian B. Crosby on behalf of AlmondNet, Inc., Datonics, LLC, |

| | | Intent IQ, LLC (notification declined or already on case) (Crosby, Ian) (Entered: 04/07/2016) |
|---|---|---|
| 04/28/2016 | 11 | NOTICE by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC *PLAINTIFFS' CERTIFICATION OF DAMAGES IN EXCESS OF $150,000* (Crosby, Ian) (Entered: 04/28/2016) |
| 05/02/2016 | 12 | MOTION for Leave to Appear Pro Hac Vice *by Louis J. Hoffman, to argue or try this case as counsel for Plaintiffs* AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC. (Attachments: # 1 Decl. In Support, # 2 Certficate of Good Standing, # 3 Proposed Order) (Layne, Monique). (Additional attachment(s) added on 5/4/2016: # 4 Fee Paid) (Layne, Monique). (Entered: 05/04/2016) |
| 05/02/2016 | 13 | FILING FEE: $ 150.00, receipt number 4653101284 re 12 PHV Motion. (Layne, Monique) (Entered: 05/05/2016) |
| 05/04/2016 | | ORDER granting 12 Motion for Leave to Appear Pro Hac Vice The attorney shall register for ECF, registration is available online at the NYEDs homepage. Once registered, the attorney shall file a notice of appearance and ensure that s/he receives electronic notification of activity in this case. Also, the attorney shall ensure that the $150 admission fee be submitted to the Clerks Office. Ordered by Magistrate Judge Steven M. Gold on 5/4/2016. (Gold, Steven) (Entered: 05/04/2016) |
| 05/09/2016 | 14 | SUMMONS Returned Executed by AlmondNet, Inc., Intent IQ, LLC, Datonics, LLC. Yahoo! Inc. served on 5/5/2016, answer due 5/26/2016. (Crosby, Ian) (Entered: 05/09/2016) |
| 05/17/2016 | 15 | NOTICE of Appearance by Louis James Hoffman on behalf of All Plaintiffs (aty to be noticed) (Hoffman, Louis) (Entered: 05/17/2016) |
| 05/24/2016 | 16 | MOTION for Extension of Time to File Answer re 1 Complaint,, by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC. (Attachments: # 1 Proposed Order) (Crosby, Ian) (Entered: 05/24/2016) |
| 05/25/2016 | | ORDER granting 16 Motion for Extension of Time to Answer re 16 MOTION for Extension of Time to File Answer re 1 Complaint,Defendant Yahoo! Inc. shall have until July 11, 2016 to answer or otherwise respond to the Complaint in this action. Ordered by Magistrate Judge Steven M. Gold on 5/25/2016. (Richardson, Jacqueline) (Entered: 05/25/2016) |
| 06/10/2016 | 17 | NOTICE of Change of Address by William Christopher Carmody , *Susman Godfrey L.L.P.* (Carmody, William) (Entered: 06/10/2016) |
| 06/22/2016 | 18 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0207-8706724. by Yahoo! Inc.. (Attachments: # 1 Declaration ISO of Motion to Admit Counsel Pro Hac Vice, # 2 Exhibit Certificates of Good Standing) (Mack, Brian) (Entered: 06/22/2016) |
| 06/23/2016 | | ORDER granting 18 Motion for Leave to Appear Pro Hac Vice The attorney shall register for ECF, registration is available online at the NYEDs homepage. Once registered, the attorney shall file a notice of appearance and ensure that s/he receives electronic notification of activity in this case. Also, the attorney shall ensure that the $150 admission fee be submitted to the Clerks Office. Ordered by Magistrate Judge Steven M. Gold on 6/23/2016. (Collins, Anne) (Entered: 06/23/2016) |
| 06/23/2016 | 19 | SCHEDULING ORDER: An Initial Conference is set for 8/23/2016 at 11:30 AM in Courtroom 13D South before Magistrate Judge Steven M. Gold. Counsel are directed to refer to and comply with the attached order. Ordered by Magistrate Judge Steven M. Gold |

| | | |
|---|---|---|
| | | on 6/23/2016. (Attachments: # 1 CHAMBERS INDIVIDUAL RULES) (Richardson, Jacqueline) (Entered: 06/23/2016) |
| 07/07/2016 | 20 | NOTICE of Appearance by Charles K. Verhoeven on behalf of Yahoo! Inc. (aty to be noticed) (Verhoeven, Charles) (Entered: 07/07/2016) |
| 07/07/2016 | 21 | NOTICE of Appearance by Patrick D. Curran on behalf of Yahoo! Inc. (aty to be noticed) (Curran, Patrick) (Entered: 07/07/2016) |
| 07/11/2016 | 22 | Motion to Dismiss for Failure to State a Claim by Yahoo! Inc.. (Curran, Patrick) (Entered: 07/11/2016) |
| 07/11/2016 | 23 | MEMORANDUM in Support re 22 Motion to Dismiss for Failure to State a Claim filed by Yahoo! Inc.. (Curran, Patrick) (Entered: 07/11/2016) |
| 07/14/2016 | 24 | SCHEDULING ORDER: The Plaintiffs may respond to the Defendant's motion to dismiss 22 on or before August 4, 2016. The Defendant may reply on or before August 18, 2016. Oral argument will be held on September 26, 2016 at 10:00 a.m.. Ordered by Judge I. Leo Glasser on 7/14/2016. (Shamah, Adam) (Entered: 07/14/2016) |
| 07/14/2016 | 25 | NOTICE of Appearance by John T. McKee on behalf of Yahoo! Inc. (aty to be noticed) (McKee, John) (Entered: 07/14/2016) |
| 08/04/2016 | 26 | RESPONSE in Opposition re 22 Motion to Dismiss for Failure to State a Claim filed by All Plaintiffs. (Hoffman, Louis) (Entered: 08/04/2016) |
| 08/04/2016 | 27 | NOTICE of Change of Address by Louis James Hoffman (Hoffman, Louis) (Entered: 08/04/2016) |
| 08/11/2016 | 28 | MOTION for Leave to Appear Pro Hac Vice *Jennifer A. Kash* Filing fee $ 150, receipt number 0207-8833330. by Yahoo! Inc.. (Kash, Jennifer) (Entered: 08/11/2016) |
| 08/11/2016 | 29 | DECLARATION re 28 MOTION for Leave to Appear Pro Hac Vice *Jennifer A. Kash* Filing fee $ 150, receipt number 0207-8833330. *Jennifer A. Kash* by Yahoo! Inc. (Attachments: # 1 Certificate of Good Standing, # 2 Proposed Order) (Kash, Jennifer) (Entered: 08/11/2016) |
| 08/12/2016 | | ORDER granting 28 Motion for Leave to Appear Pro Hac Vice The attorney shall register for ECF, registration is available online at the NYEDs homepage. Once registered, the attorney shall file a notice of appearance and ensure that s/he receives electronic notification of activity in this case. Also, the attorney shall ensure that the $150 admission fee be submitted to the Clerks Office. Ordered by Magistrate Judge Steven M. Gold on 8/12/2016. (Faubion, Maxwell) (Entered: 08/12/2016) |
| 08/12/2016 | 30 | ORDER, granting 28 MOTION for admitted attorney *Jennifer A. Kash*, Leave to Appear Pro Hac Vice. Ordered by Judge I. Leo Glasser on 8/12/2016. (Layne, Monique) (Entered: 08/12/2016) |
| 08/12/2016 | 31 | NOTICE of Appearance by Jennifer Kash on behalf of Yahoo! Inc. (notification declined or already on case) (Kash, Jennifer) (Entered: 08/12/2016) |
| 08/17/2016 | 32 | Joint MOTION to Adjourn Conference *Joint Letter Motion for Adjournment of Initial Conference* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC. (Crosby, Ian) (Entered: 08/17/2016) |
| 08/17/2016 | 33 | Joint MOTION to Adjourn Conference by AlmondNet, Inc.. (Crosby, Ian) (Entered: 08/17/2016) |
| 08/17/2016 | | ORDER: 33 Motion to Adjourn Initial Conference is GRANTED. The Initial Conference previously scheduled for 8/23/2016 is adjourned for 9/27/2016 at 11:00 a.m. in Courtroom |

| | | |
|---|---|---|
| | | 13D South before the undersigned. Counsel are reminded to comply with the Court Order and Chambers Individual Rules attached in docket entry 19 . So Ordered by Magistrate Judge Steven M. Gold on 8/17/2016. (Gillespie, Saudia) (Entered: 08/17/2016) |
| 08/17/2016 | | Motions terminated, docketed incorrectly: DUPLICATE FILING 32 Joint MOTION to Adjourn Conference *Joint Letter Motion for Adjournment of Initial Conference* filed by Intent IQ, LLC, AlmondNet, Inc., Datonics, LLC. (Gillespie, Saudia) (Entered: 08/17/2016) |
| 08/18/2016 | 34 | REPLY to Response to Motion re 22 Motion to Dismiss for Failure to State a Claim filed by Yahoo! Inc.. (Curran, Patrick) (Entered: 08/18/2016) |
| 09/01/2016 | | SCHEDULING ORDER: The initial conference previously scheduled for September 27, 2016 at 11:00 a.m. is adjourned to September 29, 2016 at 3:30 p.m. in Courtroom 13D South before the undersigned. Ordered by Magistrate Judge Steven M. Gold on 9/1/2016. (Gillespie, Saudia) (Entered: 09/01/2016) |
| 09/27/2016 | 35 | Letter *re Notice Regarding Initial Scheduling Conference* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC (Crosby, Ian) (Entered: 09/27/2016) |
| 09/29/2016 | 37 | Minute Entry: Initial Conference Hearing held on 9/29/2016 before Magistrate Judge Steven M. Gold. Crosby and Hoffman for plaintiffs, Verhoeven, McKee and Curran for defendant. Claims and defenses informally discussed. Counsel will confer with respect to case management generally and whether plaintiffs are able to offer sufficient specificity about their causes of action to induce defendant to withdraw its pending motion to dismiss. THE PARTIES WILL SUBMIT A JOINT LETTER TO THE COURT BY OCTOBER 22, 2016, REPORTING ON THE STATUS OF THEIR EFFORTS TOR RESOLVE THE PENDING RULE 12 MOTION AND PROPOSING NEXT STEPS TO BE TAKEN IN THE LITIGATION. (Tape #3:27-4:31.) (Gillespie, Saudia) (Entered: 09/30/2016) |
| 09/30/2016 | 36 | Minute Entry for proceedings held before Judge I. Leo Glasser on 9/29/2016: Counsel for all parties present. Defendants motion to dismiss is argued. Counsel will meet with Magistrate Judge Gold today to determine whether the motion can be resolved by the parties. (Court Reporter Stacy Mace.) (Kessler, Stanley) (Entered: 09/30/2016) |
| 10/11/2016 | 38 | TRANSCRIPT of Proceedings held on September 29, 2016, before Judge Gold. Court Transcriber: TypeWrite Word Processing Service, Telephone number 718-966-1401. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 11/1/2016. Redacted Transcript Deadline set for 11/11/2016. Release of Transcript Restriction set for 1/9/2017. (Rocco, Christine) (Entered: 10/11/2016) |
| 10/21/2016 | 39 | Joint MOTION for Extension of Time to File *Letter* by Yahoo! Inc.. (Curran, Patrick) (Entered: 10/21/2016) |
| 10/24/2016 | | ORDER: 39 Motion for Extension of Time to File is GRANTED. The parties will submit a joint letter to the Court by October 28, 2016, reporting on the status of their efforts to resolve the pending rule 12 motion and proposing next steps to be taken in the litigation. Ordered by Magistrate Judge Steven M. Gold on 10/24/2016. (Gillespie, Saudia) (Entered: 10/24/2016) |
| 10/28/2016 | 40 | Letter *(Joint) Reporting on Status of Rule 12 Motion and Proposing Next Steps* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC (Hoffman, Louis) (Entered: 10/28/2016) |
| 10/28/2016 | 41 | NOTICE by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC *of Service of Patent Rule 6 Disclosures* (Hoffman, Louis) (Entered: 10/28/2016) |

| | | |
|---|---|---|
| 11/01/2016 | | SCHEDULING ORDER: An in person status conference is set for December 21, 2016 at 10:00 a.m. in Courtroom 13D South before the undersigned. The parties will submit an updated joint letter to the Court reporting on the status of the Rule 12 motion by December 16. Ordered by Magistrate Judge Steven M. Gold on 11/1/2016. (Gillespie, Saudia) (Entered: 11/01/2016) |
| 12/05/2016 | 42 | Joint MOTION to Adjourn Conference by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC. (Crosby, Ian) (Entered: 12/05/2016) |
| 12/05/2016 | | ORDER: 42 Motion to Adjourn Conference is hereby GRANTED. The previously scheduled status Conference set for December 21, 2016 is adjourned to **JANUARY 11, 2017 AT 3:00 PM** in Courtroom 13D South before the undersigned. Ordered by Magistrate Judge Steven M. Gold on 12/5/2016. (Gillespie, Saudia) (Entered: 12/05/2016) |
| 12/13/2016 | 43 | NOTICE by Yahoo! Inc. re 22 Motion to Dismiss for Failure to State a Claim - *Withdrawal of Motion to Dismiss* (Curran, Patrick) (Entered: 12/13/2016) |
| 12/16/2016 | 44 | Letter *re Courts Order of November 1, 2016* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC (Crosby, Ian) (Entered: 12/16/2016) |
| 12/16/2016 | 45 | Letter *re Court's Order of November 1, 2016* by Yahoo! Inc. (Attachments: # 1 Exhibit) (Curran, Patrick) (Entered: 12/16/2016) |
| 12/20/2016 | 46 | ORDER, withdrawing 22 Motion to Dismiss for Failure to State a Claim by deft. Yahoo! Inc.. Ordered by Judge I. Leo Glasser on 12/16/2016. (Layne, Monique) (Entered: 12/20/2016) |
| 12/23/2016 | 47 | STIPULATION *for Service by Electronic Means* by Yahoo! Inc. (Curran, Patrick) (Entered: 12/23/2016) |
| 12/27/2016 | | ORDER: 47 Stipulation for Service by Electronic Means is hereby approved. Ordered by Magistrate Judge Steven M. Gold on 12/27/2016. (Gillespie, Saudia) (Entered: 12/27/2016) |
| 12/28/2016 | 48 | Letter MOTION for Discovery *(to remedy Yahoos lack of compliance with Local Patent Rule 7)* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (Hoffman, Louis) (Entered: 12/28/2016) |
| 12/28/2016 | 49 | Letter MOTION for Extension of Time to File Response/Reply as to 48 Letter MOTION for Discovery *(to remedy Yahoos lack of compliance with Local Patent Rule 7)* by Yahoo! Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Curran, Patrick) (Entered: 12/28/2016) |
| 12/29/2016 | | ORDER: Yahoo's 49 application to extend its time to respond to plaintiffs' letter motion to January 9, 2017 is granted. If plaintiffs seek a brief adjournment of the conference set for January 11, 2017, they may submit a letter application after attempting to agree on mutually convenient dates with defendant. Ordered by Magistrate Judge Steven M. Gold on 12/29/2016. (Gillespie, Saudia) (Entered: 12/29/2016) |
| 01/05/2017 | 50 | Joint MOTION for Discovery *Order Regarding E-Discovery* by Yahoo! Inc.. (Attachments: # 1 Exhibit A - Order Regarding E-Discovery) (Curran, Patrick) (Entered: 01/05/2017) |
| 01/06/2017 | | ORDER: The Joint Motion for Entry of Order Regarding E-Discovery, Docket Entry 50 , is granted, and the proposed order filed as Docket Entry 50-1 is hereby entered as an Order of the Court. Ordered by Magistrate Judge Steven M. Gold on 1/6/2017. (Gillespie, Saudia) (Entered: 01/06/2017) |
| 01/06/2017 | 51 | Letter *Opposing Stay* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC (Attachments: # 1 Exhibit A) (Hoffman, Louis) (Entered: 01/06/2017) |

| Date | Doc | Description |
|------|-----|-------------|
| 01/09/2017 | 52 | RESPONSE to Motion re 48 Letter MOTION for Discovery *(to remedy Yahoos lack of compliance with Local Patent Rule 7)* filed by Yahoo! Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I) (Curran, Patrick) (Entered: 01/09/2017) |
| 01/11/2017 | 53 | Letter *Reply to Letter Opposing Stay* by Yahoo! Inc. (Curran, Patrick) (Entered: 01/11/2017) |
| 01/11/2017 | 54 | Minute Entry: Status Conference held on 1/11/2017 before Magistrate Judge Steven M. Gold. Crosby and Hoffman for plaintiffs, Verhoeven, McKee, and Curran for defendant. Motion for stay of discovery pending CBM review before the PTAB as well as possibility of engaging in court-annexed mediation discussed. Decision reserved. THIS CASE IS HEREBY REFERRED TO COURT-ANNEXED MEDIATION. In the event the parties wish to hire a private mediator instead, they shall inform the Court forthwith of their intentions to do so. Counsel shall confer and determine among themselves which judicial district's set of rules will govern case management and jointly prepare a proposed case management schedule in conformity therewith. THE COURT WILL HOLD A TELEPHONE CONFERENCE AT 5:00 P.M. ON JANUARY 20, 2017; counsel shall provide the Court with forty-eight hours' notice if they wish to convert the telephone conference to a video conference. Counsel will file a joint letter by January 18, 2017, reporting on (i) whether defendant intends to pursue CBM review, and if so, how soon they intend to proceed with those efforts, and (ii) whether they have elected to follow the local patent rules of a particular district which require more detailed disclosures, and if they have, they shall also provide the Court with a proposed case management schedule. (Tape #3:03-3:44.) (Gillespie, Saudia) (Entered: 01/20/2017) |
| 01/20/2017 | | Case referred to court-annexed mediation (Gillespie, Saudia) (Entered: 01/20/2017) |
| 01/20/2017 | 55 | ANSWER to 1 Complaint,, by Yahoo! Inc.. (Curran, Patrick) (Entered: 01/20/2017) |
| 01/20/2017 | 56 | Corporate Disclosure Statement by Yahoo! Inc. (Curran, Patrick) (Entered: 01/20/2017) |
| 01/20/2017 | 57 | Minute Entry: Telephone Conference held on 1/20/2017 before Magistrate Judge Steven M. Gold. Crosby for plaintiff, Curran for defendant. BECAUSE THE PARTIES REPORT THAT THEY HAVE DECIDED TO PURSUE PRIVATE MEDIATION, THE REFERENCE TO COURT-ANNEXED MEDIATION IS WITHDRAWN. The parties will submit a proposed order setting forth the agreements described on the record of today's proceeding by January 24. The parties will also submit a copy of the E.D. Tex. Patent Rules, which they have agreed to follow in this case. THE COURT WILL HOLD A TELEPHONE CONFERENCE AT 4:00 PM ON FEBRUARY 15, 2017. The purpose of the conference will be to resolve any disputes over the protective order the parties anticipate presenting for court approval, and for the parties to report on their progress moving forward with mediation. Counsel for plaintiff will arrange the conference call. (Tape #5:01-5:17.) (Gillespie, Saudia) (Entered: 01/23/2017) |
| 01/23/2017 | | Set/Reset Hearings: Telephone Conference set for 2/15/2017 at 4:00 PM before Magistrate Judge Steven M. Gold. (Gillespie, Saudia) (Entered: 01/23/2017) |
| 01/24/2017 | 58 | Letter *(Joint) Regarding Scheduling* by Yahoo! Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G) (Curran, Patrick) (Entered: 01/24/2017) |
| 01/27/2017 | 59 | MOTION for Protective Order *and to Reschedule Hearing (Expedited)* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC. (Hoffman, Louis) (Entered: 01/27/2017) |
| 01/30/2017 | | SCHEDULING ORDER: The Court will hold an in-person conference addressing AlmondNet's motion dated January 27, 2017, Docket Entry 59 , concerning the parties' dispute over the terms of a confidentiality order, **at 4:00 pm on February 2, 2017, in** |

| | | |
|---|---|---|
| | | **Courtroom 13D South** before the undersigned. Counsel shall appear with electronic devices with the two competing drafts, and any compromise drafts, accessible for editing so that a final document may be created during the conference. Yahoo!'s response to AlmondNet's January 27 letter shall be filed no later than 6:00 p.m. on January 31, 2017. Ordered by Magistrate Judge Steven M. Gold on 1/30/2017. (Kaufman, Zachary) (Entered: 01/30/2017) |
| 01/30/2017 | 60 | TRANSCRIPT of Proceedings held on January 11, 2017, before Judge Gold. Court Reporter/Transcriber TypeWrite Word Processing Service, Telephone number 718-966-1401. Email address: transcripts@typewp.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 2/20/2017. Redacted Transcript Deadline set for 3/2/2017. Release of Transcript Restriction set for 5/1/2017. (Hong, Loan) (Entered: 01/30/2017) |
| 01/31/2017 | 61 | RESPONSE to Motion re 59 MOTION for Protective Order *and to Reschedule Hearing (Expedited)* filed by Yahoo! Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M) (Curran, Patrick) (Entered: 01/31/2017) |
| 02/01/2017 | | ORDER: If counselor is available, the Court would prefer to hold the conference at 3:00 pm instead of the scheduled time of 4:00 pm. Counsel shall confer and submit a letter indicating their availability and describing any progress they have made narrowing their dispute. Ordered by Magistrate Judge Steven M. Gold on 2/1/2017. (Gillespie, Saudia) (Entered: 02/01/2017) |
| 02/01/2017 | 62 | NOTICE of Appearance by Mark Howard Hatch-Miller on behalf of AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC (aty to be noticed) (Hatch-Miller, Mark) (Entered: 02/01/2017) |
| 02/01/2017 | 63 | Letter *to Hon. Steven M. Gold* by AlmondNet, Inc. (Hatch-Miller, Mark) (Entered: 02/01/2017) |
| 02/01/2017 | | SCHEDULING ORDER: The status conference scheduled for tomorrow, February 2, 2017, at 4:00 p.m. is adjourned and will now be held on **Friday, February 3rd, at 12:00 p.m.** in Courtroom 13D South before the undersigned. If the dispute can be distilled to a limited number of issues that can be discussed productively by telephone, the parties may submit a JOINT application, no later than 6:00 p.m. tomorrow, identifying the remaining issues to be discussed, submitting alternative language proposed by the respective parties, and requesting that the conference be held over the telephone. Ordered by Magistrate Judge Steven M. Gold on 2/1/2017. (Kaufman, Zachary) (Entered: 02/01/2017) |
| 02/02/2017 | 64 | Letter *regarding Protective Order* by Yahoo! Inc. (Attachments: # 1 Exhibit A - [Proposed] Protective Order) (Curran, Patrick) (Entered: 02/02/2017) |
| 02/02/2017 | | ORDER: The parties having reported that the language of a protective order has been agreed to, Docket Entry 64, the status conference scheduled for tomorrow, February 3rd, is hereby cancelled. The Court will review the proposed order and advise counsel if it has any specific questions. Ordered by Magistrate Judge Steven M. Gold on 2/2/2017. (Kaufman, Zachary) (Entered: 02/02/2017) |
| 02/03/2017 | | ORDER re 64 Letter filed by Yahoo! Inc. : The protective order jointly proposed by the parties and submitted as Docket Entry 64-1 is hereby approved and entered as an Order of the Court, with the following modification: The wording of paragraph 16 suggests that |

| | | |
|---|---|---|
| | | DESIGNATED MATERIAL submitted to the Court will be physically filed in hard copy and sealed by the Clerk of Court. The parties are directed that, instead, DESIGNATED MATERIAL they seek to submit to the Court shall be filed electronically pursuant to the Court's procedures for ECF filing UNDER SEAL, and that no hard copies of DESIGNATED MATERIAL shall be submitted for filing without first seeking and obtaining leave of the Court. Counsel are expected, of course, to comply with any chambers practices requesting courtesy copies. In addition, the provision in paragraph 16 that counsel will publicly file versions of documents filed under seal with disclosures of DESIGNATED MATERIAL redacted remains in force. Ordered by Magistrate Judge Steven M. Gold on 2/3/2017. (Gold, Steven) (Entered: 02/03/2017) |
| 02/13/2017 | | ORDER: The conference previously scheduled for February 15, 2017 is hereby cancelled. Ordered by Magistrate Judge Steven M. Gold on 2/13/2017. (Gillespie, Saudia) (Entered: 02/13/2017) |
| 02/15/2017 | | ORDER: 59 Motion for Protective Order is terminated per Order dated 02/03/2017. Ordered by Magistrate Judge Steven M. Gold on 2/15/2017. (Gillespie, Saudia) (Entered: 02/15/2017) |
| 03/09/2017 | 65 | NOTICE by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC *JOINT NOTICE OF MEDIATION* (Crosby, Ian) (Entered: 03/09/2017) |
| 03/13/2017 | | SCHEDULING ORDER: An in person status conference will be held at 11:30 a.m. on March 27, 2017 before the undersigned in Courtroom 13-D South. Counsel for all parties must attend. Counsel for plaintiff is directed to immediately confirm this conference date and time with defendant's counsel. Adjournment requests will not be considered unless made in accordance with this Court's Individual Rules. Ordered by Magistrate Judge Steven M. Gold on 3/13/2017. (Gillespie, Saudia) (Entered: 03/13/2017) |
| 03/20/2017 | 66 | Joint MOTION to Adjourn Conference *and Enter Agreed Order on Procedure* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC. (Attachments: # 1 Proposed Order on Certain Scheduling, Rules, and Amendment Issues) (Hoffman, Louis) (Entered: 03/20/2017) |
| 03/21/2017 | | ORDER granting 66 Motion to Adjourn Conference and adopting the proposed case management order submitted by the parties jointly as Docket Entry 66-1. THE CONFERENCE PREVIOUSLY SET FOR MARCH 27, 2017 IS CANCELED. THE COURT WILL HOLD A CONFERENCE AT 11:00 AM ON SEPTEMBER 8, 2017. Counsel shall be prepared to report on whether they have met the proposed deadline for completion of claim construction discovery and shall raise any discovery disputes they seek to address at the conference by letter dated no later than August 25, with responses to be filed no later than August 31. Ordered by Magistrate Judge Steven M. Gold on 3/21/2017. (Gold, Steven) (Entered: 03/21/2017) |
| 03/21/2017 | | ORDER finding as moot 48 Motion for Discovery in light of subsequent proceedings in the case. Ordered by Magistrate Judge Steven M. Gold on 3/21/2017. (Gold, Steven) (Entered: 03/21/2017) |
| 04/06/2017 | 67 | NOTICE by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC *of Service of Patent Rule 3-1 and 3-2 Disclosures* (Hoffman, Louis) (Entered: 04/06/2017) |
| 04/06/2017 | 68 | AMENDED COMPLAINT *(First)* against Yahoo! Inc., filed by AlmondNet, Inc., Intent IQ, LLC, Datonics, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit A-1, # 3 Exhibit B, # 4 Exhibit B-1, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit D-1, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit I-1, # 14 Exhibit J, # 15 Exhibit K) (Hoffman, Louis) (Entered: 04/06/2017) |
| 06/09/2017 | 69 | Proposed Scheduling Order *(Agreed)* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC |

| | | (Attachments: # 1 Proposed Order) (Crosby, Ian) (Entered: 06/09/2017) |
|---|---|---|
| 06/12/2017 | | ORDER: The scheduling order filed as docket entry 69-1 is entered as an Order of the Court. Ordered by Magistrate Judge Steven M. Gold on 6/12/2017. (Gillespie, Saudia) (Entered: 06/12/2017) |
| 06/12/2017 | 70 | MOTION to Dismiss *for Improper Venue* by Yahoo! Inc.. (Attachments: # 1 Memorandum in Support, # 2 Declaration of David Brightman) (Curran, Patrick) (Entered: 06/12/2017) |
| 06/26/2017 | 71 | MEMORANDUM in Opposition re 70 MOTION to Dismiss *for Improper Venue and Conditional Cross-Motion to Transfer Venue* filed by All Plaintiffs. (Attachments: # 1 Memorandum in Opposition, # 2 Proposed Order) (Hoffman, Louis) (Entered: 06/26/2017) |
| 07/10/2017 | 72 | REPLY in Support re 70 MOTION to Dismiss *for Improper Venue* , MEMORANDUM in Opposition *to Plaintiffs' Conditional Cross-Motion to Transfer* filed by Yahoo! Inc.. (Curran, Patrick) (Entered: 07/10/2017) |
| 07/12/2017 | 73 | Corporate Disclosure Statement by Yahoo! Inc. (Curran, Patrick) (Entered: 07/12/2017) |
| 07/17/2017 | 74 | REPLY in Support *of Conditional Cross-Motion to Transfer Venue* filed by All Plaintiffs. (Hoffman, Louis) (Entered: 07/17/2017) |
| 08/22/2017 | | SCHEDULING ORDER: On consent of all parties, the status conference previously scheduled for September 8, 2017, will now be held on September 1, 2017, at 1:00 p.m. in Courtroom 13D South before the undersigned. If the oral argument before Senior United States District Judge I. Leo Glasser concludes after 1:00 p.m., the status conference will commence immediately thereafter. Counsel shall be prepared to report on whether they have met the proposed deadline for completion of claim construction discovery and shall raise any discovery disputes they seek to address at the conference by letter dated no later than August 24, with responses to be filed no later than August 28. Ordered by Magistrate Judge Steven M. Gold on 8/22/2017. (Kaufman, Zachary) (Entered: 08/22/2017) |
| 08/24/2017 | 75 | Letter *Regarding Discovery Dispute Pursuant to August 22 Scheduling Order* by Yahoo! Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Curran, Patrick) (Entered: 08/24/2017) |
| 08/25/2017 | 76 | NOTICE by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC *PARTIES JOINT CLAIM CONSTRUCTION AND PREHEARING STATEMENT UNDER PATENT RULE 4-3* (Attachments: # 1 Exhibit A) (Crosby, Ian) (Entered: 08/25/2017) |
| 08/28/2017 | 77 | Letter *Regarding Supplemental Authority in Support of Yahoo's Motion to Dismiss* by Yahoo! Inc. (Curran, Patrick) (Entered: 08/28/2017) |
| 08/28/2017 | 78 | Letter *Response to Yahoo! Inc.'s Letter re Discovery Dispute* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E) (Crosby, Ian) (Entered: 08/28/2017) |
| 08/29/2017 | 79 | Letter *Regarding Supplemental Authority in Relation to Yahoos Pending Motion to Dismiss (Dkt. No. 70)* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC (Crosby, Ian) (Entered: 08/29/2017) |
| 08/30/2017 | 80 | Letter *Regarding Plaintiffs' August 28, 2017 Letter (Dkt. 78)* by Yahoo! Inc. (Attachments: # 1 Exhibit A) (Curran, Patrick) (Entered: 08/30/2017) |
| 08/30/2017 | 81 | Letter *AlmondNet Response to Yahoos Letter (Dkt. 80),* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC (Attachments: # 1 Exhibit A) (Crosby, Ian) (Entered: 08/30/2017) |
| 09/01/2017 | 82 | Minute Order. for proceedings held before Judge I. Leo Glasser on 9/1/2017: Counsel for all parties present. Defendants motion to dismiss 70 is argued. The motion is denied for the reasons stated on the record. Plaintiffs counsel is to submit an order. (Court Reporter Angela Grant.) (Kessler, Stanley) (Entered: 09/01/2017) |

| 09/01/2017 | 83 | Minute Entry: Status Conference held on 9/1/2017 before Magistrate Judge Steven M. Gold. Crosby for plaintiffs; Verhoeven, Curran and McKee for defendant. Discovery and case management issues discussed on the record. Decision on Yahoo's motion to compel disclosure of plaintiffs' validity contentions taken under advisement. The parties are urged to continue their efforts to resolve or narrow this dispute. The Court will grant any reasonable joint application to adjust the existing case management schedule to accommodate any agreement reached. To the extent plaintiffs are concerned with the expense of providing the information sought by defendant, the Court suggests the parties consider whether awaiting the PTAB's decision on whether to review all or some of the matters the parties have raised might be more efficient than proceeding to litigate them in this action simultaneously. COUNSEL WILL SUBMIT A LETTER REPORT ON THE STATUS OF THEIR EFFORTS TO RESOLVE THE PENDING DISCOVERY DISPUTE BY SEPTEMBER 11, 2017. (FTR Log #1:10-1:45.) (Gillespie, Saudia) (Entered: 09/01/2017) |
|---|---|---|
| 09/06/2017 | 84 | NOTICE by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC re 82 Order on Motion to Dismiss,, Motion Hearing, *[Proposed] Order Denying Defendant's Motion to Dismiss* (Crosby, Ian) (Entered: 09/06/2017) |
| 09/07/2017 | 85 | ORDER denying the defendant's motion to dismiss and denying as moot the plaintiffs' cross-motion to transfer. Ordered by Judge I. Leo Glasser on 9/7/2017. (Kessler, Stanley) (Entered: 09/07/2017) |
| 09/07/2017 | 86 | TRANSCRIPT of Proceedings held on September 1, 2017, before Judge Gold. Court Transcriber: Transcription Plus II. Email address: laferrara44@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/28/2017. Redacted Transcript Deadline set for 10/9/2017. Release of Transcript Restriction set for 12/6/2017. (Rocco, Christine) (Entered: 09/07/2017) |
| 09/11/2017 | 87 | Letter *re Status of Pending Discovery Dispute* by Yahoo! Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Curran, Patrick) (Entered: 09/11/2017) |
| 09/11/2017 | 88 | Letter *Re Discovery Dispute* by AlmondNet, Inc., Datonics, LLC, Intent IQ, LLC (Crosby, Ian) (Entered: 09/11/2017) |
| 09/29/2017 | 89 | ORDER re 75 Letter filed by Yahoo! Inc. Defendant's August 24, 2017 discovery request is granted. AlmondNet is directed to provide defendant with the narrowed contention response described in the second numbered paragraph of Yahoo's September 11, 2017 letter. The Court recognizes that the current case management schedule does not permit sufficient time for AlmondNet to comply. Accordingly, the parties shall confer and jointly propose an amended schedule by **October 6, 2017**. Ordered by Magistrate Judge Steven M. Gold on 9/27/2017. (Metzger, Daniel) (Entered: 09/29/2017) |
| 10/02/2017 | 90 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 9/1/17, before Judge Glasser. Court Reporter/Transcriber Angela Grant. Email address: Angela.grant207@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 10/23/2017. Redacted Transcript Deadline set for 11/2/2017. Release of Transcript Restriction set for 1/1/2018. (Grant, Angela) (Entered: 10/02/2017) |
| 10/06/2017 | 91 | Letter *Regarding Proposed Schedule Amendments in Response to September 29, 2017* |

*Order* by Yahoo! Inc. (Curran, Patrick) (Entered: 10/06/2017)

| 10/10/2017 | ORDER: 91 The proposed amended schedule is hereby approved and entered as an Order of the Court. An in-person **HEARING ON CLAIM CONSTRUCTION will be held at 2:00 p.m. on JANUARY 26, 2018.** AND a **STATUS CONFERENCE will be held at 2:30 p.m. on FEBRUARY 26, 2018.** in Courtroom 13D South before the undersigned. Ordered by Magistrate Judge Steven M. Gold on 10/10/2017. (Gillespie, Saudia) (Entered: 10/10/2017) |
|---|---|

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/17/2017 20:48:04 | | |
| **PACER Login:** | qe0001:2618656:0 | **Client Code:** | 02917-00001 |
| **Description:** | Docket Report | **Search Criteria:** | 1:16-cv-01557-ILG-SMG |
| **Billable Pages:** | 13 | **Cost:** | 1.30 |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALMONDNET, INC., DATONICS, LLC, and INTENT IQ, LLC, | |
| Plaintiffs, | Civil Action No. <u>16-cv-1557</u> |
| v. | **COMPLAINT** |
| YAHOO! INC. | **Jury Trial Demanded** |
| Defendant. | |

Plaintiffs AlmondNet, Inc. ("AlmondNet"), Datonics, LLC ("Datonics"), and Intent IQ, LLC ("IIQ"), collectively, "Plaintiffs," for their Complaint for patent infringement against Defendant Yahoo! Inc. ("Yahoo"), including Yahoo's division, BrightRoll, hereby demand a jury trial and allege as follows:

## NATURE OF THE ACTION

1. This is a civil action for infringement by Yahoo of certain patents owned by Plaintiffs, arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, and more particularly 35 U.S.C. § 271.

## PARTIES

2. Plaintiff AlmondNet is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business at 37-18 Northern Boulevard, Suite 404, Long Island City, New York 11101.

3. Plaintiff Datonics is a limited liability company organized and existing under the laws of the state of Delaware, having its principal place of business at 37-18 Northern Boulevard, Suite 404, Long Island City, New York 11101.

4.     Plaintiff IIQ is a limited liability company organized and existing under the laws of the state of Delaware, having its principal place of business at 37-18 Northern Boulevard, Suite 404, Long Island City, New York 11101.

5.     Datonics and IIQ are majority-owned subsidiaries of AlmondNet. Plaintiffs sometimes also refer to Datonics and IIQ as members of "the AlmondNet family of companies."

6.     Defendant Yahoo is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business at 701 First Avenue, Sunnyvale, CA 94089.

7.     BrightRoll is, upon information and belief, a division of Yahoo. Plaintiffs are suing Yahoo for acts performed by both Yahoo directly and its Brightroll division.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9.     Personal jurisdiction over Yahoo is proper under N.Y. Civ. Pract. L.R. § 302 and the United States Constitution because Yahoo conducts a substantial, systematic, and continuous business of offering to sell and selling services in this judicial district, in New York State and elsewhere throughout the United States; because this action arises from the Yahoo's commission of patent infringement at least by transacting business in this judicial district by, among other things, offering Yahoo services to customers, business affiliates, and partners located in this jurisdiction and committing at least some complained-of illegal acts within this jurisdiction; and because Yahoo knowingly caused harm to Plaintiffs in this district.

2

10.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## FACTUAL BACKGROUND

11.     Founded in 1998, AlmondNet specializes in media and Internet advertising software and solutions. AlmondNet developed an extensive suite of targeted-advertising products, which helped revolutionize display and search advertising and increase the efficiency of the Internet-advertising market. AlmondNet owns a significant portfolio of patents relevant to advertisement targeting, including in such areas as profile-based bidding, behavioral targeting, addressable advertising, and multi-platform advertising. AlmondNet is currently focused on R&D and the licensing of its patents, while its subsidiaries (Datonics and IIQ) continue to offer services, generally in the fields of data aggregation, data distribution, and cross-device targeting.

12.     Datonics is a leading aggregator and distributor of highly granular search, purchase-intent, and life-stage data. Based on AlmondNet patented technology, Datonics offers data users (including ad networks, ad exchanges, demand side platforms, and publishers) pre-packaged or customized keyword-based "data segments" that can facilitate the delivery of advertisements to consumers wherever they go online, with the ads being focused on subjects relevant to the individual consumer yet delivered in a privacy-sensitive way.

13.     IIQ is a leading company in the field of cross-device-based ad targeting, retargeting, audience extension, and attribution. IIQ's "Dynamic Device Map" identifies a given user across multiple device types, including laptops, desktops, smartphones, tablets, and televisions, so as to assist advertisers in delivering targeted ads to consumers

3

on all of their screens. IIQ can facilitate ad targeting based on profile data aggregated from activity on any of a user's screens, as well as measure the impact of previously delivered ads on the same or different screen. IIQ also contracts with other data-user firms to allow those firms' platforms to include cross-device functionality.

14.    Yahoo is a world-wide provider of various Internet-based products and services, including online advertising services. Yahoo offers advertising services including search, content, and behavioral advertising on Yahoo-owned and -operated properties, across the web and across devices including personal computers and mobile devices.

15.    Yahoo facilitates its advertising services to advertisers through various ad solutions (see, e.g., https://advertising.yahoo.com/Solutions/index.htm). Yahoo's services allow delivery of advertisements in a variety of formats based on user profile information – originating from search, mail, digital content consumption, Smart TV, mobile app usage, registrations, offline purchases, and more – for delivery on both Yahoo and non-Yahoo properties, across consumers' desktops, tablets, and smartphones.

16.    Yahoo facilitates advertising services using different platforms including ad exchanges and online ad management platforms. In or about January 2014, Yahoo announced a service called Yahoo Ad Exchange (YAX) and a targeting product called Yahoo Audience Ads. YAX allows "audience sharing," enabling ad space buyers on the exchange to target audiences from multiple data providers to deliver targeted ads on Yahoo or non-Yahoo websites. Yahoo Audience Ads allows targeting ads both on properties in the Yahoo content network and off-network.

4

17.     In November 2014, Yahoo acquired Brightroll for $640 million. BrightRoll is a world-wide provider of online-advertising services. Brightroll offers video advertising platforms called BrightRoll Exchange, available at http://www.brightroll.com/exchange and BrightRoll Demand Side Platform, available at http://www.brightroll.com/demand-side-platform. Through those platforms, Brightroll delivers, manages, and measures the performance of digital video ad campaigns across web, mobile, and connected TV. BrightRoll allows advertisers to purchase targeted ads, which are shown to website visitors who fit the advertisers' interest criteria, including on non-Yahoo websites. In March 2015, Yahoo announced that Brightroll would begin using Yahoo audience data, *i.e.*, information about visitors to Yahoo-owned or Yahoo-operated websites, in its ad targeting. In September 2015 Yahoo announced that it had consolidated all of its programmatic ad technology under a single umbrella – the BrightRoll brand.

18.     Via the above-listed platforms, products, and services, at least, Yahoo has sold or facilitated the sale of targeted ads to advertisers, so that when users visit a website on which Yahoo has the capabilities to show those users ads, ads relevant to each user's specific interest are shown on behalf of those advertisers.

19.     By marketing, selling, offering to sell, providing, instructing, supplying, operating, licensing, or supporting the above-listed services, platforms, products, or activities, Yahoo infringes patent claims of ten patents in five different families of patents, all of which were invented by AlmondNet's CEO, Roy Shkedi. The patents are detailed in the following paragraphs, and a true and correct copy of each patent is attached (see exhibits listed below). The following paragraphs also specify how Yahoo's

5

above-listed services, platforms, products, and activities infringe each patent and which claims of the patents are believed infringed. The descriptions below are not intended as exclusive; discovery may reveal additional infringement types, instances, or methods.

20. AlmondNet owns and has the right to enforce two "Off-site Targeted Advertising" (OTA) patents, both having an effective filing date of November 28, 2000:

   a. U.S. Patent 8,244,586, entitled "Computerized Systems for Added-Revenue Off-Site Targeted Internet Advertising," issued on August 14, 2012 (Exhibit A), as corrected by a certificate of correction dated November 25, 2014 (Exhibit A-1), independent claim 1 and its dependent claims 2-4, and independent claim 11 and its dependent claims 12, 13, 16, 17, and 20-22.

   b. U.S. Patent 7,822,639, entitled "Added-revenue off-site targeted internet advertising," issued on October 26, 2010 (Exhibit B), as corrected by a certificate of correction dated December 28, 2010 (Exhibit B-1), independent claim 1 and its dependent claims 2-8, 10, and 13-16, and independent claim 24 and its dependent claims 27-29, 31, 32, 36, 37, 39, and 41-47.

21. Yahoo (including Brightroll) infringes the above-listed claims of the OTA patents by automatically tagging (*e.g.*, using cookies or web beacons) end-user computers (which may be laptops, tablets, smart phones, or desktops) that visit one or more Yahoo-owned or -operated properties (including websites) and using audience extension or other techniques to check for the tag on computers visiting non Yahoo property sites, and when found, causing (i) the display of an advertisement on the non-Yahoo property (which ad is displayed along with other content of that website, via direction to browsers, including in some instances directions to fetch ads from a third party) and (ii) the division of

6

compensation for the advertisement's display between Yahoo and the owner of the other website or property, facilitated with Yahoo's Real Time Bidding technology. Such ads relate to offerings of third-party advertisers that have agreed to pay for their advertisements to be delivered to visitors of interest to them based on their behavior on Yahoo-owned or -operated properties while visiting other sites, and Yahoo charging mechanisms include CPM billing, fixed-fee-per-ad, and per-impression billing. Such ads are targeted to such visitors based on profile information connected to the tag (including information about what users searched for) and need not relate to the content of the non-Yahoo property. As explained above, Brightroll uses Yahoo audience data, *i.e.*, information about visitors to Yahoo-owned or Yahoo-operated websites, in its ad targeting. In some instances, Brightroll causes ads to be displayed on the non-Yahoo site using web television. As explained above, Yahoo Audience Ads allows targeting ads off-network. Yahoo and Brightroll use computer systems to implement the above methods, without opt-in, and in at least some instances charge the advertisers. In certain instances, some ads are shown on the Yahoo property while other ads are shown off-site. In at least certain instances, tagging is done on certain parts of the Yahoo property or in response to certain visitor actions on a Yahoo site. Also, in certain situations, Yahoo and Brightroll have performed such techniques to facilitate tagging of computers of visitors on select non-Yahoo sites, to allow delivery of ads on Yahoo-owned and -operated sites to those visitor computers, when Yahoo determines that they have such tags indicating a visit to the non-Yahoo site.

22. AlmondNet owns and has the right to enforce two "Media Property Selection" (MPS) patents, both having an effective filing date of June 14, 2007, and foreign priority dates of July 16 and 19, 2006:

a. U.S. Patent 8,959,146, entitled "Media properties selection method and system based on expected profit from profile-based ad delivery," issued on February 17, 2015 (Exhibit C), independent claim 1 and its dependent claims 2, 4, 9, 15, and 16, independent claim 17 and its dependent claim 18, and independent claim 21 and its dependent claim 22.

b. U.S. Patent 8,671,139, entitled "Media properties selection method and system based on expected profit from profile-based ad delivery," issued on March 11, 2014 (Exhibit D), as corrected by a certificate of correction dated July 29, 2014 (Exhibit D-1), independent claim 1 and its dependent claims 2, 4, 7, 9, 12, and 13.

23. Yahoo, through the Brightroll demand side platform (DSP), infringes the above-listed claims of the MPS patents by automatically sending a bid, thus authorizing an entity (such as an ad exchange or SSP) controlling ad space on a non-Yahoo property (which property is typically a website on which the ad space is controlled only temporarily, but which also may be other than an Internet site) to cause display of a targeted or retargeted advertisement when an end-user computer (*e.g.*, laptop, tablet, smart phones, or desktop) appears on the non-Yahoo property after having appeared on a first site. The Brightroll DSP performs this technique for its advertiser clients as to first sites that are (i) the advertiser's own websites, where the advertiser desires to retarget ads to its website visitors on other websites, (ii) Yahoo-owned or -operated websites, or non-Yahoo websites, that contributed attribute data (directly or via a data aggregator such as

8

BlueKai) that Brightroll use to do ad targeting for the advertiser, and (iii) sites of publishers desiring to implement audience extension to deliver advertiser ads on properties other than the publisher's properties. Brightroll causes such display of an advertisement based on profile attributes, which may reflect what a user did on the first site, one example of which is a search requested by the user, or demographic information disclosed by the user on the first site. In many instances, the attributes are categorized into "segments," and on information and belief, Brightroll includes such segments in look-up data structures that associate each segment with properties on which ads might be targeted to such segment. The price that the advertiser hiring Brightroll is willing to pay, and in turn the price that the Brightroll DSP bids, depends on which profile attributes match the specific end user. The Brightroll DSP thereby instructs the ad exchange or SSP to display the ad only if it can do so for less than the bid price. The auction practices of ad-space-controlling entities used by Brightroll ensure that the price paid for display of such an ad will be less than the revenue from an advertiser. Yahoo uses computer servers and computer systems to implement the above methods.

24.    AlmondNet owns and has the right to enforce four "Descriptive Profile Consolidation" (DPC) patents, all having an effective filing date of June 14, 2000, and a foreign priority date of December 13, 1999:

a.    U.S. Patent 8,775,249, entitled "Method, computer system, and stored program for accumulating descriptive profile data along with source information for use in targeting third-party advertisements," issued on July 8, 2014 (Exhibit E), independent claim 1 and its dependent claims 2-6, 9, and 10, independent claim

11 and its dependent claims 12-16, 19, and 20, and independent claim 21 and its dependent claims 22-25.

b. U.S. Patent 8,494,904, entitled "Method and stored program for accumulating descriptive profile data along with source information for use in targeting third-party advertisements," issued on July 23, 2013 (Exhibit F), independent claim 1 and its dependent claims 2-6, 9, and 10, independent claim 11 and its dependent claims 12-16, 19, and 20, and independent claim 21 and its dependent claims 22-26, 29, and 30.

c. U.S. Patent 8,244,582, entitled "Method and stored program for accumulating descriptive profile data along with source information for use in targeting third-party advertisements," issued on August 14, 2012 (Exhibit G), independent claim 1 and its dependent claims 2-6, 9, and 10.

d. U.S. Patent 7,979,307, entitled, "Method and Stored Program for Accumulating Descriptive Profile Data Along with Source Information for Use in Targeting Third-Party Advertisements," issued on July 12, 2011 (Exhibit H), independent claim 1 and its dependent claims 2, 3, and 6-8.

25.    Yahoo (including Brightroll) infringes the above-listed claims of the DPC patents by receiving profile information concerning computer users as a result of the computers of those users being URL-redirected from certain third-party web pages to Yahoo or to data aggregators who in turn provide the profile information to Yahoo (whether by a further redirect to Yahoo or server-to-server transfer of data that relies on previous redirection to perform a technical process known as cookie syncing or cookie matching), and consolidating the received profile information with existing profile

information, which Yahoo calls its "massive set of audience data," for the purpose of eventually serving ads on or off Yahoo's network of owned and operated sites. Yahoo does the consolidation based on cookies or web beacons placed on user computers, in at least some instances in response to URL redirection of such user computers. Yahoo maintains a record of which profile supplier supplied which profile attribute, which information is typically received with the attribute information, and Yahoo uses such records to compensate profile suppliers who supplied the profile data used in targeting Internet ads or who supplied new items of profile information. As explained above, such user profile information originates from search, mail, digital content consumption, Smart TV, registrations, and more. Yahoo uses computer systems, controlled by storages containing software commands, to implement the above methods.

26.     Datonics owns and has the right to enforce a "Providing Profiles" (PP) patent, U.S. Patent 8,244,574, entitled "Method, computer system, and stored program for causing delivery of electronic advertisements based on provided profiles," issued on August 14, 2012, and having an effective filing date of June 19, 2006 (Exhibit I), as corrected by a certificate of correction dated October 30, 2012 (Exhibit I-1), independent claim 1 and its dependent claims 2, 3, 6, and 8, independent claim 11 and its dependent claims 12, 13, 15, and 16, and independent claim 18 and its dependent claims 19, 20, 22, and 23.

27.     Yahoo (including Brightroll) infringes the above-listed claims of the PP patent by tagging user computers following receipt of profiles from over 40 third-party "data providers," one of which is called BlueKai. In some instances, Yahoo receives the profile as a result of URL redirection of user computers to the data providers, who in turn

11

provide the profile information to Yahoo (whether by a further redirect to Yahoo or server-to-server transfer of data that relies on previous redirection to perform a technical process known as cookie syncing or cookie matching). Those data providers control servers that are programmed to select Yahoo to receive profiles (as opposed to a multitude of other ad-space controllers), when user computers match a profile or profile types requested by Yahoo, also known as "audience data," "interest categories," "interest segments," or "interest data." Later, Yahoo checks for the tag on computers visiting Yahoo-owned and -operated sites or non-Yahoo properties (where Yahoo has a contractual right to serve ads), and when Yahoo finds the tag, it causes the computer browser to display a targeted (profile-dependent) electronic advertisement. In at least some instances, Yahoo reports the ad delivery to its data providers, as well as identifying the profile information used to deliver the ad and identifying payments due to the data provider. Yahoo uses computer systems, controlled by storages containing software commands, to implement the above methods.

28.     IIQ owns and has the right to enforce a "Cross-Device Association" (CDA) patent, U.S. Patent 8,677,398, entitled "Systems and methods for taking action with respect to one network-connected device based on activity on another device connected to the same network," issued on March 18, 2014, and having an effective filing date of April 17, 2007 (Exhibit J), independent claim 13 and its dependent claims 14-17 and 19-26.

29.     Yahoo (including Brightroll) infringes the above-listed claims of the CDA patent by causing targeted advertisements to be delivered cross-device, *i.e.*, by delivering a selected ad on one user device (which may be a laptop computer, a tablet, a smart

phone, a wearable device, a desktop computer, or even an Internet-connected television set-top box) based on profile data derived from user activity with a different device, in instances where the two devices are associated by probabilistic mapping data, *i.e.*, noticing connections to the same LAN, as evidenced by the complete or partial IP address of the device (at least sometimes associated with the date and time of the IP address usage), which avoids identifying the user via personally identifiable information (PII). As in the case for smart phones or laptops, either device may be only intermittently connected to a user's (or another) LAN. The association information is either stored in a tag on the user device or, upon information and belief, in a Yahoo database. Yahoo uses probabilistic data to deliver ads cross-device either by use of its own device-association algorithms or by obtaining device-association data from probabilistic ID vendors such as Tapad or Drawbridge, among others.

30.     On information and belief, Yahoo had actual knowledge of each of the above-listed patents. AlmondNet had discussions with Yahoo in at least 2006, 2013, and 2015 about matters related to AlmondNet patent activities. In 2013, AlmondNet specifically advised Yahoo of a large number of patents that had issued by that time, including the patents attached as Exhibits A, B, G, H, and I and pending applications that became others of the patents listed above. AlmondNet also advised Yahoo in 2013 of AlmondNet's belief that those patents applied to activity of Yahoo in the above-described fields.

31.     Accordingly, Yahoo's infringement of the above-listed patents was, and continues to be, willful and deliberate.

32.     Plaintiffs have been damaged by Yahoo's infringement of the above-listed patents and will suffer irreparable injury unless the infringement is enjoined by this court. Plaintiffs Datonics and IIQ are operating entities whose ongoing businesses are being harmed by Yahoo's infringement. As to the patents owned by AlmondNet, Datonics and IIQ have non-exclusive licenses under those patents. Among other harm, Datonics and IIQ could have significantly higher business in providing data, including to Yahoo itself, if Yahoo could use only data providers licensed under the above-listed patents. AlmondNet is a stockholder in each of Datonics and IIQ and will be harmed as well by virtue of expected loss of value of its ownership stake in those operating entities. On account of Yahoo's infringement of the patents-in-suit, the Plaintiffs' operation of operating businesses has become difficult.

## JURY DEMAND

33.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, each of the Plaintiffs hereby respectfully requests a jury trial on all issues and claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.  A judgment that Yahoo has infringed, contributorily infringed, or actively induced others to infringe the ten patents-in-suit;

B.  A judgment that Yahoo's infringement of the patents-in-suit is willful;

C.  Orders preliminarily and permanently enjoining Yahoo, its officers, directors, servants, managers, employees, agents, successors, and assignees, and all persons in concert or participation with them, from infringing, contributorily infringing, or actively inducing others to infringe the patents-in-suit.

D. An award, pursuant to 35 U.S.C. § 284, to each Plaintiff of all damages sufficient to compensate for Yahoo's infringement of the patents-in-suit owned by that Plaintiff, together with pre-judgment and post-judgment interest and costs;

E. An award of increased damages, pursuant to 35 U.S.C. § 284, in an amount not less than three times the amount of actual damages awarded to Plaintiffs, by reason of Yahoo's willful infringement of the patents-in-suit.

F. An award of reasonable attorneys' fees, pursuant to 35 U.S.C. § 285, as this is an exceptional case.

G. An award to Plaintiffs, or any of them, of such other and further relief as this Court deems just and proper.

Dated: March 30, 2016        Respectfully submitted,
SUSMAN GODFREY L.L.P.

/s/ *William C. Carmody*
William C. Carmody, Esq.
New York State Bar No. 4539276
560 Lexington Avenue, 15th Floor
New York, New York 10022-6828
(212) 336-8330

Of Counsel:

Ian B. Crosby, Esq.
(pending *pro hac vice* admission)
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
(206) 516-3880

LOUIS J. HOFFMAN, P.C.
Louis J. Hoffman, Esq.
(pending *pro hac vice* admission)
14301 North 87th Street, Suite 312
Scottsdale, Arizona 85260
(480) 948-3295

Attorneys for Plaintiffs

15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ALMONDNET, INC., DATONICS, LLC,
and INTENT IQ, LLC,

        Plaintiffs,

v.

YAHOO! INC.,

        Defendant.

Civil Action No. 16-cv-1557-ILG-SMG

**Jury Trial Demanded**

## ANSWER OF YAHOO! INC.

Defendant Yahoo! Inc. ("Yahoo" or "Defendant"), by and through its undersigned attorneys, hereby responds to Plaintiffs AlmondNet, Inc.'s ("AlmondNet"), Datonics, LLC's ("Datonics"), and Intent IQ, LLC's ("IIQ") (collectively "Plaintiffs") Complaint for Patent Infringement (D.I. 1), as follows:

## NATURE OF THE ACTION[1]

1.     Yahoo admits that Plaintiffs purport to bring this action under 35 U.S.C. § 271. Yahoo denies the remaining allegations of this paragraph.

## THE PARTIES

2.     Yahoo is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

3.     Yahoo is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

---

[1] Within this Answer, Yahoo has listed the headings as they appear in the Complaint solely for the sake of the Court's convenience in its review of the pleadings. In doing so, Yahoo is not admitting to the accuracy or veracity of the headings used by Plaintiffs.

1

4.      Yahoo is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

5.      Yahoo is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

6.      Yahoo admits that Yahoo is a Delaware corporation with a place of business at 701 First Avenue, Sunnyvale, CA 94089.

7.      Yahoo denies the allegations of this paragraph.

<u>JURISDICTION AND VENUE</u>

8.      Yahoo admits that this Court has subject matter jurisdiction under 28 U.S.C. § 1331. Yahoo denies the remaining allegations of this paragraph.

9.      This paragraph contains a legal conclusion. Yahoo admits that it conducts business in New York State. Yahoo denies the remaining allegations of this paragraph.

10.      This paragraph contains a legal conclusion. Yahoo admits that venue exists in this district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b). However, Yahoo reserves the right to challenge venue based upon any change in law, including the Supreme Court's upcoming decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, No. 16-341. Yahoo denies the remaining allegations of this paragraph.

<u>FACTUAL BACKGROUND</u>

11.      Yahoo is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

12.      Yahoo is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

2

13.     Yahoo is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

14.     Yahoo admits that it provides Internet-based products and services, including online advertising services, world-wide.  Yahoo admits that its advertising products and services include search, content, and behavioral advertising products and services.  Yahoo admits that it provides advertising on Yahoo-owned and –operated properties, on devices including personal computers and mobile devices.  Yahoo denies the remaining allegations of this paragraph.

15.     Yahoo admits that it facilitates its advertising services through various ad solutions.  Yahoo denies the remaining allegations of this paragraph.

16.     Yahoo admits that it facilitates its advertising services using different platforms.  Yahoo admits that it announced Yahoo Ad Exchange (YAX) and Yahoo Audience Ads in or about January 2014.  Yahoo denies the remaining allegations of this paragraph.

17.     Yahoo admits that it acquired BrightRoll in November 2014 for $640 million.  Yahoo admits that BrightRoll offers the BrightRoll Exchange and BrightRoll Demand Side Platform products and services.  Yahoo denies the remaining allegations of this paragraph.

18.     Yahoo admits that it has sold or facilitated the sale of targeted advertisements.  Yahoo denies the remaining allegations of this paragraph.

19.     Yahoo denies the allegations of this paragraph.

20.     Yahoo is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

21.     Yahoo denies the allegations of this paragraph.

22.     Yahoo is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

23.     Yahoo denies the allegations of this paragraph.

24.     Yahoo is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

25.     Yahoo denies the allegations of this paragraph.

26.     Yahoo is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

27.     Yahoo denies the allegations of this paragraph.

28.     Yahoo is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

29.     Yahoo denies the allegations of this paragraph.

30.     Yahoo admits that it had discussions with AlmondNet in 2006, 2013, and 2015. Yahoo denies the remaining allegations of this paragraph.

31.     Yahoo denies the allegations of this paragraph.

32.     Yahoo denies the allegations of this paragraph.

<u>JURY DEMAND</u>

33.     Plaintiffs' demand for a trial by jury as to all issue so triable does not state any allegation, and no response is required.  To the extent that any allegations are included in the demand, Yahoo denies these allegations.

<u>PRAYER FOR RELIEF</u>

34.     These paragraphs set forth the statement of relief requested by Plaintiffs to which no response is required.  Yahoo denies that Plaintiffs are entitled to any of the requested relief and denies any allegations.

## AFFIRMATIVE DEFENSES

35.     Subject to the responses above, Yahoo alleges and asserts the following defenses in response to the allegations, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.  In addition to the defenses described below, subject to its responses above, Yahoo specifically reserves all rights to allege additional defenses that become known through the course of discovery.

### FIRST AFFIRMATIVE DEFENSE

36.     The complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

37.     Yahoo does not infringe and has not infringed any claim of the '586, '639, '146, '139, '249, '904, '582, '307, '574 or '398 patents, either literally or under the doctrine of equivalents, and is not liable for infringement of any valid and enforceable claim of those patents..

### THIRD AFFIRMATIVE DEFENSE

38.     The claims of the '586, '639, '146, '139, '249, '904, '582, '307, '574 or '398 patents are invalid and unenforceable under 35 U.S.C. § 101 because the claims are directed to abstract ideas or other non-statutory subject matter.

39.     The claims of the '586, '639, '146, '139, '249, '904, '582, '307, '574 or '398 patents are invalid and unenforceable under 35 U.S.C. § 102 because the claims lack novelty, and are taught and suggested by the prior art.

40.     The claims of the '586, '639, '146, '139, '249, '904, '582, '307, '574 or '398 patents are invalid and unenforceable under 35 U.S.C. § 103 because the claims are obvious in view of the prior art.

5

41.     The claims of the '586, '639, '146, '139, '249, '904, '582, '307, '574 or '398 patents are invalid and unenforceable for failure to satisfy the conditions set forth in 35 U.S.C. § 112, including failure of written description, lack of enablement, and claim indefiniteness.

## FOURTH AFFIRMATIVE DEFENSE

42.     Plaintiffs' claims are barred in whole or in part by the doctrines of estoppel, actual or implied license, and/or other equitable remedy.

## FIFTH AFFIRMATIVE DEFENSE

43.     Plaintiffs' claims are unenforceable, in whole or in part, under the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

44.     Yahoo has engaged in all relevant activities in good faith, thereby precluding Plaintiffs, even if it prevails, from recovering attorneys' fees and/or costs under 35 U.S.C. § 285.

## SEVENTH AFFIRMATIVE DEFENSE

45.     Plaintiffs' claim for damages, if any, against Yahoo for alleged infringement of the '586, '639, '146, '139, '249, '904, '582, '307, '574 or '398 patents is limited by 35 U.S.C. §§ 286, 287, and/or 288.

## EIGHTH AFFIRMATIVE DEFENSE

46.     By reason of the proceedings in the U.S. Patent and Trademark Office ("USPTO") during the prosecution of the application resulting in the issuance of the '586, '639, '146, '139, '249, '904, '582, '307, '574 or '398 patents and any related applications, namely, the admissions, representations and amendments made on behalf of the applicants for the '586, '639, '146, '139, '249, '904, '582, '307, '574 or '398 patents and any related patents, Plaintiffs is estopped from asserting that any claims of the '586, '639, '146, '139, '249, '904, '582, '307, '574 or '398 patents are infringed by Yahoo, including under the Doctrine of Equivalents.

6

## NINTH AFFIRMATIVE DEFENSE

47.    As a result of Plaintiffs' actions, Plaintiffs is not entitled to equitable relief, including but not limited to injunctive relief as Plaintiffs has an adequate remedy at law.

## TENTH AFFIRMATIVE DEFENSE

48.    Plaintiffs' claims for enhanced damages and an award of fees and costs have no basis in fact or law and should be denied.

## ELEVENTH AFFIRMATIVE DEFENSE

49.    Yahoo reserves all affirmative defenses under Fed. R. Civ. P. 8(c), the patent laws of the United States, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

## DEMAND FOR JURY TRIAL

Yahoo requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Yahoo respectfully requests entry of judgment as follows:

1.    That the Court dismiss Plaintiffs' Complaint with prejudice;

2.    That the Court find and declare that Yahoo has not infringed the '586, '639, '146, '139, '249, '904, '582, '307, '574 or '398 patents;

3.    That the Court find and declare that the '586, '639, '146, '139, '249, '904, '582, '307, '574 or '398 patents are invalid;

4.    That this case be declared "exceptional" under 35 U.S.C. § 285 and that Yahoo be awarded its attorneys' fees, expenses, and costs incurred in this action;

5.    That Plaintiffs be ordered to pay all costs associated with this action; and

6.    That the Court grant to Yahoo such other and further relief as may be deemed just and appropriate.

7

Dated:  January 20, 2017

Respectfully submitted,

*/s/ Patrick D. Curran*
Charles Verhoeven
Jennifer A. Kash (admitted *pro hac vice*)
Brian E. Mack (admitted *pro hac vice*)
QUINN EMANUEL URQUHART &
  SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600

Patrick D. Curran
John T. McKee
QUINN EMANUEL URQUHART &
  SULLIVAN LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

*Attorneys for Yahoo! Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ALMONDNET, INC., DATONICS, LLC, and INTENT IQ, LLC, | |
| Plaintiffs, | Civil Action No. 16-cv-1557-ILG-SMG |
| v. | **Jury Trial Demanded** |
| YAHOO! INC., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF YAHOO! INC.'S MOTION TO DISMISS FOR IMPROPER VENUE

Charles Verhoeven
Jennifer A. Kash (admitted *pro hac vice*)
Brian E. Mack (admitted *pro hac vice*)
QUINN EMANUEL URQUHART &
  SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600

Patrick D. Curran
John T. McKee
QUINN EMANUEL URQUHART &
  SULLIVAN LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

*Attorneys for Yahoo! Inc.*

June 12, 2017

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS ......................................................................................1

    A.    Procedural History .......................................................................................1

    B.    The Supreme Court's Decision in *TC Heartland v. Kraft Foods Group Brands* ..........................................................................................................2

III.   LEGAL STANDARD .............................................................................................3

IV.    ARGUMENT ..........................................................................................................4

    A.    Under *TC Heartland*, Venue is Not Proper in the Eastern District of New York ...........................................................................................................4

    B.    Yahoo Preserved its Right to Challenge Venue.........................................6

V.     CONCLUSION .......................................................................................................9

## TABLE OF AUTHORITIES

**Page**

CASES

*Engel v. CBS, Inc.*,
    886 F. Supp. 728 (C.D. Cal. 1995) ................................................................. 7

*Glater v. Eli Lilly Co.*,
    712 F.2d 735 (1st Cir. 1983) ....................................................................... 7

*Hartling v. Woodloch Pines, Inc.*,
    No. 97-cv-2587, 1998 WL 575138 (S.D.N.Y. Sept. 8, 1998) ........................................... 6

*Hawknet, Ltd. v. Overseas Shipping Agencies*,
    590 F.3d 87 (2d Cir. 2009) .................................................................... 7, 8

*Hazel v. Sawyer*,
    No. 89-cv-13, 1989 WL 7356 (D.D.C. Jan. 17, 1989) .................................................. 7

*Holzsager v. Valley Hosp.*,
    646 F.2d 792 (2d Cir. 1981) .............................................................. 3, 6, 7, 8

*Hoover Grp, Inc. v. Custom Metalcraft, Inc.*,
    84 F.3d 1408 (Fed. Cir. 1996) ..................................................................... 3

*In re Cordis Corp.*,
    769 F.2d 733 (Fed. Cir. 1985) ..................................................................... 5

*Johnston v. IVAC Corp.*,
    681 F. Supp. 959 (D. Mass. 1987) .................................................................. 5

*Kabb, Inc. v. Sutera*,
    No. 91-cv-3551, 1992 WL 245546 (E.D. La. Sept. 4, 1992) ............................................ 5

*O'Connor v. Lee-Hy Paving Corp.*,
    579 F.2d 194 (2d Cir. 1978) ....................................................................... 8

*Rush v. Savchuk*,
    444 U.S. 320 (1980) ............................................................................... 8

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) ............................................................................... 8

*Strauss v. Credit Lyonnais, S.A.*,
    175 F. Supp. 3d 3 (E.D.N.Y. 2016) ................................................................. 3

*TC Heartland v. Kraft Food Group Brands*,
    No. 16-341, 2017 WL 2216934 ............................................................... passim

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed. Cir. 1990) ............................................................... 2, 3, 7

ii

## STATUTES

28 U.S.C. § 1391 ................................................................................................................. 2

28 US.C. § 1400 .......................................................................................................... passim

Fed. R. Civ. P. 12 ....................................................................................................... passim

Fed. R. Civ. P. 15 ................................................................................................................. 6

iii

## I.     <u>INTRODUCTION</u>

On May 22, 2017, the Supreme Court's decision in *TC Heartland v. Kraft Food Group Brands* reversed roughly thirty years of Federal Circuit precedent on venue in patent cases. The Federal Circuit's now-rejected precedents let patent owners file suit in any district where personal jurisdiction could be established. *TC Heartland* rejected this interpretation of 28 US.C. § 1400(b) and found that venue for patent actions only exists in (a) the defendant's state of incorporation or (b) a district where the defendant "has committed acts of infringement and has a regular and established place of business."

In light of *TC Heartland*, Defendant Yahoo respectfully requests that the Court dismiss this action for improper venue under Rule 12(b)(3). Yahoo is incorporated in Delaware. Its principal place of business is in Northern California. Yahoo does not own, lease, maintain or operate any facilities within the Eastern District of New York. Under *TC Heartland*, this case must be dismissed.

## II.    <u>STATEMENT OF FACTS</u>

### A.     **Procedural History**

On March 30, 2016, Plaintiffs AlmondNet, Inc. ("AlmondNet"), Datonics, LLC ("Datonics"), and Intent IQ, LLC ("IIQ") (collectively "Plaintiffs") filed their Complaint against Defendant Yahoo! Inc. ("Yahoo") alleging infringement of U.S. Patent Nos. 7,822,639 (the "'639 patent"), 7,979,307 (the "'307 patent"), 8,244,574 (the "'574 patent"), 8,244,582 (the "'582 patent"), 8,244,586 (the "'586 patent"), 8,494,904 (the "'904 patent"), 8,671,139 (the "'139 patent"), 8,677,398 (the "'398 patent"), 8,775,249 (the "'249 patent"), and 8,959,146 (the "'146 patent") (collectively the "Asserted Patents"). D.I. 1. The Complaint alleged that by "marketing, selling, offering to sell, providing, instructing, supplying, operating, licensing, or

1

supporting the above-listed services, platforms, products, or activities, Yahoo infringe[d]" more than 140 patent claims from 10 patents across 5 different families of patents. *Id.* ¶ 19. Plaintiffs alleged in their complaint that "Defendant Yahoo is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business at 701 First Avenue, Sunnyvale, CA 94089" (*Id.* ¶ 6) and that "[v]enue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 1400(b)" (*Id.* ¶ 10). In its Answer, Yahoo responded to Plaintiffs' venue allegations by, among other things, pleading that, while venue existed under now-rejected Federal Circuit precedent, "Yahoo reserves the right to challenge venue based upon any change in law, including the Supreme Court's upcoming decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC,* No. 16-341."

### B.  The Supreme Court's Decision in *TC Heartland v. Kraft Foods Group Brands*

While this case was pending, the Supreme Court granted certiorari in *TC Heartland* to review the Federal Circuit's long-standing interpretation of 28 U.S.C. § 1400(b). In that case, the plaintiff had filed suit in the District of Delaware alleging infringement of its patents by Kraft, an entity incorporated and having its principle place of business in the state of Indiana. No. 16-341, 581 U.S.___, 2017 WL 2216934, at *3 (May 22, 2017). Kraft moved to dismiss under Rule 12(b)(3) because it neither "resided in" nor had a "regular and established place of business" in the District of Delaware. *Id.* The district court denied Kraft's motion and the Federal Circuit declined to issue a writ of mandamus, largely based on its holding in *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990) that a defendant "resided" in any district where personal jurisdiction could be maintained. *TC Heartland*, No. 16-341, 2017 WL 2216934, at *3, *6.

The Supreme Court reversed. As the Court explained, Section 1400(b) permits patent infringement suits to be filed only in (a) the district where the defendant "resides" or (b) a district where the defendant "has committed acts of infringement and has a regular and established place of business." *Id.* at *3. The Supreme Court rejected the Federal Circuit's long-standing interpretation of the word "reside" as any district where personal jurisdiction could be established, and instead found that "as applied to domestic corporations, 'residence' in § 1400(b) refers only to the [defendant's] State of incorporation." *Id.* at *8. In so doing, the Supreme Court made clear that it was reversing the Federal Circuit's "reaffirm[ance of] *VE Holding*." *Id.* at *6-7. This overturned roughly thirty years of Federal Circuit precedent.

## III.   LEGAL STANDARD

Rule 12(b)(3) permits a motion to dismiss where the plaintiff has selected an improper venue for suit. "Venue is based on the facts alleged in the well-pleaded complaint." *Hoover Grp, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996). For patent infringement actions, venue is governed by 28 U.S.C. § 1400(b) such that the proper venue for a patent infringement action is only either (a) "the judicial district where the defendant resides" or (b) "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Rule 12(h) provides that a party only waives a defense or objection where it fails to "make it by motion under this rule" or "include it in a responsive pleading." Moreover, "a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made." *Holzsager v. Valley Hosp.*, 646 F.2d 792, 796 (2d Cir. 1981); *see also Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 14 (E.D.N.Y. 2016)

(defendant did not waive personal jurisdiction defense by not raising it in answer where the defense only became available due to a change in controlling law).

## IV.  ARGUMENT

Venue is not proper in the Eastern District of New York because Yahoo neither "resides" or has a "regular and established place of business" in the Eastern District of New York for the purpose of 28 U.S.C. § 1400(b).  Under *TC Heartland*, Yahoo does not "reside" in this district; Yahoo is incorporated in Delaware, not New York.  Nor can Plaintiffs show that Yahoo has a "regular and established place of business" in the Eastern District of New York.  Yahoo neither owns, leases, operates, nor maintains any facilities within this district.  On those facts, courts have repeatedly found venue to be improper.  Plaintiffs' claims against Yahoo should be dismissed under Rule 12(b)(3).

### A.  Under *TC Heartland*, Venue is Not Proper in the Eastern District of New York

The only proper venues for patent infringement claims are either (a) the district in which a defendant resides or (b) a district in which the defendant has a regular and established place of business and has committed acts of alleged infringement.  28 U.S.C. § 1400(b).  As *TC Heartland* explained, "reside[nce] in § 1400(b) refers only to the [defendant's] State of incorporation."  *TC Heartland*, No. 16-1341, 2017 WL 2216934, at *8.  In this case, it is undisputed that Yahoo's state of incorporation is Delaware, not New York.  D.I. 68, ¶ 6 ("Defendant Yahoo is a corporation organized and existing under the laws of the state of Delaware . . .").  Thus, under *TC Heartland*, Yahoo cannot "reside" in this district for the purposes of venue under § 1400(b).

The only other way in which venue may be deemed proper is if the defendant has a regular and established place of business and has committed acts of alleged infringement in that

district.  When determining whether a defendant has a regular and established place of business "the appropriate inquiry is whether the corporate defendant does its business in that district ***through a permanent and continuous presence there*** . . . ."  *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985) (emphasis added).  "[T]he regular and established place of business standard requires more than the minimum contacts necessary for establishing personal jurisdiction or for satisfying the 'doing business' standard of the general venue provision."  *Johnston v. IVAC Corp.*, 681 F. Supp. 959, 962 (D. Mass. 1987).  Thus, for example, "[i]t is well-settled that the mere presence of independent sales representatives does not constitute a 'regular and established place of business' for purposes of Section 1400(b)."  *Kabb, Inc. v. Sutera*, No. 91-cv-3551, 1992 WL 245546, at *2 (E.D. La. Sept. 4, 1992) (granting Rule 12(b)(3) motion).

Yahoo lacks the sort of "permanent and continuous presence" in this District that would qualify it as a "regular and established place of business."  Plaintiffs do not dispute that Yahoo's principal place of business is in Sunnyvale, California, which is in the Northern District of California.  D.I. 68, ¶ 6 ("Defendant Yahoo is a corporation . . . having its principle place of business at 701 First Avenue, Sunnyvale, CA 94089.")  And while Yahoo has offices throughout the United States, none are located in the Eastern District of New York.  Yahoo Decl., ¶ 4.  Accordingly, Yahoo does not own, lease, maintain, or operate any facilities here.  Yahoo Decl., ¶ 5.  At bottom, Yahoo lacks a "permanent and continuous presence" required for it to have a "regular and established place of business" here.  Thus, as Yahoo neither "resides" nor has a "regular and established place of business" in this District, venue is improper and this case must be dismissed.

**B.** **Yahoo Preserved its Right to Challenge Venue**

Plaintiffs oppose Yahoo's motion, on the theory that Yahoo waived its right to challenge venue. Plaintiffs are wrong. In its Answer to Plaintiffs' original complaint, Yahoo expressly "reserve[d] the right to challenge based upon any change in law, including the Supreme Court's upcoming decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, No. 16-341." D.I. 55, ¶ 10. Under Rule 12(h), waiver occurs only where a party fails to preserve an objection either by failing to "make it by motion under this rule" or failing to "include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." In accordance with Rule 12, Yahoo did exactly that by way of its Answer. Thus, Yahoo preserved its right to challenge venue based on the Supreme Court's *TC Heartland* decision.

Moreover, the Second Circuit has held that "a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made." *Holzsager v. Valley Hosp.*, 646 F.2d 792, 796 (2d Cir. 1981). Under controlling Federal Circuit precedent at the time of Yahoo's answer, venue existed in this district. After *TC Heartland* overturned that long-standing controlling precedent, venue no longer exists in this district. Accordingly, even if Yahoo had not preserved its objection to venue – and Yahoo explicitly did so in its Answer – Yahoo could raise a venue defense in the Second Circuit, since Yahoo could not waive a defense that was not available under then-controlling law before the Supreme Court's recent change in law. *See, e.g., Hartling v. Woodloch Pines, Inc.*, No. 97-cv-2587, 1998 WL 575138, at *1 (S.D.N.Y. Sept. 8, 1998) ("In *Holzsager* . . . the Supreme Court issued a decision, after the defendant had answered, that provided the grounds for the defendant's personal jurisdiction defense. The court held that the defendant had not waived the defense because he could not waive a right he was unaware of."); *Glater v. Eli Lilly Co.*, 712 F.2d 735,

738 (1st Cir. 1983) ("This language of Rule 12(g) logically also applies to Rule 12(h) with the result that under that subsection defendants do not waive the defense of personal jurisdiction if it was not available at the time they made their first defensive move."); *Engel v. CBS, Inc.*, 886 F. Supp. 728, 730 (C.D. Cal. 1995) (holding that defendant did not waive venue challenge by failing to make a Rule 12 motion at the start where venue statute was amended in the middle of the litigation); *Hazel v. Sawyer*, No. 89-cv-13, 1989 WL 7356, at *9 n. 9 (D.D.C. Jan. 17, 1989) (holding that *Holzsager* mandates that "a defense is unavailable if its legal basis did not exist at the time of the answer or pre-answer motion").

The Second Circuit is particularly clear on this point: "the doctrine of waiver demands conscientiousness, not clairvoyance, from parties" and does not apply where a new decision is "***directly contrary to controlling precedent***." *Hawknet, Ltd. v. Overseas Shipping Agencies,* 590 F.3d 87, 92 (2d Cir. 2009) (emphasis added); *see also Glater v. Eli Lilly & Co.*, 712 F.2d 735 (1st Cir. 1983) (when, "***for all practical purposes***," binding precedent makes it "***impossible***" for the defendant to raise the defense in the initial response to the complaint**, *there is no waiver***). There is no dispute here that the Federal Circuit's decision in *VE Holding* was binding on this Court until the Supreme Court issued its *TC Heartland* decision.   In *TC Heartland*, the Supreme Court reversed nearly three decades of case law from the Federal Circuit interpreting "resides" in the context of § 1400(b) to mean any district where personal jurisdiction could be established. *TC Heartland*, 2017 WL 2216934, at *6.   Under the Federal Circuit's (now erroneous) precedent, Yahoo simply could not have made the argument that venue was improper.  Yahoo is promptly raising venue in response to the dramatic change in law announced by *TC Heartland*. Thus, under controlling Second Circuit precedent on waiver, Yahoo's venue defense is timely. *Hawknet,* 590 F.3d at 92.

Indeed, the situation here is analogous to *Holzsager*: a defense was unavailable under controlling Circuit Court precedent regarding a prior Supreme Court decision and only became viable when the Supreme Court spoke on the subject again, yet the *Holzsager* court found that the defense was not waived and granted the defendant's motion to dismiss. Specifically, in *Shaffer v. Heitner*, the Supreme Court "held that 'all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny," including quasi-in-rem jurisdiction. 433 U.S. 186, 212 (1977). Nonetheless, even after *Shaffer*'s proclamation on the subject, the Second Circuit maintained that a particular type of quasi-in-rem jurisdiction, so called *Seider*-type attachment jurisdiction, remained viable. *O'Connor v. Lee-Hy Paving Corp.*, 579 F.2d 194, 202 (2d Cir. 1978). The Supreme Court then spoke again and overturned the Second Circuit, finding that *Seider*-type jurisdiction did not comply with the standard articulated in *Shaffer*. *Rush v. Savchuk*, 444 U.S. 320, 327-28 (1980). In *Holzsager*, the Second Circuit found that the defendant's lack of personal jurisdiction defense was not available until after the Supreme Court's opinion in *Rush* and that the defense was, therefore, not waived. 646 F.2d at 796. Here, Yahoo's defense was not available under controlling Federal Circuit precedent at the time Yahoo moved to dismiss for failure to state a claim (Dkt. 22)—indeed, the Supreme Court had not even granted certiorari at that time—or filed an answer (Dkt. 55), and neither of those two events can, therefore, constitute waiver.

Under the Second Circuit's controlling precedent, Yahoo's motion is timely. This Court should consider Yahoo's motion on the merits and disregard Plaintiffs' waiver claims. If Yahoo's motion is considered on the merits, it is clear that venue is improper and this action should be dismissed.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Yahoo respectfully requests that the Court dismiss Plaintiffs'

claims against it for improper venue.

Dated:  June 12, 2017                                      Respectfully submitted,

                                                          */s/ Patrick D. Curran*
                                                          Charles Verhoeven
                                                          Jennifer A. Kash (admitted *pro hac vice*)
                                                          Brian E. Mack (admitted *pro hac vice*)
                                                          QUINN EMANUEL URQUHART &
                                                            SULLIVAN LLP
                                                          50 California Street, 22nd Floor
                                                          San Francisco, CA 94111
                                                          Telephone: (415) 875-6600

                                                          Patrick D. Curran
                                                          John T. McKee
                                                          QUINN EMANUEL URQUHART &
                                                            SULLIVAN LLP
                                                          51 Madison Ave., 22nd Floor
                                                          New York, New York 10010
                                                          Telephone: (212) 849-7000

                                                          *Attorneys for Yahoo! Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ALMONDNET, INC., DATONICS, LLC, and INTENT IQ, LLC, | |
| Plaintiffs, | Civil Action No. 16-cv-1557-ILG-SMG |
| v. | **Jury Trial Demanded** |
| YAHOO! INC., | |
| Defendant. | |

**DECLARATION OF DAVID BRIGHTMAN IN SUPPORT OF YAHOO! INC.'S**
**MOTION TO DISMISS FOR IMPROPER VENUE**

1

I, David Brightman, declare as follows:

1.      I am an employee of Yahoo! Inc. ("Yahoo") and hold the title of Vice President, Associate General Counsel – IP Litigation.  I have held that position since February 2013 and have worked for Yahoo in other roles since November 2008.  I make this declaration based on my personal firsthand knowledge and, if called and sworn as a witness, I would testify competently thereto.

2.      Yahoo is a domestic corporation incorporated in the state of Delaware.

3.      Yahoo's principle place of business is located at 701 First Avenue, Sunnyvale, California, 94089.  Yahoo also has an office in San Francisco itself, which is located at 110 5th Street, Suite 200, San Francisco, California, 94123.

4.      Yahoo does not have a place of business or office in the Eastern District of New York.

5.      Yahoo does not own, lease, maintain, or operate any facilities in the Eastern District of New York.

Dated:  June 12, 2017                          Respectfully submitted,

                                               */s/ David Brightman*
                                               David Brightman

ii

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALMONDNET, INC., DATONICS, LLC, and INTENT IQ, LLC, | |
| Plaintiffs, | Civil Action No. 1:16-cv-01557-ILG-SMG |
| v. | **Jury Trial Demanded** |
| YAHOO! INC. | |
| Defendant. | |

## MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS
## AND IN SUPPORT OF CONDITIONAL CROSS-MOTION
## TO TRANSFER VENUE

**I.**     <u>INTRODUCTION</u>

Yahoo's motion to dismiss should be denied. Yahoo waived its opportunity to move to dismiss for lack of venue by failing to include it in its prior motion to dismiss in 2016. *See* Rule 12(g) and (h), Federal Rules of Civil Procedure ("FRCP").

In the alternative, plaintiffs AlmondNet, Inc., Datonics, LLC and Intent IQ, LLC (collectively, "AlmondNet") cross-move to transfer venue to the Southern District of New York under 28 U.S.C. § 1406(a). Transfer to the Southern District of New York is appropriate as an alternative to dismissal because venue there is proper and because a transfer to that district would allow the case to proceed without interruption.

**II.**     <u>YAHOO WAIVED ITS MOTION TO DISMISS</u>

On July 11, 2016, Yahoo filed a motion to dismiss under Rule 12. (Dkt. 23) That motion did not contain any argument based on venue. Rule 12(g)(2) provides that (with inapplicable exceptions) "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the

1

party but omitted from its earlier motion." Rule 12(h)(1)(A) further provides that a party waives a defense of lack of venue by omitting it from a motion in the circumstances described in Rule 12(g)(2).

Yahoo attempts to avoid its waiver by pointing to its reservation of a venue objection in its Answer. However, Rule 12(h)(A)(1) makes clear that a party waives a venue defense by omitting it from a motion to dismiss, regardless of whether the defense was listed in the party's Answer. A party may also waive a venue defense by omitting it from an Answer, as described in Rule 12(h)(A)(2), but that is an alternative path to waiver because those subsections are separated by the disjunctive word "or." Thus, even though mentioned in Yahoo's later Answer, failure to include the venue defense in Yahoo's motion to dismiss waived the defense.

Yahoo further attempts to salvage its motion by arguing its venue motion was not "available" to it. Contrary to Yahoo's argument, *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), did not effect a change in the law sufficient to excuse Yahoo's waiver. The Supreme Court in *TC Heartland* made clear that its decision was not a change in the law but rather a reiteration of a standard that had remained unchanged for more than 60 years, since at least its decision in *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957):

> In *Fourco,* this Court definitively and unambiguously held that the word "reside[nce]" in § 1400(b) has a particular meaning as applied to domestic corporations: It refers only to the State of incorporation. Congress has not amended § 1400(b) since *Fourco,* and neither party asks us to reconsider our holding in that case. Accordingly, the only question we must answer is whether Congress changed the meaning of § 1400(b) when it amended § 1391….

> The current version of § 1391 does not contain any indication that Congress intended to alter the meaning of § 1400(b) as interpreted in *Fourco*.

*TC Heartland*, 137 S. Ct. at 1520. Where the Supreme Court has not announced new law but simply restated existing law, no intervening change in the law can be found to avoid Yahoo's waiver. *See, e.g., In re Checking Account Overdraft Litigation*, 754 F.3d 1290,

2

1297 (11th Cir. 2014) (where Supreme Court acknowledged that it had "in the past" stated same rule, case was not intervening change to avoid a waiver).

The case on which Yahoo relies likewise demonstrates the need for "new law" to excuse a waiver. In *Holzsager v. Valley Hospital*, 646 F.2d 792, 795-96 (2d Cir. 1981), the court noted that the Supreme Court's intervening decision applied the standard at issue "for the first time" and that the Court had "never ruled upon the validity of the doctrine" before then. *See also Dow Chemical Co. v. Nova Chemical Corp.*, 803 F.3d 620, 630 (Fed. Cir. 2015) (intervening change in law found where "there can be no serious question that *Nautilus* changed the law of indefiniteness. This was indeed the very purpose of the *Nautilus* decision") (*citing Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014)); *Biomedical Patent Mgmt. Corp. v. California*, 505 F.3d 1328, 1342 (Fed. Cir. 2007) (decision that first considered the validity of Congress' attempted abrogation of state sovereign immunity in patent cases was intervening change in law).

If Yahoo wanted to preserve its challenge to venue, it was obligated to present some version of its venue argument in its first motion to dismiss, regardless of the state of Federal Circuit precedent. Indeed, TC Heartland faced the same dilemma with the same Federal Circuit precedent, yet it filed a motion to dismiss arguing venue, and it eventually succeeded in its challenge to venue. Yahoo presents no reason why it couldn't have filed exactly the same arguments as TC Heartland made when it filed its first motion to dismiss.[1]

---

[1] When Yahoo filed its first motion to dismiss, on July 11, 2016 (Dkt. 23) TC Heartland's arguments were a matter of public record. *See In re TC Heartland LLC*, 821 F.3d 1338 (Fed. Cir. April 29, 2016), *rev'd*, 137 S. Ct. 1514 (2017). Yahoo's lawyers did not need "clairvoyance" to make its venue defense. Indeed, it is noteworthy that Yahoo's motion contains no evidence, nor even an assertion, that Yahoo or its lawyers were unaware of the *TC Heartland* mandamus petition or the possible efforts to reverse the Federal Circuit panel decision when writing Yahoo's 2016 motion to dismiss.

3

The two courts that have considered the question have found that *TC Heartland* does not qualify as intervening law that excuses a failure to have raised the issue of venue in a responsive motion in a case where the pleadings are closed. The Eastern District of Virginia reasoned:

> [T]he circuit courts are only empowered to express the law of their circuit "[i]n the absence of a controlling decision by the Supreme Court. …" The Supreme Court has never overruled *Fourco*, and the Federal Circuit cannot overrule binding Supreme Court precedent.
>
> Based on the Supreme Court's holding in *TC Heartland*, *Fourco* has continued to be binding law since it was decided in 1957, and thus, it has been available to every defendant since 1957. Accordingly, the Court **FINDS** that *TC Heartland* does not qualify for the intervening law exception to waiver because it merely affirms the viability of *Fourco*.

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 2017 WL 2556679 *3, No. 2:15cv21 (E.D. Va. June 7, 2017 (citations omitted).

The Eastern District of Texas reached the same result in *Elbit Systems Land and C4I Ltd. v. Hughes Network Systems, LLC*, 2017 WL 2651618, No. 2:15-CV-00037-RWS-RSP (E.D.Tx. June 20, 2017): "*Fourco* was decided in 1957. While the Federal Circuit's decision in *VE Holding* was inconsistent with *Fourco*, the Federal Circuit cannot overturn Supreme Court precedent." *Id.* at *20.[2]

Yahoo, like the defendants in *Cobalt* and *Elbit*, and unlike in *TC Heartland*, simply failed to preserve its argument based on longstanding and controlling precedent.

---

[2]  *Westech Aerosol Corp. v. 3M Co.*, 2017 WL 2671297, No. C17-5067-RBL (W.D. Wa. June 21, 2017), permitted a defendant to *amend* its motion to dismiss to add venue challenge in a case where the pleadings were still open, rather than finding that *TC Heartland* was intervening law that warranted allowing the defendant to bring a *new* motion after the pleadings were closed. Importantly, in exercising its discretion to permit the amendment of the existing motion in *Westech*, the court found that the plaintiff would suffer no prejudice in view of the early stage of the proceedings. That is not the case here, where dismissal would result in a complete reset of a case that has been pending for over a year and has progressed into substantive proceedings.

4

Yahoo's latest Motion to Dismiss should be denied based on waiver under Rule 12(h)(1)(A).

## III.    CONDITIONAL CROSS-MOTION TO TRANSFER VENUE

Should the Court determine that *TC Heartland* is an intervening change in the law excusing Yahoo's failure to raise venue in its motion to dismiss, AlmondNet moves in the alternative, under 28 U.S.C. § 1406(a), to transfer venue to the Southern District of New York rather than to dismiss. Section 1406(a) allows this Court to transfer a case in which venue is improper to another district in which venue is proper. According to the patent venue statute applied in *TC Heartland*, 28 U.S.C. § 1400(b), venue lies where "the defendant has committed acts of infringement and has a regular and established place of business." Both conditions are met in Manhattan.

Yahoo has a regular and established place of business at 229 West 43rd Street in Manhattan, the old New York Times Building.[3] In addition, AlmondNet asserts infringement based in part on the activities of Brightroll, which was acquired by Yahoo in 2014. At that time, Brightroll had its headquarters in the Empire State Building and directed the actions that AlmondNet has accused of directly infringing its patents from that location.[4]

In addition, AlmondNet has alleged that Yahoo has induced its customers, including in the Southern District of New York, to infringe the apparatus claims at issue in this case. The Complaint alleges that Yahoo induces its customers to infringe in this manner (35 U.S.C. § 271(b)) by "marketing, selling, offering to sell, providing, instructing, supplying, operating, licensing, or supporting the above-listed services, platforms, products, or activities" with respect to its customers, while knowing of the

---

[3]    *See*    http://www.nytimes.com/2013/05/21/nyregion/yahoo-to-consolidate-new-york-headquarters-in-times-square.html.

[4]    *See* https://therealdeal.com/2014/09/10/ad-platform-firm-takes-full-floor-at-empire-state-building/.

5

patents because of discussions with AlmondNet. *See* Dkt. 68 (1st Am. Compl.), ¶¶19, 30. There can be little doubt that Yahoo has directed the actions that are alleged to infringe by inducement towards at least some customers in the Southern District of New York.[5]

Even if the relevant Yahoo servers are located outside of that district, Yahoo customers in the Southern District of New York directly infringe AlmondNet's patents there when they "use" a Yahoo system that meets the patent claim from that location. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005) (*en banc*) (for system claims, Blackberry customers "used" their infringing system in the United States even though one element of the apparatus claim was located in Canada, because the customers put "the system as a whole into action" by controlling the transmission of the originated information and benefitting from such an exchange of information).

In sum, Yahoo satisfies the criteria for venue in the Southern District of New York: it has an established place of business in that district and has committed acts of direct and indirect infringement in that district.

Transfer to the Southern District of New York, rather than dismissal, is also warranted "in the interests of justice." *See* § 1406(a). If this action is dismissed, and AlmondNet must refile elsewhere, it will lose damages. Patent damages are available in a six-year window. 35 U.S.C. § 286. A dismissal would effectively move that window forward from the filing date of AlmondNet's complaint herein in March 2016 to the date of any new Complaint – a loss of well over a year. Such a loss in damages is precisely the sort of injustice § 1406(a) was enacted to prevent. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 913, 915-16 (1962) (dismissal that would result in loss of "a substantial part of [plaintiff's] cause of action under the statute of limitations" is an "example of the

---

[5]     If there is any doubt about whether Yahoo has committed or induced acts of alleged infringement in the Southern District of New York, AlmondNet respectfully requests that the cross-motion be held in abeyance while it has the opportunity to pursue discovery on the issue.

problem sought to be avoided"); *see also Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993)("functional purpose" of § 1406(a) "is to eliminate impediments to the time disposition of cases and controversies on their merits").

Transfer to a nearby district is also "in the interests of justice" because both parties have significant facilities, witnesses, and documents here. Plaintiffs' sole office locations are in Brooklyn, only a subway ride from the SDNY. Yahoo's CEO described its offices in the New York Times building as its "home here in New York." *See* article at n.3, *supra*.

Moreover, dismissal of the action, rather than transfer, would prejudice AlmondNet by allowing Yahoo additional delay. Yahoo has repeatedly sought to avoid disclosing its prior art defenses, indeed at times to the chagrin of the Court. Recently, indeed after the *TC Heartland* decision, the parties negotiated a schedule culminating in a claim construction hearing targeted for the end of this year, which included a Yahoo-requested postponement of the due date for its invalidity contentions to June 30th. At no point during those discussions did Yahoo indicate any dissatisfaction with the venue of the case. But the same day as the Court entered the new scheduling order granting Yahoo's postponement, Yahoo filed this motion. Yahoo's motion to dismiss, and its intentional choice to seek dismissal rather than transfer, seems couched to delay further the time when it must disclose its defenses and continue with the claim-construction process. Granting transfer rather than dismissal would be in the interest of justice because dismissal would vacate the negotiated scheduling order and allow Yahoo further and unwarranted delay. AlmondNet believes that, because the Eastern and Southern Districts of New York share local rules, and because transfer would maintain the scheduling order, a transfer will allow the parties to continue to proceed with the claim-construction process.

7

IV.   **CONCLUSION**

Yahoo's motion to dismiss should be denied under Rule 12(h). Yahoo's previous motion to dismiss, which did not raise the venue issue, waived any venue defense. *TC Heartland*, which stated explicitly that it was *not* creating new law, does not constitute an intervening change in law justifying Yahoo's delay.

In the alternative, if the Court determines that venue cannot properly remain in this district, AlmondNet respectfully requests transfer under 28 U.S.C. § 1406(a) to the Southern District of New York.

| | |
|---|---|
| Dated: June 26, 2017 | Respectfully submitted,<br>SUSMAN GODFREY L.L.P. |

*/s/ Ian B. Crosby*
William Christopher Carmody
1301 Avenue of the Americas, 32nd Fl.
New York, New York 10019-6023
(212) 336-8330
bcarmody@susmangodfrey.com

Ian B. Crosby (admitted *pro hac vice*)
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
(206) 516-3880
icrosby@susmangodfrey.com

LOUIS J. HOFFMAN, P.C.
Louis J. Hoffman (admitted *pro hac vice*)
7689 East Paradise Lane, Suite 2
Scottsdale, Arizona 85260
(480) 948-3295
Louis@valuablepatents.com

*Attorneys for Plaintiffs*

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2017, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to the attorneys of record.

*/s/ Louis J. Hoffman*

9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ALMONDNET, INC., DATONICS, LLC, and INTENT IQ, LLC, | |
| Plaintiffs, | Civil Action No. 16-cv-1557-ILG-SMG |
| v. | **Jury Trial Demanded** |
| YAHOO! INC., | |
| Defendant. | |

## YAHOO! INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE AND OPPOSITION TO PLAINTIFFS' CONDITIONAL CROSS-MOTION TO TRANSFER

Charles Verhoeven
Jennifer A. Kash (admitted *pro hac vice*)
Brian E. Mack (admitted *pro hac vice*)
QUINN EMANUEL URQUHART &
  SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600

Patrick D. Curran
John T. McKee
QUINN EMANUEL URQUHART &
  SULLIVAN LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

*Attorneys for Yahoo! Inc.*

July 10, 2017

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...............................................................................................1

II.   PLAINTIFFS CONCEDE THAT VENUE HERE IS IMPROPER ...................................2

III.  PLAINTIFFS' WAIVER ARGUMENTS FAIL FOR MULTIPLE REASONS ...............3

      A.    Yahoo Explicitly Raised Venue As A Defense In Its Answer................................3

      B.    *TC Heartland* Changed Decades Of Precedent On Patent Venue; Yahoo
            Did Not Waive Defenses That Were Not Available Before *TC Heartland*
            Changed The Law ...................................................................................................4

IV.   THE INTERESTS OF JUSTICE DO NOT WARRANT TRANSFER ............................7

V.    CONCLUSION...................................................................................................10

i

# TABLE OF AUTHORITIES

## CASES

*Brown v. Ghost Town in the Sky*,
    No. 01-cv-189, 2001 WL 1078341 (E.D.N.Y. Aug. 23, 2001) ........................................ 8

*Caldwell-Baker Co. v. Southern Ill. Railcar Co.*,
    225 F. Supp. 2d 1243 (D. Kan. 2002) ........................................................... 3, 4

*Delta Air Lines, Inc. v. Wunder*,
    No. 13-cv-3388, 2014 WL 12147364 (N.D. Ga. May 21, 2014)..................................... 4

*Fourco Glass Co. v. Transmirra Products Corp.*,
    353 U.S. 222 (1957)............................................................................... 5

*Guccione v. Flynt*,
    617 F. Supp. 917 (S.D.N.Y. 1985) .............................................................. 4

*Hawknet, Ltd. v. Overseas Shipping Agencies*,
    590 F.3d 87 (2d Cir. 2009)...................................................................... 6

*Holzsager v. Valley Hosp.*,
    646 F.2d 792 (2d Cir. 1981).................................................................. 1, 6

*Kennedy Krieger Inst., Inc. v. Brundage Mgmt. Co., Inc.*,
    No. 14-cv-1680, 2015 WL 926139 (D. Md. Mar. 3, 2015) .................................... 4

*MacNeil v. Whittemore*,
    254 F.2d 820 (2d Cir. 1958) .................................................................... 4

*Mechanical Plastics Corp. v. Unifast Indus., Inc.*,
    610 F. Supp. 1073 (E.D.N.Y. 1985) ............................................................ 5

*NTP, Inc. v. Research in Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005).............................................................. 9, 10

*O'Keefe v. Blue & Gold Fleet, L.P.*,
    634 F. Supp. 2d 284 (E.D.N.Y. 2009) .......................................................... 8

*Pisani v. Diener*,
    No. 07-cv-5118, 2009 WL 749893 (E.D.N.Y. Mar. 17, 2009)................................... 8

*Remley v. Lockheed Martin Corp.*,
    No. 00-cv-2495, 2001 WL 681257 (N.D. Cal. June 4, 2001)................................. 3, 4

*Serby v. First Alert, Inc.*,
    934 F. Supp. 2d 506 (E.D.N.Y. 2013) .......................................................... 6

*In re Ski Train Fire*,
    224 F.R.D. 543 (S.D.N.Y. 2004) ............................................................... 8

*Spar, Inc. v. Information Resources, Inc.*,
    956 F.2d 392 (2d Cir. 1992)..................................................................... 8, 9, 10

*In re TC Heartland LLC*,
    821 F.3d 1339 (Fed. Cir. Apr. 29, 2016) ......................................... 1, 2, 5, 7, 9

*Westech Aerosol Corp. v. 3M Co.*,
    No. 17-cv-5067, 2017 WL 2671297 (W.D. Wash. June 21, 2017) ................... 7

## STATUTES

28 U.S.C. § 1295(a)(1)................................................................................. 6

28 U.S.C. § 1400(b) .................................................................................... 2

28 U.S.C. § 1406 ..................................................................................... 2, 8

35 U.S.C. § 286 ......................................................................................... 10

Rule 12(b)(3) .............................................................................................. 2

Rule 12(b)(5)............................................................................................... 2

Rule 12(b)(6) .............................................................................................. 4

Rule 12(g)(2)...................................................................................... 1, 3, 4

Rule 12(h) ................................................................................................... 4

iii

## I.    **INTRODUCTION**

In their Opposition ("Opp.") Plaintiffs AlmondNet, Inc., Datonics, LLC, and Intent IQ, LLC (collectively, "Plaintiffs") make no attempt to argue that the Eastern District of New York is a proper venue for this case. Plaintiffs instead concede that Defendant Yahoo!, Inc. ("Yahoo") neither resides in this district or has a regular and established place of business here. Plaintiffs thus rest their entire opposition on one theory: waiver. Plaintiffs' waiver argument is incorrect for two reasons.

First, Yahoo has never, either implicitly or explicitly, conceded that venue in this district was proper. To the contrary, Yahoo explicitly contested venue, and referenced the Supreme Court's pending *TC Heartland* decision by name. This explicit venue defense put Plaintiffs on notice of the venue issue. Nothing more was required. Yahoo had no obligation to bring a pointless motion to dismiss that this Court would be bound to deny under then-prevailing law. And while Plaintiffs point repeatedly to Yahoo's earlier Rule 12 motion, they ignore that Yahoo voluntarily *withdrew* that motion prior to resolution, as this Court requested – negating any waiver claim under Rule 12(g)(2).

Second, under controlling Second Circuit precedent, no waiver occurred because the Second Circuit does not require pointless motions preserving not-yet-available defenses. Instead, the Second Circuit has made crystal clear that "a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made." *Holzsager v. Valley Hosp.,* 646 F.2d 792, 796 (2d Cir. 1981). Thus, in this circuit, there is no reason to burden a district court with a motion that must be denied, simply to preserve a future change in law. *TC Heartland* announced a change in nearly three decades of patent venue law – Yahoo had no obligation to predict the future and move to dismiss for improper

venue until the Supreme Court issued its decision overturning controlling Federal Circuit precedent. Plaintiffs argue that *TC Heartland* is not "new law," but this simply re-writes the Supreme Court's decision. Indeed, if Plaintiffs truly maintain that *TC Heartland* is not "new law," while at the same time conceding that venue in the Eastern District of New York is no longer proper, Plaintiffs would be conceding that they lacked any Rule 11 basis to file suit here. Because *TC Heartland* did change the law, Plaintiffs' waiver argument should be rejected in its entirety and this case should be dismissed.

Recognizing the weakness of their waiver arguments, Plaintiffs, for the first time, conditionally "cross-move" to transfer the case to the Southern District of New York. But Plaintiffs' request is the precise type of "forum shopping" that the Second Circuit has cautioned against in its decisions interpreting the "interests of justice" standard enshrined in § 1406. That standard typically favors transfer only where a plaintiff would be entirely time-barred absent transfer or where transfer is to the venue where the operative facts underlying the complaint took place. Neither circumstance is applicable here. The only prejudice Plaintiffs point to is prejudice of their own making – indeed, Plaintiffs refused Yahoo's offer to transfer by agreement rather than engage in motion practice. Under these circumstances Plaintiffs cannot credibly claim that dismissal is improper; instead, dismissal is the appropriate remedy.

## II.  <u>PLAINTIFFS CONCEDE THAT VENUE HERE IS IMPROPER</u>

At the outset, Plaintiffs make *no* attempt to argue that venue is proper in this District post-*TC Heartland*. Plaintiffs admit that Yahoo (a Northern California company incorporated in Delaware) neither resides in or has a regular and established place of business in the Eastern District of New York. Thus, under the Supreme Court's decision in *TC Heartland*, 28 U.S.C. §

1406 and Rule 12(b)(3) require dismissal of this case for failure to file suit in a proper venue, as limited by 28 U.S.C. § 1400(b).

## III. PLAINTIFFS' WAIVER ARGUMENTS FAIL FOR MULTIPLE REASONS

Having conceded that venue in this district is now improper, Plaintiffs' Opposition advances only one argument as to why this case should not be dismissed: waiver. But Plaintiffs' waiver arguments fail for at least two reasons.

### A. Yahoo Explicitly Raised Venue As A Defense In Its Answer

When Yahoo answered the Complaint in this action, it clearly and unambiguously stated, "**Yahoo reserves the right to challenge venue based upon any change in law, including the Supreme Court's upcoming decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC,* No. 16-341**." D. I. 55, ¶ 10 (emphasis added). This put Plaintiffs on notice of the venue issue with no ambiguity. Nothing more was required to preserve this defense. Then, within days of receiving the Supreme Court's decision in *TC Heartland*, Yahoo moved to dismiss. Plaintiffs admit these facts in their Opposition and, more importantly, never claim that Yahoo's Answer somehow constituted waiver. Opp., 1-2 (arguing waiver only by Yahoo's prior Rule 12 motion).

Rather than address Yahoo's Answer, which explicitly raised the venue defense, Plaintiffs incorrectly focus on Yahoo's earlier pre-Answer motion to dismiss. Plaintiffs claim that by filing a prior motion to dismiss under Rule 12(b)(6), Yahoo forever foreclosed itself under Rule 12(g)(2) from raising the defense of improper venue. Opp., 1-2. This is incorrect.

As Plaintiffs tactically omit from their Opposition, Yahoo *voluntarily withdrew* its prior motion to dismiss prior to any hearing or adjudication by the Court. Under such circumstances, there is no waiver. *See Caldwell-Baker Co. v. Southern Ill. Railcar Co.*, 225 F. Supp. 2d 1243, 1259 (D. Kan. 2002) (no waiver where defendants withdrew Rule 12 motion for more definite

3

statement and then subsequently moved to dismiss for lack of personal jurisdiction); *Remley v. Lockheed Martin Corp.*, No. 00-cv-2495, 2001 WL 681257, at *2-3 (N.D. Cal. June 4, 2001) (holding that withdrawn Rule 12(b)(6) motion did not constitute waiver of right to bring subsequent Rule 12(b)(3) motion to dismiss for improper venue); *see also Kennedy Krieger Inst., Inc. v. Brundage Mgmt. Co., Inc.*, No. 14-cv-1680, 2015 WL 926139, at *3 n. 18 (D. Md. Mar. 3, 2015) (citing *Caldwell-Baker* and finding no waiver of personal jurisdiction defense where defendants filed and then withdrew motion for summary judgment prior to adjudication); *but see Delta Air Lines, Inc. v. Wunder*, No. 13-cv-3388, 2014 WL 12147364, at *2 (N.D. Ga. May 21, 2014) (finding waiver due to prior Rule 12(b)(5) motion).

This conclusion makes sense, and a contrary conclusion would elevate form over substance. In the Second Circuit a defendant moving to dismiss under Rule 12 could simply amend its Rule 12 motion to include other defenses, and those defenses would not be waived under Rule 12(h). *See MacNeil v. Whittemore*, 254 F.2d 820, 821 (2d Cir. 1958) (holding that Rule 12(h) does not act to bar a party from "expand[ing] the grounds of [a] motion" prior to resolution by the Court); *Guccione v. Flynt,* 617 F. Supp. 917, 918 (S.D.N.Y. 1985) (finding no waiver where defendant filed second Rule 12 motion prior to resolution of the first). Indeed, as the *Caldwell-Baker*, *Remley*, and *Kennedy Krieger* courts have all observed "[w]ithdrawal of a motion has a practical effect as if the party had never brought the motion." *Caldwell-Baker*, 225 F. Supp. 2d at 1259. Yahoo voluntarily withdrew its Rule 12(b)(6) motion to dismiss and therefore, nothing in Rule 12(g)(2) supports a finding of waiver based on that motion.

**B.** ***TC Heartland* Changed Decades Of Precedent On Patent Venue; Yahoo Did Not Waive Defenses That Were Not Available Before *TC Heartland* Changed The Law**

Even if Yahoo's withdrawn Rule 12 motion somehow constituted waiver of then-available defenses under Rule 12(g)(2) – and it did not – Yahoo would still be able to raise

4

defenses that were not available at the time of that original Rule 12 motion. Plaintiffs therefore argue that *TC Heartland* did not change the law. Opp., 2. Indeed Plaintiffs' entire argument relies on the faulty premise that *TC Heartland* merely "reiterat[ed] a standard that had remained unchanged" since the Supreme Court's 1957 decision in *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957).[1] *Id.*

This is clearly incorrect. Indeed, Plaintiffs need only look at the Federal Circuit's now-erroneous decision in *TC Heartland* to understand how wrong their argument is. In the Federal Circuit's *TC Heartland* opinion, that court made clear that under then-binding Federal Circuit precedent, the 1957 *Fourco* decision was not considered good law after Congress amended patent venue statutes in 1988:

> In *VE Holding,* we found that the Supreme Court's decision in *Fourco* with regard to the appropriate definition of corporate residence for patent cases in the absence of an applicable statute to be no longer the law because in the 1988 amendments Congress had made the definition of corporate residence applicable to patent cases.

*In re TC Heartland LLC*, 821 F.3d 1339, 1342 (Fed. Cir. Apr. 29, 2016). The Federal Circuit went on to note that "[c]ongressional reports ha[d] repeatedly recognized that *VE Holding* is the prevailing law" and that "*Fourco* was not and is not the prevailing law that would have been captured." *Id.* at 1343. Until *VE Holding* was overturned by the Supreme Court, this Court was bound to follow that decision. Thus, until *TC Heartland*, the Federal Circuit decision in *VE Holding*, which addressed Congress's 1988 amendments to the patent venue statute controlled – not *Fourco*, which predated those 1988 amendments by 30 years. There is no dispute that the Federal Circuit's decision on this issue bound the Eastern District of New York. *See, e.g.*,

---

[1]    Plaintiffs argument rings particularly hollow because, if accepted as true, it would mean that Plaintiffs lacked a Rule 11 basis for initiating suit in this district and could therefore be subject to sanctions for filing in a venue it knew to be improper.

*Mechanical Plastics Corp. v. Unifast Indus., Inc.*, 610 F. Supp. 1073, 1074 (E.D.N.Y. 1985) ("Despite [] our disagreement with the Federal Circuit, we believe that we are bound by the Federal Circuit, in light of the fact that any appeal in this case will go to the Federal Circuit under 28 U.S.C. § 1295(a)(1)."); *Serby v. First Alert, Inc.*, 934 F. Supp. 2d 506, 512 (E.D.N.Y. 2013) ("[T]his Court is bound to apply the law of the Federal Circuit.").

Plaintiffs' argument thus boils down to a simple and absurd claim – Yahoo was required to file a losing motion with this Court, and require this Court to spend time and energy denying that motion, in order to preserve an argument that might or might not become a winning argument if the Supreme Court later changed the law. This is not how waiver works – and for good reason. It would be pointless to make district courts deny countless losing motions filed simply to preserve issues that are clear losers under current law, simply because those same losing issues could blossom into winning arguments if the law were to change. The law of waiver in the Second Circuit is much more sensible. A party need not raise an argument until the law supports that argument. That is precisely what Yahoo did, and it is all the Second Circuit required Yahoo to do. *See Holzsager v. Valley Hosp.*, 646 F.2d 792, 796 (2d Cir. 1981) ("a party cannot be deemed to have waived objections or defenses" when those defenses were not yet recognized "at the time they could first have been made"). Indeed, as Yahoo explained in its Motion, the Second Circuit applies a liberal standard to this analysis that only "demands conscientiousness, not clairvoyance, from parties." *Hawknet, Ltd. v. Overseas Shipping Agencies,* 590 F.3d 87, 92 (2d Cir. 2009). Under the Second Circuit's rule, there is no waiver where a new decision is "***directly contrary to controlling precedent***." *Id.* (emphasis added).

The Second Circuit is no outlier in this regard. Indeed, just a few days ago, another district court in the Ninth Circuit reached this same conclusion. As the court aptly stated in

*Westech Aerosol Corp. v. 3M Co.*, No. 17-cv-5067, 2017 WL 2671297 (W.D. Wash. June 21, 2017):

> *TC Heartland* changed the venue landscape. For the first time in 27 years, a defendant may argue credibly that venue is improper in a judicial district where it is subject to a court's personal jurisdiction but where it is not incorporated and has no regular and established place of business. Defendants could not have reasonably anticipated this sea change, and so did not waive the defense of improper venue by omitting it from their initial pleading and motions.

*Id.*, at *2. Here, Yahoo's case against waiver is even stronger – as noted above, Yahoo did ***not*** omit this issue from its initial Answer, but instead ***expressly raised*** this issue in its Answer. And just like the defendant in *Westech Aersol*, this case is only in the earliest of stages. Discovery has only just begun, and is in fact not yet fully open; claim construction is still months away; the pleadings are still being actively revised, with Plaintiffs having recently amended their complaint; and no trial date is on the calendar, let alone imminent.[2] This posture could not be more different from the posture in the cases Plaintiffs rely on. Opp., 4. While Plaintiffs cite the *Cobalt Boats* and *Elbit Systems* cases heavily, Plaintiffs strategically fail to mention that both cases were mere ***days away from trial*** when the venue issue was first raised. This case is nothing like *Cobalt Boats* or *Elbit Systems*, and the waiver arguments Plaintiffs raise have no applicability to this case.

## IV.     THE INTERESTS OF JUSTICE DO NOT WARRANT TRANSFER

Recognizing the weakness of their sole merits argument, Plaintiffs, for the first time, "conditionally cross-move" to transfer this case to the Southern District of New York. Opp., 5.

---

[2] While Plaintiffs claim that this case "has progressed into substantive proceedings" (Opp., 4 n. 2) they tellingly fail to explain what "substantive proceedings" have actually taken place. Yahoo is likewise unaware of any case events that have yet occurred that could be non-frivolously described as "substantive proceedings."

The parties agree that the present motion is governed by 28 U.S.C. § 1406 which provides that the Court, upon a finding that venue is improper, "shall dismiss, *or if it be in the interest of justice,* transfer such case to any district or division in which it could have been brought." (emphasis added).  Courts in this district have found that the "interests of justice" favor transfer only where a plaintiff's claims would otherwise be time-barred in their entirety or where transfer would result in the case being venued in the district where the operative facts underlying the complaint took place.  *O'Keefe v. Blue & Gold Fleet, L.P.*, 634 F. Supp. 2d 284, 289 (E.D.N.Y. 2009) (transfer to district where operative facts took place); *Pisani v. Diener*, No. 07-cv-5118, 2009 WL 749893, at *8-9 (E.D.N.Y. Mar. 17, 2009) (transfer to avoid time-bar of plaintiff's claims); *cf. Brown v. Ghost Town in the Sky*, No. 01-cv-189, 2001 WL 1078341, at *4 (E.D.N.Y. Aug. 23, 2001) (refusing to transfer under § 1406 because claims would not be time-barred).

But the Second Circuit has cautioned that transfer under § 1406 "should not operate automatically to give a plaintiff an additional opportunity to select the district of litigation" because "[o]nce a plaintiff has commenced its action [] its opportunity to search for a more conducive forum ordinarily is concluded." *Spar, Inc. v. Information Resources, Inc.*, 956 F.2d 392, 394 (2d Cir. 1992).  And a last-minute identification of an "alternative venue" for suit by the plaintiff should be viewed skeptically.  *See In re Ski Train Fire*, 224 F.R.D. 543, 549 (S.D.N.Y. 2004) (equivocal and tardy identification of proposed transfer venue weighed against interests of justice determination).  Rather, district courts entertaining a plaintiff's request for transfer under § 1406 should be wary of attempts to "forum shop."  *Spar*, 956 F.2d at 394. Plaintiffs here fail to show how the "interests of justice" here favor transfer.

As a threshold matter, before filing the present motion, Yahoo contacted Plaintiffs and inquired whether, in light of *TC Heartland*, Plaintiffs would join Yahoo in requesting that the

Court transfer this action to the Northern District of California – the district where Yahoo is based, where its relevant employees are located, where Plaintiffs and Yahoo have met for discussions regarding these patents, and where the operative facts giving rise to Plaintiffs' claims took place (*i.e.* the development and maintenance of the accused advertising products).  Yahoo explained to Plaintiffs that Yahoo believed the appropriate remedy was dismissal – but that Yahoo would work cooperatively with Plaintiffs to transfer venue to the Northern District of California in lieu of dismissal, saving Plaintiffs one year of damages, if Plaintiffs would consent to transfer.  Plaintiffs refused this offer – thus necessitating the present motion.  Plaintiffs should not be heard to complain that they will be prejudiced by a dismissal when they, not Yahoo, invited that outcome by maintaining this lawsuit in an improper jurisdiction and refusing Yahoo's good-faith offer to jointly seek transfer to a proper and convenient forum.

Plaintiffs have also identified no reason why the Southern District of New York is a logical venue for this case.  Yahoo has offices around the country, and Plaintiffs offer scant reasoning as to why that district rather than any of the many others where Yahoo has an office would be the proper venue for suit.[3]  Plaintiffs identify no witnesses, either for the parties or from non-parties, that reside within the Southern District of New York.  Nor do Plaintiffs even attempt to argue that any of the products or patents at issue in the case were developed or

---

[3]  Yahoo also disputes that any alleged "acts of infringement" take place in that district for two reasons.  First, Yahoo expressly disputes that it or any of its customers infringe any claim of any of the asserted patents, either directly or indirectly or literally or under the doctrine of equivalents.  That is a substantive merits question that will need to be resolved either by way of summary judgment or trial.  Relevant to this inquiry however, Yahoo also disputes that the alleged "acts of infringement" take place in the Southern District of New York.  Plaintiffs cite only one case, *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) in support of its claim that "acts of infringement" must take  place in the Southern District of New York.  Opp., 6.  But *NTP* dealt with the question of whether a plaintiff could recover where part of the infringement system resided beyond the reach of U.S. patent laws and, most importantly, *NTP* says nothing about where "acts of infringement" occur within the United States for purposes of venue.

9

maintained there. At bottom, Plaintiffs identify no operative facts or evidentiary sources that would make transfer to the Southern District of New York a result compelled by the interests of justice – rather, transfer to that district would simply be the "forum shopping" warned of by the Second Circuit in *Spar*.

Finally, Plaintiffs also complain that dismissal would result in the loss of damages between the time they filed their initial complaint in March 2016 and the filing of their new complaint and by delaying proceedings.[4] Opp., 6. But Plaintiffs could have avoided both outcomes simply by agreeing to a voluntary transfer *before* Yahoo filed the present motion. Indeed, Yahoo explicitly discussed this issue with Plaintiffs before filing its motion to dismiss. In any event, Plaintiffs' claims (without conceding that they have any merit) would not be foreclosed by any statute of limitations if this case were dismissed rather than transferred. Under 35 U.S.C. § 286, Plaintiffs, upon refiling, could still seek damages for the preceding six years of (alleged) infringement preceding that new complaint. Thus, Plaintiffs' reliance on cases involving time-barred claims is improper. Plaintiffs' claims would not be time-barred – and any reduction in damages for those re-filed claims would be prejudice of Plaintiffs' own making, by refusing a transfer to the Northern District of California (the logical forum for this suit).

## V.    CONCLUSION

For the foregoing reasons, Yahoo respectfully requests that the Court dismiss Plaintiffs' claims against it for improper venue.

---

[4] Plaintiffs argue that transfer, rather than outright dismissal, would "maintain the scheduling order" (Opp., 7) but that proposition makes no sense. The transferee court will decide the schedule, and any transferee court could decide to maintain the schedule in this case or set a new schedule. If Plaintiffs true concern is scheduling, there would have been no reason to refuse Yahoo's request to transfer to the Northern District of California – Plaintiffs could simply have sought the same schedule in that court. Instead, it appears that Plaintiffs are engaged in forum shopping and would prefer to keep this case from being heard in Yahoo's principal place of business, regardless of the schedule.

Dated:  July 10, 2017                                Respectfully submitted,

                                                     /s/ Patrick D. Curran
                                                     Charles Verhoeven
                                                     Jennifer A. Kash (admitted *pro hac vice*)
                                                     Brian E. Mack (admitted *pro hac vice*)
                                                     QUINN EMANUEL URQUHART &
                                                        SULLIVAN LLP
                                                     50 California Street, 22nd Floor
                                                     San Francisco, CA 94111
                                                     Telephone: (415) 875-6600

                                                     Patrick D. Curran
                                                     John T. McKee
                                                     QUINN EMANUEL URQUHART &
                                                        SULLIVAN LLP
                                                     51 Madison Ave., 22nd Floor
                                                     New York, New York 10010
                                                     Telephone: (212) 849-7000

                                                     *Attorneys for Yahoo! Inc.*

11

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7216**

WRITER'S EMAIL ADDRESS
**patrickcurran@quinnemanuel.com**

August 28, 2017

Judge I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 8B South
Brooklyn, New York 11201

Re:     *AlmondNet, Inc. et al v. Yahoo! Inc.*, No. 1:16-cv-01557-ILG-SMG (E.D.N.Y.)

Dear Judge Glasser:

We respectfully write to submit supplemental authority in connection with Defendant Yahoo! Inc.'s ("Yahoo") pending Motion to Dismiss for Improper Venue (D.I. 70).

Plaintiffs AlmondNet, Inc., Datonics, LLC, and Intent IQ, LLC (collectively "Plaintiffs") incorrectly argued that Yahoo waived any venue objection, because *TC Heartland LLC v. Kraft Foods Group Brands LLC* supposedly "did not effect a change in the law." (D.I. 71-1, 1-2). Several recent decisions reject this same argument.

For example, in *OptoLum, Inc. v. Cree, Inc.*, No. 16-cv-3828 (D. Ariz.), plaintiff OptoLum argued, just as Plaintiffs argue here, that Cree waived venue objections because *TC Heartland* did not qualify as an intervening change in law. 2017 WL 3130642, at *1. The court squarely rejected that argument:

> Contrary to OptoLum's assertion, *TC Heartland* changed the venue landscape just as *VE Holding* had done 27 years earlier. Indeed, the Supreme Court recognized that following its decision in *Fourco* in 1957, the venue "landscape remained *unchanged until 1988*, when Congress amended the general venue statute, § 1391(c)[.]" *TC Heartland, 137* S. Ct. at 1519 (emphasis added). The Court further noted that following *VE Holding* in 1990, "no new *developments occurred*" until Congress adopted the current version of § 1391 in 2011." *Id.* (emphasis added). Thus, the Supreme Court itself

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

acknowledged that the venue landscape has changed and developed since its decision 60 years ago in *Fourco*, including when *VE Holding* "announced its view" of the effect of Congress' amendment of § 1391(c) on the patent venue statute. *Id.*

*OptoLum*, 2017 WL 3130642, at *3 (emphasis in original). The court concluded that "it was not, '**for all practical purposes**,' possible for Cree to assert the defense of improper venue in light of the binding nature of *VE Holding* and its presence on the venue landscape for the past few decades." *Id.*, at *5 (emphasis added). The *OptoLum* court's common-sense analysis of this issue is equally applicable here. At the time of Yahoo's initial Rule 12 motion, *VE Holdings* made a venue challenge futile "for all practical purposes" – a venue challenge could only tax this Court's limited resources, with no practical purpose. Yahoo's explicit objection to venue in its Answer more than sufficiently preserved the venue issue.

Numerous courts considering this same issue recently have reached the same conclusion as *OptoLum*, noting that the *TC Heartland* decision was a change in law. *CG Tech. Development, LLC v. Fanduel, Inc.*, No. 2:16-cv-801, 2017 WL 3207233, at *2 (D. Nev. July 27, 2017) ("Before *TC Heartland*, the law litigants faced was *VE Holding*. As noted, *supra*, the Courts of Appeals to have decided the issue appear to have uniformly held that under such circumstances a circuit-precluded defense is not 'available' for the purposes of waiver."); *Ironburg Inventions Ltd. v. Valve Corp.*, No. 1:15-cv-4219, 2017 WL 3307657, at *3 (N.D. Ga. Aug. 3, 2017) (holding "that *TC Heartland* is an intervening change in the law" sufficient to avoid waiver); *Valspar Corp. v. PPG Indus., Inc.*, No. 16-cv-1429, 2017 WL 3382063, at *3 (D. Minn. Aug. 4, 2017) (same); *Cutsforth, Inc. v. LEMM Liquidating Co., LLC*, No. 12-cv-1200, 2017 WL 3381816, at *3 (D. Minn. Aug. 4, 2017) (same); *Simpson Performance Products, Inc. v. NecksGen, Inc.*, No. 5:16-cv-153, 2017 WL 3616764, at *5 (W.D.N.C. Aug. 23, 2017) (same); *Simpson Performance Products, Inc. v. Mastercraft Safety, Inc.*, No. 5:16-cv-155, 2017 WL 3620001, at *5 (W.D.N.C. Aug. 23, 2017) (same). Yahoo made these same points in its Reply brief (D.I. 72, 4-7) and respectfully requests that the Court adopt the view set forth in this line of cases.

Separately, the court in *Hand Held Products, Inc. v. The Code Corporation*, No. 2:17-cv-167 (D.S.C.), held that – regardless of whether *TC Heartland* qualifies as an intervening change in the law – "it would be inequitable to deny [defendant] the opportunity to seek proper venue . . . because [defendant] reasonably relied on what nearly ever litigant thought was binding precedent governing patent litigation venue for the past 27 years." 2017 WL 3085859, at *3. The *Hand Held Products* court further held that equity particularly counseled against waiver where "no prejudice results to Plaintiff" because "litigation in this matter has just begun," and the defendant's Answer was submitted only a few weeks before it moved to dismiss. *Id.* As explained in greater detail in Yahoo's Reply (D.I. 72, 7), this case is similarly in its infancy. Discovery has been limited to date, *Markman* briefing has not yet occurred, no depositions have taken place, and relatively few documents have been produced. At this early stage of the case, Plaintiffs cannot credibly claim prejudice. Yahoo respectfully requests that this Court, like the *Hand Held Products* court, reject Plaintiffs' waiver arguments on equitable grounds even if this Court determines that *TC Heartland* was not an intervening change in law.

2

Respectfully submitted,

*Patrick D. Cm* (signature)

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
ALMONDNET, INC., DATONICS,          :    16-CV-1557(ILG)
LLC, AND INTENT IQ, LLC,            :
                                    :
         Plaintiffs,                :
                                    :    United States Courthouse
                                    :    Brooklyn, New York
         -against-                  :
                                    :
                                    :
                                    :    Friday, September 1, 2017
YAHOO! INC.,                        :    12:00 p.m.
                                    :
         Defendant.                 :
                                    :
                                    :
- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
BEFORE THE HONORABLE I. LEO GLASSER
SENIOR UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S :

For the Plaintiffs:      SUSMAN GODFREY, LLP
                         Attorneys for the Plaintiffs
                              1201 Third Avenue, Suite 3800
                              Seattle, Washington 98101
                         BY: IAN B. CROSBY, ESQ.

For the Defendants:      QUINN EMANUEL URQUHART & SULLIVAN, LLP
                         Attorneys for the Defendant
                              50 California Street,
                              22nd Floor
                              San Francisco, California 94111
                         BY:  CHARLES K. VERHOEVEN, ESQ.
                         BY:  PATRICK D. CURRAN, ESQ.
                         BY:  JOHN T. McKEE, ESQ.


Court Reporter:   Angela Grant, RPR, CRR
                  Official Court Reporter


Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

Proceedings                                    2

1            (In open court at 12:00 p.m.)

2       COURTROOM DEPUTY:  All rise.

3       Civil cause for a motion.  Almondnet Incorporated,

4  et al. versus Yahoo, Incorporated.

5       Counsel, please come forward and state your

6  appearances for the record.

7       MR. CROSBY:  Ian Crosby from Susman Godfrey for

8  the plaintiff, Almondnet Group.

9       MR. VERHOEVEN:  Hello, Your Honor.

10      Charles Verhoeven from Quinn Emanuel.  And with me

11 is Patrick Curran and John McKee.

12      THE COURT:  Welcome.

13      MR. VERHOEVEN:  We represent Yahoo.

14      THE COURT:  I believe this is your motion.

15      MR. VERHOEVEN:  It is, Your Honor.

16      THE COURT:  And if you're ready to be heard, I'll

17 be happy to hear you.

18      MR. VERHOEVEN:  Thank you, Your Honor.

19      We're here today on a motion to dismiss for

20 improper venue.  And what's notable about this motion, Your

21 Honor, is that the plaintiff here does not dispute the

22 merits of our motion.  They do not dispute that venue is now

23 improper in their case.

24      As we set forth in our briefing, for the last

25 27 years the venue statute has been interpreted by the

Proceedings                                                    3

1    courts in a particular way.   Under the statute at issue

2    here, venue is proper only when the defendant resides in the

3    venue or where the defendant has a regular and established

4    place of business.

5             For the last 27 years the Court's interpretation

6    of the word "resides" was that -- was where you could get

7    personal jurisdiction over the corporation.   So a plaintiff

8    would have proper venue anywhere in the United States where

9    they could get personal jurisdiction over a corporation.

10            The TC Heartland case from the United States

11   Supreme Court drastically changed that interpretation and --

12            THE COURT:   May I interrupt you, sir.   If you'll

13   forgive me.

14            MR. VERHOEVEN:   Yes.

15            THE COURT:   First you start out by saying that the

16   plaintiff didn't dispute the merits of your argument with

17   respect to venue.   They didn't dispute the fact that venue

18   was not improper here.

19            MR. VERHOEVEN:   Yes, Your Honor.

20            THE COURT:   Paragraph 10 of your answer to the

21   complaint says, "Yahoo admits that venue exists in this

22   district under 28 U.S.C. Sections 1391(b) and (c) and

23   1400(b).   Yahoo admits that venue exists in this district

24   under those sections.   However, Yahoo reserves the right to

25   challenge venue based on any change in law."

Proceedings                                          4

1          MR. VERHOEVEN:  Yes, Your Honor.

2          THE COURT:  Now, with respect to your last

3    observation that TC Heartland made a drastic change in the

4    law with respect to venue, with all due respect, sir, I

5    think that statement is a little disingenuous.

6          TC Heartland makes it very clear we're not making

7    any change in law.  Back as far as 1947 or somewhere in the

8    1940s, the Supreme Court in Stonite decided precisely what

9    the court reaffirmed in Fourco.  And in TC Heartland the

10   Supreme Court very clearly says all we're doing is applying

11   the law as it has existed at least as far back as Stonite.

12         Your argument really requires an assertion that a

13   Circuit Court can overrule a Supreme Court decision which

14   has been undisturbed for well over 60 years.  That's

15   essentially what your argument is.

16         MR. VERHOEVEN:  Well, Your Honor, waiver is what

17   they're asserting.

18         THE COURT:  Well, that's the question.

19         MR. VERHOEVEN:  Is an equitable doctrine, Your

20   Honor.  It's an equitable doctrine.  It requires fairness.

21         THE COURT:  Yes.

22         MR. VERHOEVEN:  And in this situation it would be

23   manifestly unfair to not allow us to assert what the Supreme

24   Court has said is the law.  I'll get to whether it's a

25   change or not.  But it can't be disputed that for the last

Proceedings                                          5

1   27 years everyone was operating under the interpretation of

2   this statute that resides is satisfied if you have personal

3   jurisdiction over a corporation.

4           And so if, for example, if the law was that

5   resides meant that the state of incorporation, plaintiff

6   would have not had a Rule 11 basis to bring this case.  But

7   they brought it here because the law at the time that

8   everyone around believed, the Federal Circuit, all the

9   courts below it, was that resides means anyplace that you

10  could get personal jurisdiction.

11          THE COURT:  Well, it's strange that the plaintiff

12  in TC Heartland didn't believe that.  They didn't think that

13  a defense of lack of venue is unavailable or challenge the

14  venue provision.

15          MR. VERHOEVEN:  Well, it's one party out of

16  hundreds, thousands of people, Your Honor.  I mean, you

17  could take a flyer to try to change the law to the Supreme

18  Court, but that doesn't mean if they make the change that

19  everybody should have known they were going to make the

20  change.

21          So as a matter of equity, Your Honor, not only did

22  we -- we would have -- when we answered the complaint, if we

23  would have denied venue before TC Heartland came out, that

24  we would have lost that issue because the controlling law

25  for this Court would be the Federal Circuit law on this

Proceedings                                    6

1    issue.

2          THE COURT:   You may have lost the issue, but that

3    shouldn't preclude you from making that defense.

4          MR. VERHOEVEN:   Well, we --

5          THE COURT:   People make defenses which they

6    believe has validity despite the fact that there may be some

7    lower court authority which would indicate that perhaps

8    their argument is not terribly persuasive.   But that happens

9    in cases where perhaps the lawyer wasn't fully aware of the

10   entire breath of the authority with respect to 1400(b) with

11   respect to the venue provision in a patent case.   And that

12   authority was very explicitly declared, the rule was very

13   explicitly declared in Stonite and reaffirmed in Fourco.

14         Now, let's look at the timeline here.   Can we do

15   that?

16         MR. VERHOEVEN:   Yes.

17         THE COURT:   Your complaint was filed on March 20th

18   of 2016.   The Heartland district court case was decided in

19   2015.   The Circuit affirmed the Heartland district court

20   case in March of --

21         MR. CROSBY:   Your Honor, if I could.   May 16th.

22   Oh, I'm sorry.   April 16th.

23         THE COURT:   The Circuit Court affirmed the

24   district court case in 2016, I think it was in April of

25   2016, and you filed your complaint just a month before that.

Proceedings                                      7

1      But a month after Heartland was affirmed by the

2  Circuit Court, you make a motion to extend the time to file

3  an answer.  You made that motion in May of 2016, you should

4  have, whether you were or weren't aware of the fact, what

5  was going on in Heartland a month or more than a month, as

6  far back as 2015 when the district court decided that.

7      And then in December of 2016 you make a motion to

8  dismiss the complaint.  The motion to dismiss the complaint

9  didn't raise the defense of venue at all, although Stonite

10  was in existence, Fourco was in existence, Supreme Court

11  cases which very explicitly said, and I don't want to take

12  the time because I'm sure you're aware of it.

13      Reading Stonite and Fourco, the language in those

14  cases, but can leave no doubt that 1400(b) meant what it was

15  construed to mean by the Supreme Court as far back as the

16  1940s.  Your precise argument essentially is, and it's an

17  argument which essentially boils down to whether relying

18  upon a circuit court authority, and, by the way, there are

19  many cases which didn't quite agree with the view taken by

20  the VE case with respect to the venue issue.

21      Your argument essentially is that the fact that a

22  Circuit Court decided a case and decided a case erroneously,

23  completely ignoring what the Supreme Court of the United

24  States said, that precludes me from making an argument based

25  upon what is clear authority in the Supreme Court of the

Proceedings                                          8

1   United States because some lower court disagreed with it or

2   took a different view.

3           The issue in this case essentially, with all due

4   respect, is whether you've waived the venue issue.  That's

5   essentially the argument.  Because there's no way of

6   ignoring Fourco, there's no way of ignoring Stonite with

7   respect to what 1400(b) means.  I can't ignore 1400(b).  The

8   question is whether you've waived it.

9           MR. VERHOEVEN:  May I respond, Your Honor?

10          THE COURT:  And you were obviously aware that this

11  issue was hanging out there when you filed your answer a

12  long time ago explicitly reserving the right.  And the

13  language of your answer is reserving the right, including

14  Supreme Court's upcoming decision or based upon a -- however

15  Yahoo deserves the right to challenge venue based upon any

16  change in law; there is no change in law.  TC Heartland

17  didn't change the law.  Based upon any change in the law

18  including the Supreme Court's upcoming decision in

19  Heartland.  And Heartland makes it very clear, Justice

20  Thomas makes it very clear, we're not changing any law.

21  We're applying the law as it existed in this Court for a

22  long time.

23          So you recognize that issue a long time ago.

24  Nothing would prevent you and say, well, it may not have

25  made any sense given VE to assert a defense which was

Proceedings                                                    9

1    clearly contrary to what a lot of district court and circuit

2    courts have said.  But it's interesting the lawyer in TC

3    Heartland said there's a Supreme Court case out there.

4    There's a Supreme Court case out there which very clearly

5    says that VE is all wrong, the circuit courts were all

6    wrong.  The Supreme Court never changed its view when they

7    decided Stonite back in the 1940s.  The Supreme Court didn't

8    change its view when it decided Fourco.  It's still a good

9    law.  So your issue really I think is whether you've waived

10   venue.

11            I don't want to get into a long interesting

12   jurisprudential philosophic argument about what venue is all

13   about, but let's just keep to what the specific issue in

14   this case is.

15            MR. VERHOEVEN:  Yes, Your Honor.

16            THE COURT:  And it's interesting, one might ask,

17   if I were a layman, knew nothing about the law and somebody

18   tells me you want to hear an interesting story.  There were

19   two lawyers on either side of a case that they've been

20   litigating in a court in Brooklyn for about a year and a

21   half or so, had no difficulty litigating it in Brooklyn.

22   They weren't complaining about the fact that it was

23   inconvenient for witnesses; that all of the evidence was

24   someplace else.  And now they say, well, we really shouldn't

25   have been here in New York.  We think it should be in

Proceedings                                    10

1   California.

2          The layman might ask, gee, that's pretty

3   interesting, isn't it?  If they have been perfectly

4   satisfied having no difficulty at all in litigating a case

5   in Brooklyn, why do they have to move it to California,

6   start all over again?  What a horrible waste of judicial

7   resources.   All other things aside with respect to whether

8   you or some lawyer or any lawyer, many lawyers have relied

9   on VE.   The question is whether, essentially, whether you've

10  waived venue.   That's it.

11         MR. VERHOEVEN:  Well, Your Honor --

12         THE COURT:   Would you agree with that, sir?

13         MR. VERHOEVEN:   Well, there's a lot of things you

14  said there, Your Honor.  I'm not going to be able to go down

15  the list but.

16         THE COURT:   No.   No.   One of the nice things about

17  this Court is it understands and recognizes the right of

18  lawyers to disagree and perhaps educate the Court that

19  they're really on the wrong track.   So if you disagree, you

20  can feel free to disagree, but given what is indisputable

21  that the Supreme Court of the United States interpreted

22  1400(b) to mean what it says, that it wasn't supplemented by

23  1392(c), and that was clear back in Stonite.   The Court made

24  that observation very specifically, that general venue

25  statute didn't effect, didn't limit the specific venue

Proceedings                                    11

1  statute which was designed to control patent cases.  They

2  said that a long time ago.  That's indisputable.

3         And so to say, well, some circuit court and a lot

4  of district courts decided that same issue differently

5  doesn't make it right, doesn't change the law, doesn't give

6  somebody the right to say, well, that's what I relied on

7  even though it was wrong.

8         All right.  I'm sorry.  I think I interrupted you

9  in the middle of a sentence that you were about to utter.

10 Please.

11         MR. VERHOEVEN:  Thank you, Your Honor.

12         I'll address the change in law issue, Your Honor,

13 but what you're telling me is I should focus on the waiver

14 issue so let me address that first.

15         THE COURT:  You can focus on anything you want.

16         MR. VERHOEVEN:  Okay.

17         THE COURT:  I'm suggesting that the only issue, in

18 my view, is labor but you can disagree.

19         MR. VERHOEVEN:  Thank you, Your Honor.

20         So on the waiver issue, again, it's an equity

21 doctrine and it should be applied with interest of fairness.

22 And what waiver concerns is whether or not the other party

23 had notice of what was going to happen.

24         And what we did, Your Honor, is, as we set forth

25 in our papers, is in our answer we admitted it.  At that

Proceedings                                    12

1   time that was the controlling law of the Court.  If you had

2   ruled on a venue motion, Your Honor, at that point in time,

3   the controlling law would have been the doctrine that was

4   set out in Heartland.

5            And so we admitted it because that was for

6   27 years the law under the Federal Circuit, but we gave

7   notice about this TC Heartland case and specifically called

8   it out so that the other side knew that this is a case where

9   the Supreme Court might change what the Federal Circuit was

10  saying, and, if it did, then we reserve the right to come

11  back later.  So on the waiver issue we gave them notice.  We

12  put it in our pleading.  We didn't think that we should deny

13  venue because under then current Federal Circuit controlling

14  law, venue is appropriate.

15           THE COURT:  The then Federal Circuit controlling

16  law.

17           MR. VERHOEVEN:  Exactly.

18           THE COURT:  At that time in view of the

19  controlling Supreme Court of the United States law the

20  result was not the Federal Circuit law which clearly isn't

21  controlling in the light of Supreme Court decision which is

22  directly contrary to it.

23           MR. VERHOEVEN:  Now, the Federal Circuit

24  decision -- I'll get back to waiver.  Let me just address

25  this.  The Federal Circuit decision focused on the

1  amendments to the statute.  So you had the old doctrine, but

2  then you had the amendments to the statute.  And the Federal

3  Circuit said -- it interpreted those amendments which

4  postdated the cases you're referring to in the Supreme

5  Court, it interpreted those amendments as providing for

6  venue if there's personal jurisdiction.

7          And I know there's some statements in the Supreme

8  Court's decision in TC Heartland about the law, but the

9  court also -- the Supreme Court also, and I think primarily

10 rejected the Federal Circuit's interpretation of the

11 amendments.  So there was no prior Supreme Court

12 interpretation of the amendments.  The first time the

13 Supreme Court addressed that, Your Honor, was in the TC

14 Heartland case.  So I can cite you to -- there's been cases

15 coming out on this as we've been briefing, Your Honor, and

16 we filed a supplement on this.  But I can cite you to the

17 Simpson Performance Products case versus Next Gen which is

18 in our supplemental submission.

19         And here the Western District of North Carolina

20 states quote -- this is their holding -- "Having considered

21 the opposing arguments in district court opinions, this

22 Court concludes that TC Heartland constitutes an intervening

23 change of law.  The Federal Circuit in VE Holding make clear

24 it was hearing the case as a matter of first impression in

25 order to determine if the 1988 congressional amendments

1    superseded the Supreme Court's decision in Fourco Glass."

2    And it continues, therefore, VE Holding, therefore, was not

3    an attempt to overrule the Supreme Court.  It was merely an

4    attempt by the Federal Circuit to interpret a newly amended

5    statute.  Though the Supreme Court ultimately disagreed with

6    the Federal Circuit's interpretation of the effect of the

7    1988 congressional amendments on patent venue statute, the

8    Supreme Court's rejection of VE Holding does not necessitate

9    the conclusion that VE Holding was nothing more than an

10   attempt by the Federal Circuit impermissibly to overturn

11   Fourco Glass.

12           And there's other cases that have so found, Your

13   Honor, the CG Technology versus FanDuel case, a district of

14   Nevada case.  And the Handheld Products versus the Code

15   Corporation case, these all cases that came out after we

16   filed our motion.  So the court's are interpreting this as

17   relatively new development.  And the district courts are

18   dealing with this as this goes on, and we're getting

19   decisions every week, Your Honor.

20           But if you look at the Supreme Court's decision

21   and you look at the Federal Circuit decision in TC

22   Heartland, the Federal Circuit, when it rejected the

23   argument made to the Supreme Court, the basis for that was

24   the amendments, the 1988 amendments.  And the Supreme Court,

25   it went up.  The reason it went up was because they said the

1    1988 amendments changed the law.   And the Supreme Court then

2    said we disagree with your interpretation of the 1988

3    amendments.   The old law still applies.

4           And so I would submit that it's a fair reading

5    just as this Court found that what the Supreme Court was

6    doing was saying this intervening statute, the

7    interpretation of that was wrong and that was the first time

8    that the Supreme Court has said that.   And so the prevailing

9    law for 27 years was that the 1988 amendments changed the

10   law and made the resides language mean if there's personal

11   jurisdiction.

12          And the Federal Circuit on the very case we're

13   talking about pointed to that in rejecting the argument that

14   Fourco applies.   And the Supreme Court in overruling the

15   Federal Circuit pointed to that.

16          Now, they also said this isn't a change in law,

17   but they said it in the context of saying these 1988

18   amendments did not change the law.   So, you know, you could

19   point to a certain passage in the Supreme Court where they

20   say we're not changing the law, but the actual dispute that

21   went up was whether the 1988 amendments changed the law from

22   Fourco.   And the Federal Circuit -- and that case was first

23   impression in TC Heartland.   The Supreme Court had never

24   opined on that before.   And the Federal Circuit had said for

25   27 years that that statute had changed the law.   And so I

Proceedings                                              16

1   would submit that when you're looking at whether what was

2   the change in law and whether it was a change in law, you

3   should look at the interpretation of the 1988 statute, was

4   that changed.  And that had never been addressed by the

5   Supreme Court before, Your Honor.

6          THE COURT:  May I suggest, sir, that you go back

7   to 1942 and look at the Court's decision in Stonite.  The

8   Supreme Court had dealt with this issue back in 1942 in

9   Fourco, they dealt with this specific issue in Stonite and

10  they dealt with it as well in Fourco.  The amendments were

11  designed to accomplish the exactly same purpose that were

12  finally dealt with the Court said in TC Heartland.  This has

13  always been the law as we're announcing it in TC Heartland.

14         Let me read to you what the Court said in 1942 in

15  Stonite.  I don't want to read the statutes, the specific

16  acts, they have different numbers and different acts.  "Even

17  assuming that the revised statute Section 740 covered patent

18  litigation prior to the Act of 1987, we do not think that

19  its application survived that act which was intended to

20  define the exact limits of venue in patent infringement

21  suits.  There is little reason to assume that Congress

22  intended to authorize suits in districts other than those

23  mentioned in that act, that act being the act which was

24  intended to define the exact limits of venue in patent

25  litigation.  That was Stonite in 1942.

1          In Fourco, in 1957, the Court concludes by saying

2     we hold that 28 United States Code 1400(b) is the sole and

3     exclusive provision controlling venue in patent infringement

4     litigation, and that it is not to be supplemented by the

5     provisions of 1391(c).  Judgment of the Court of Appeals

6     must therefore be reversed.

7          What they're saying in 1957 in Fourco is precisely

8     what the Court was saying in 1942.  The act was intended to

9     define the exact limits of venue in patent infringement

10    suits.  There's little reason to assume that Congress

11    intended to authorize suits in district other than those

12    mentioned in that act.  And that's referring to the statute,

13    the exact same statute as the 1988 amendments, 1391(c) and

14    1391(b) extending the venue provision.

15         Back in 1942 the Supreme Court is saying we do not

16    think its application survived that act which was intended,

17    that act which is essentially 1400(b), which was intended to

18    define the exact limits of venue in patent litigation.  So

19    there's nothing new about what the Court did in TC

20    Heartland.

21         With all due respect, you know when a Circuit

22    Court in its opinion makes reference of a learned court

23    below, what they are really saying is the idiot judge below,

24    but in a very respectful way, the learned court below.  The

25    learned courts below the Supreme Court that was deciding VE

Proceedings                                              18

1  were wrong.  Looking at Stonite, looking at Fourco, they

2  couldn't have arrived at that conclusion.  That isn't the

3  first time.

4          All right, sir.  Where are you now?

5          MR. VERHOEVEN:  Let me get back to the waiver

6  issue.

7          THE COURT:  Yes.

8          MR. VERHOEVEN:  I kind of took a sidetrack there.

9  I apologize, Your Honor.

10          THE COURT:  Yes.

11          MR. VERHOEVEN:  On the waiver issue I have two

12  points.

13          THE COURT:  Yes.

14          MR. VERHOEVEN:  The first point is, again, it's an

15  equitable doctrine -- I started making this point.  It's an

16  equitable doctrine, Your Honor, and it maybe should apply

17  if the plaintiff had no notice and there would be some

18  prejudice to them.  But we put in our answer a specific

19  callout to that -- the very specific case and said that

20  we're reserving our rights depending on the outcome of that

21  case.  So forgetting about whether it was a change in the

22  law, which is separate from waiver, we would submit that we

23  didn't waive it.  We specifically called it out admitting

24  the venue is appropriate was what we are required to do as

25  attorneys, Your Honor.

Proceedings                                    19

1          Now, because under the law at that time, the

2     controlling Federal Circuit law would have been a frivolous

3     position to take.  We would have been overruled unless the

4     Supreme Court had ruled, Your Honor.

5          And let me say this:  To say that parties should

6     anticipate there may be a change in how the Federal Circuit

7     is interpreting law because the Supreme Court might reverse

8     them would encourage all sorts of mischief.  It would

9     encourage defendants to assert all of the things they hope

10    the Supreme Court might say in the future because they don't

11    want to waive them.  They have to assert them or else the

12    Court will come back and say you could have made this, you

13    could have anticipated it.  It was wrong, the Supreme Court

14    said it was wrong.

15         THE COURT:  I really don't know, sir -- forgive me

16    for interrupting you.  I really don't know what else I can

17    say that I haven't said at least twice now.  That the

18    Supreme Court is changing the law, anticipate that the

19    Supreme Court has changed what the law has been in the

20    Circuit.  The law in the circuit in VE and the other cases

21    were just wrong.  I don't know how else to say that the

22    Supreme Court is just as clear as clear can be in TC

23    Heartland in saying we're not changing the law.  This is

24    what the law has been as far back as Stonite.

25         Now, what you're saying is lawyers relied upon

Proceedings                    20

1    what the circuits were saying ignoring what the Supreme

2    Court of the United States had been saying since 1942.

3             This argument was -- it's a very recent case in

4    July, last month, Reebok International versus TRP

5    Acquisitions.  I don't know whether you've seen it, but it

6    was decided on July 14th.  The defendant's reply that they

7    did not waive the defense of improper venue because the

8    defense was not "available" to them before the Supreme Court

9    decision in TC Heartland.  The Court rejects this argument

10   for several reasons.  First, the Supreme Court granted cert

11   in Heartland on December 14, 2016.  December 14, 2016, that

12   was before you made your motion to dismiss.  And the venue

13   issue being litigated in TC Heartland was known or should

14   have been known by defendants before they filed their answer

15   on March 3, 2017.

16            Reebok is responding to this specifically.  Thus,

17   defendants knew or should have known before filing their

18   answer that the precise issue on which they now based their

19   motion, the definition of "corporate residency" for purposes

20   of venue in a patent case soon would again be addressed by

21   the Supreme Court.  The Court observes that other defendants

22   in similar circumstances reserve their defense of improper

23   venue.

24            MR. VERHOEVEN:  So may I respond to that, Your

25   Honor?

Proceedings                                    21

1          THE COURT:  What you're saying, sir, if I

2    understand you, that it is inappropriate to assert a defense

3    which a lawyer in discharging his professional

4    responsibility thinks is a perfectly valid defense based

5    upon the law as he reads it.  So based upon the law as your

6    answer was filed in May of this year -- I think it was May

7    of this year or May of '16, I don't recall -- a research of

8    the law with respect to venue would have uncovered Stonite,

9    would have uncovered Fourco.

10          And the question would have been asked, well, now,

11   why does the Circuit Court say something which the Supreme

12   Court has said which is exactly the opposite?  Why is it a

13   perfectly valid -- not a perfectly valid defense to rely

14   upon what the Supreme Court of the United States has said

15   1400(b) means?  The Court may disagree with me, but I think

16   I have a perfectly valid legitimate basis for asserting as

17   an affirmative defense and a defense listed in

18   12(b)2 point -- between 12(b)2 and 5 dealing with venue,

19   perfectly valid defense based upon Supreme Court decisions

20   which have not been overturned, which have not been

21   modified, which have not been reversed.

22          Now, a district court may disagree.  A district

23   court may say, well, the Circuit Court said something else.

24   A district court judge might say the Circuit Court has no

25   authority to overrule Supreme Court decisions which is what

Proceedings                                    22

1  the district court said in Reebok.  That's exactly what they

2  said.  The Circuit Court had no authority to overrule the

3  Supreme Court of the United States.

4            All right.  So you're back to waiver now.

5            MR. VERHOEVEN:  Yeah, on the waiver issue.

6            So for the Reebok case, there was no statement in

7  the answer that specifically called out and reserved I think

8  the language you quoted there --

9            THE COURT:  Well, let me stop you there.  It's an

10  interesting argument to make, but let me ask you:  What

11  should the plaintiff have done at that point?

12            You shouted them out --

13            MR. VERHOEVEN:  The point is the plaintiff --

14            THE COURT:  What could they have done?

15            MR. VERHOEVEN:  -- was on notice that we were

16  saying there's a case up there and there's argument, and if

17  you read the cases, the briefs, you can see what the

18  arguments are.  And we said it right in the venue answer,

19  portion of the answer.

20            THE COURT:  Yes.

21            MR. VERHOEVEN:  And we made a decision.  Rather

22  than say we object to venue, to admit it because it was at

23  that time before the Supreme Court ruled under controlling

24  Federal Circuit law for 27 years that was law, but we also

25  provided notice specifically of this issue and said this is

Proceedings                                      23

1   an issue and it might change things so we're reserving the

2   right.

3                And so on the waiver issue alone -- I'm not

4   talking about change in law -- on the waiver issue, we gave

5   them notice.  We put it in our answer.  We didn't waive it.

6   We reserved on it just like in the Reebok case or unlike the

7   Reebok case where they didn't reserve on it, Your Honor.  We

8   did what we thought was the most we could do is we provided

9   notice of it and we said, you know, this is something that

10  we're reserving on on venue, and we didn't know, we couldn't

11  predict the future, but we knew that that was an issue in

12  play and we provided notice.  And so on just the waiver

13  issue, Your Honor, we believe we did not waive.

14                THE COURT:  So what should the plaintiff have

15  done?  Should the plaintiff --

16                MR. VERHOEVEN:  The plaintiff --

17                THE COURT:   -- have withdrawn their complaint?

18                MR. VERHOEVEN:  They should have been on notice.

19                THE COURT:  Should they have withdrawn their

20  complaint?

21                MR. VERHOEVEN:  Well, they are now -- yes.

22                THE COURT:  The plaintiff is on notice and the

23  plaintiff opposes your motion to dismiss based upon TC

24  Heartland by saying you've waived it.

25                MR. VERHOEVEN:  Your Honor, the plaintiff --

Proceedings                                    24

1          THE COURT:   We don't want to withdraw.   We're

2    saying you waived it.   There are cases which deal with

3    waiver.   As a matter of fact, the Federal Rules of Civil

4    Procedure specifically provide that a defense which has not

5    been raised in a responsive pleading is waived.   So the

6    defense says you've waived it.   Yes, you have put us on

7    notice that TC Heartland is up there and may decide that

8    venue is inappropriate, but venue could be waived and so

9    that's our argument.   You've waived it.

10          MR. VERHOEVEN:   Well, what they're arguing, Your

11   Honor, is that there was no change in the law.   So if

12   there's no change in the law, what they should have done is

13   their obligation as an officer of the court was to dismiss

14   the complaint because there was no venue.

15          You know, it seems like they're having their cake

16   and eating it too here.   The point is on waiver we gave

17   notice of this case and they were on notice of the risks

18   involved with the case.   If they thought that there was no

19   change in the law after we pointed them to these briefs,

20   Your Honor, then they should have dismissed is what they

21   should have done because they didn't have venue.   They don't

22   even dispute that they don't have venue.

23          THE COURT:   You didn't dispute it either in

24   paragraph 10 of your complaint.

25          MR. VERHOEVEN:   Well, we reserved expressing --

Proceedings                                    25

1        THE COURT:  Yes, but you specifically said we

2   don't dispute venue is appropriate.  Being uncertain as to

3   whether or not that is or isn't the law, whether or not --

4        MR. VERHOEVEN:  But that's the point.  That's the

5   point I'm trying to make.  They weren't certain either.  If

6   they had known what the law was going to be, they wouldn't

7   have filed here because venue would have been inappropriate.

8        THE COURT:  Okay.  I think we're now beating a

9   dead horse.

10       MR. VERHOEVEN:  Okay.  Thank you, Your Honor.

11       THE COURT:  If I simply asked why couldn't you

12  simply have asserted a defense in your answer or very early

13  on when you moved to dismiss the complaint two or three

14  months after the complaint was filed, what would have

15  prevented you from saying we're moving to dismiss not only

16  because it fails to stay the cause of action, but we're

17  moving to dismiss because we're in the wrong venue; namely,

18  the wrong venue given Fourco, given Stonite, Supreme Court

19  cases which are still intact which means what they say.

20  What would have prevented you from doing that?  Well, the

21  idea would have prevented you from doing that because some

22  circuit court said something else.

23       Do you want to be heard?

24       MR. CROSBY:  Your Honor, I'm happy to answer any

25  questions you might have of me, but I don't have anything to

Proceedings                                                  26

1    add.

2              THE COURT:   The question I have is the question

3    that your adversary is asking.   He's saying, in effect, that

4    I never waived it.   I put you on notice back in February or

5    whenever I filed my answer in December I guess.   He filed

6    his answer -- oh, no, in January.   He filed his answer in

7    January.   I put you on notice that we're reserving our

8    rights with respect to venue.

9              MR. CROSBY:   Two things, Your Honor.

10             THE COURT:   What's your response to that?

11             MR. CROSBY:   First of all, Rule 12 clearly

12   provides that any --

13             THE COURT:   I'm sorry?

14             MR. CROSBY:   Rule 12 clearly provides that any

15   objection needs to be made in the first defensive move.

16   There are legions of cases that say that.

17             Their first defensive move was the motion to

18   dismiss that was filed in July of 2016.   There wasn't a peep

19   about venue in that.   So we certainly weren't put on notice

20   by that motion that they intended to dispute venue.   Quite

21   the opposite, their filing of that motion indicated to us

22   that they had no issues with venue.   And we proceeded to

23   move forward with status conferences, we proceeded to move

24   forward to a hearing on that motion until it was ultimately

25   withdrawn after Your Honor expressed skepticism about it it

1    turned out the day before the Supreme Court granted

2    certiorari in TC Heartland.

3            In January of 2017, this year, they finally filed

4    their answer after having withdrawn their motion.  And in

5    that answer they admitted venue clearly, unambiguously, full

6    stop with a period at the end of the sentence and then

7    purported to reserve a right.  Well, in order to reserve a

8    right, one must have a right to reserve, and there is no

9    right to contest venue after you have not raised it in your

10   12(b)(6) motion and after you have failed to object to it in

11   your answer.  And so we continued in reliance on the fact

12   that whatever they said about purportedly waiving rights,

13   litigate this case.

14           So the notion that they put us on notice, what did

15   they put us on notice of, that they were reserving a right

16   that they didn't have, that they intended to assert an

17   objection to venue that procedurally had been waived?  What,

18   as Your Honor questioned, should we have done at that point,

19   to dismiss the case?

20           Our Rule 11 obligation is to make a good-faith

21   assessment based on existing law or a reasonable argument

22   for the extension of existing law.  So to reserve the

23   possibility that there is venue, we have to allege it.  At

24   the same time, they have the same Rule 11 obligation and

25   they have the same ability to raise a defense that they

Proceedings                                    28

1   think may be warranted by an extension of existing law.

2          We fulfilled our obligation and we did not forget

3   our obligations as officers of the court by alleging that

4   there was venue.  They simply failed to do what they should

5   have done as lawyers which is to preserve every potentially

6   viable defense in their answer.

7          THE COURT:  Is there anything further?

8          MR. VERHOEVEN:  Very briefly.  I'm only going to

9   address a new thing.

10          The argument that we waived by filing the motion

11  to dismiss that wasn't decided is not supported by any law.

12  In fact, we cite cases, Your Honor, in our reply brief on

13  page 4 to the effect that if you voluntarily withdraw a

14  motion to dismiss, then they can't point the filing of that

15  as a basis for waiver.  And there we cite the Caldwell-Baker

16  versus Southern Illinois case which found no waiver or the

17  defendant's withdrew a Rule 12 motion for a more definite

18  statement and then subsequently moved to dismiss for lack of

19  personal jurisdiction.

20          The Remley versus Lockheed case, Your Honor, page

21  4 of our reply, holding that a withdrawing 12(b)(6) motion

22  did not constitute waiver of a right to bring a subsequent

23  Rule 12(b) motion to dismiss for improper venue, the very

24  case here.  And also the Kennedy Krieger versus Brundage

25  case, also on page 4 of our reply, citing Caldwell-Baker

1    and finding no waiver of personal jurisdiction defense where

2    the defendants had filed and then withdrawn a motion for

3    summary judgment prior to the adjudication.

4           So getting back to my theme, I guess.  This isn't

5    about technical gotchas on the statutes.  It's about

6    fairness, waivers and equitable doctrine.  And, in fairness,

7    they knew that we reserved the right to challenge based upon

8    the result venue, based on the result of TC Heartland in

9    January of this year before any substantive proceedings had

10   happened, before there's any claim construction, before --

11   the very outset of this case, before discovery, they were on

12   notice that we believed that the -- that we thought that

13   there was an issue here with TC Heartland and that we were

14   reserving depending upon how that came out.

15          So on waiver only, not talking about change of the

16   law, Your Honor, on waiver only, we think that we told them

17   that we might be making this motion way back in January and

18   they knew that.  And they -- at that time they could have

19   looked at the law and just and said, well, you know, we

20   think that the Federal Circuit has been wrong for the last

21   27 years so we don't have venue.  They could have done that.

22   But, instead, they did essentially what we did and continued

23   to pursue venue notwithstanding that the issue is going to

24   be up before the Supreme Court.

25          So I think, in fairness here, which is what waiver

1   is, in fairness, both parties were under the impression that

2   the prior law or the -- how shall I refer to it -- the VE

3   Holding law was controlling, and so there was no prejudice

4   to them because they believed the same thing we believed.

5   And then we put them on notice well before anything happened

6   in this case that there's this Supreme Court case up here,

7   and we may challenge venue depending on the outcome of that

8   Supreme Court case.  So they understood even after that

9   notice, Your Honor, the same thing we understood which is

10  that right now controlling Federal Circuit law bound us, and

11  now, with the decision in TC Heartland from the Supreme

12  Court, they agree with us that venue is improper.  So

13  regardless of whether we are right or wrong, Your Honor, on

14  interpretation of law, both sides operated in the same way,

15  and it would be inequitable to bar us from making this

16  argument when we gave notice that this is happening, and

17  depending on the result, excuse me, Your Honor, depending on

18  the result, we may be filing a motion to dismiss.

19          THE COURT:  What would you respond to a claim

20  based upon Rule 12(H)(1)(b)ii, forgetting about Rule 12(b)

21  generally?  12(b) says every defense to a claim for relief

22  in any pleading must be asserted in the responsive pleading,

23  if one is required.  That's pretty clear.  Every defense to

24  a claim for relief in any pleading must be asserted in the

25  responsive pleading, right?  And among the defenses which

1   are listed in 12(b) is improper venue.

2            Then in 12(h), a party waives any defense listed

3   in Rule 12(b)(2-5) by failing to either include it in a

4   responsive pleading.  I suppose waiver would be an argument

5   which was made, which could be made with respect to that

6   rule of federal procedure as well.

7            MR. VERHOEVEN:  Yes.  I guess an interpretation of

8   whether you consider the reservation we made to be including

9   it or not under that statute.  And, again, I go back to

10  what -- it's a fairness doctrine and we think that it is

11  equitable to allow us to assert this and that they were on

12  notice of it.

13           The purpose of this is to provide notice, and they

14  were on notice that -- we put them on notice in January in

15  our responsive pleading that we're reserving our rights

16  depending on the outcome of TC Heartland.

17           THE COURT:  Well, without going into some nice

18  interesting discussion about fairness, I suppose fairness is

19  something that exists in the eyes of the beholder.

20           Let's look at this case in terms of fairness.

21  Plaintiff commences an action for a patent infringement in

22  the Eastern District of New York.  He files that complaint

23  in March of 2016, and from March of 2016 clear up until June

24  of the following year, a year and three months later, the

25  parties keep litigating in this court.  A complaint is filed

1    in March of 2016, you make a motion to extend the time to

2    answer.  You then make a motion to dismiss for failure to

3    state a claim.  You then withdraw your motion to dismiss for

4    failure to make a claim.  You then answer to a complaint.

5           I don't want to review the docket sheet with

6    respect to how many conferences you may have had or

7    discussions you may have had with Judge Gold over that

8    period of time in connection with a variety of matters

9    dealing with this case.

10          Docket entry 59, a motion is made for a protective

11   order which the magistrate judge had to deal with.  In

12   February that motion is terminated, and then a motion is

13   made to amend the complaint in April of '17.  And then

14   finally around June you make a motion based upon improper

15   venue.

16          So would it be fair to say, well, the parties have

17   been litigating in this court now for over a year.  They had

18   no problem doing that here.  Why do we have to suddenly move

19   it to California?  What is that all about?  Who is being

20   inconvenient?  Is that fair?  I've been litigating this

21   case.  The defendant hasn't made any argument about venue.

22   There are Supreme Court cases out there that say what the

23   defendant finally got around to making an argument about.

24   I've been moving around now for well over a year believing

25   that I'm in the right court, so has the defendant believed

Proceedings                                                33

1    I'm in the right court.  We've been litigating this case for

2    a long time.

3            Now I'm told, no, defendant says we're not in the

4    right place.  We have to go to California.  Is that fair?

5            I thank you very much.  Your motion will be

6    reserved unless you have something else you want to say

7    about fairness.

8            MR. VERHOEVEN:  I think I've exhausted your

9    patience already.

10           THE COURT:  Yes.  Thank you very much.

11           MR. VERHOEVEN:  Thank you.

12           THE COURT:  Do you have anything else that you

13   would like to say?

14           MR. CROSBY:  Your Honor, there were just a couple

15   of legal points that I wanted to make sure were in the

16   record.

17           With respect to the notion that the withdrawal of

18   a motion makes it a nullity, I'd like to draw the Court's

19   attention to the MacNeil decision by the Second Circuit

20   which refers to a judge in his discretion permitting a party

21   to expand the grounds of a motion well in advance of a

22   hearing; the NyCal case from the Southern District of New

23   York that says expanding or changing a motion, the sine qua

24   non is the application be made prior to the hearing of the

25   motion.

Proceedings                                                      34

1        And then finally I'd like to draw the Court's

2   attention to the Orthosie case and also the Elbit and Tinnus

3   case from the Eastern District of Texas that all say that

4   allowing proper venue while reserving the right to contest

5   venue later would run contrary to the purposes of the

6   Federal Rules of Civil Procedure.

7        I just wanted to make sure that those cases were

8   reflected in the record.

9        THE COURT:  I just perhaps misspoke in saying I've

10  reserved.  I said reserved because I'll write on it, but the

11  fact of the matter is I'm making a determination that you've

12  waived, you've waived the venue issue.  And if I see any

13  need to write on it, I will.

14       I think I've said everything that I would say if I

15  were to put it in writing on the record, which will probably

16  be enough, but if I have time to take from other things,

17  I'll write on it.  You know what it is, the view is.  You

18  know what the waiver view is.  I can refer to Rule 12(b), I

19  can refer to Rule H(1) or H(1)(b)II, and I can refer to

20  Reebok and I can refer to the fact that there's no

21  authority, no conceivable basis upon which a Circuit Court

22  or any other court can overrule or disrupt the Supreme Court

23  decision.

24       That Supreme Court case was out there from the

25  moment this complaint was filed.  And you've been litigating

Proceedings                                    35

1   along for about a year and a half now relying upon a case

2   which flew in the face of the Supreme Court of the United

3   States.

4           Your motion is denied.  Your motion to dismiss for

5   failure of venue is denied for all the reasons I've indicated

6   on the record, including fairness.

7           Thank you very much.

8           MR. VERHOEVEN:   Thank you, Your Honor.

9           MR. CROSBY:   Thank you, Your Honor.

10          (Proceedings adjourned at 12:56 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

'16 [1] - 21:7
'17 [1] - 32:13
1 [1] - 1:7
10 [2] - 3:20, 24:24
11 [3] - 5:6, 27:20, 27:24
12 [2] - 26:11, 26:14, 28:17
12(b [5] - 28:23, 30:20, 30:21, 31:1, 34:18
12(b)(2-5 [1] - 31:3
12(b)(6 [2] - 27:10, 28:21
12(b)2 [2] - 21:18
12(h [1] - 31:2
12(H)(1)(b)ii [1] - 30:20
1201 [1] - 1:15
12:00 [2] - 1:8, 2:1
12:56 [1] - 35:10
1391(b [2] - 3:22, 17:14
1391(c [1] - 17:13
1391(c) [1] - 17:5
1392(c [1] - 10:23
14 [2] - 20:11
1400(b [7] - 6:10, 7:14, 8:7, 10:22, 17:2, 17:17, 21:15
1400(b) [2] - 3:23, 8:7
14th [1] - 20:6
16-CV-1557(ILG [1] - 1:3
16th [2] - 6:21, 6:22
1940s [3] - 4:8, 7:16, 9:7
1942 [7] - 16:7, 16:8, 16:14, 16:25, 17:8, 17:15, 20:2
1947 [1] - 4:7
1957 [2] - 17:1, 17:7
1987 [1] - 16:18
1988 [10] - 13:25, 14:7, 14:24, 15:1, 15:2, 15:9, 15:17, 15:21, 16:3, 17:13
2015 [2] - 6:19, 7:6
2016 [11] - 6:18, 6:24, 6:25, 7:3, 7:7, 20:11, 26:18, 31:23, 32:1
2017 [3] - 1:7, 20:15, 27:3
20th [1] - 6:17
22nd [1] - 1:19
27 [8] - 2:25, 3:5, 5:1, 12:6, 15:9, 15:25, 22:24, 29:21
28 [2] - 3:22, 17:2
3 [1] - 20:15
3800 [1] - 1:15
4 [3] - 28:13, 28:21, 28:25
5 [1] - 21:18
50 [1] - 1:18
59 [1] - 32:10
60 [1] - 4:14
740 [1] - 16:17
94111 [1] - 1:19
98101 [1] - 1:16
ability [1] - 27:25
able [1] - 10:14
accomplish [1] - 16:11
Acquisitions [1] - 20:5
Act [1] - 16:18
act [8] - 16:19, 16:23, 17:8, 17:12,

17:16, 17:17
action [2] - 25:16, 31:21
acts [2] - 16:16
actual [1] - 15:20
add [1] - 26:1
address [4] - 11:12, 11:14, 12:24, 28:9
addressed [3] - 13:13, 16:4, 20:20
adjourned [1] - 35:10
adjudication [1] - 29:3
admit [2] - 22:22
admits [2] - 3:21, 3:23
admitted [3] - 11:25, 12:5, 27:5
admitting [1] - 18:23
advance [1] - 33:21
adversary [1] - 26:3
affirmed [3] - 6:19, 6:23, 7:1
ago [3] - 8:12, 8:23, 11:2
agree [2] - 7:19, 10:12, 30:12
aided [1] - 1:25
al [1] - 2:4
allege [1] - 27:23
alleging [1] - 28:3
allow [2] - 4:23, 31:11
allowing [1] - 34:4
Almondnet [2] - 2:3, 2:8
ALMONDNET [1] - 1:3
alone [1] - 23:3
amend [1] - 32:13
amended [1] - 14:4
amendments [17] - 13:1, 13:2, 13:3, 13:5, 13:11, 13:12, 13:25, 14:7, 14:24, 15:1, 15:3, 15:9, 15:18, 15:21, 16:10, 17:13
AND [1] - 1:3
angela [1] - 1:22
announcing [1] - 16:13
answer [24] - 3:20, 7:3, 8:11, 8:13, 11:25, 18:18, 20:14, 20:18, 21:6, 22:7, 22:18, 22:19, 23:5, 25:12, 25:24, 26:5, 26:6, 27:4, 27:5, 27:11, 28:6, 32:2, 32:4
answered [1] - 5:22
anticipate [2] - 19:6, 19:18
anticipated [1] - 19:13
anyplace [1] - 5:9
apologize [1] - 18:9
Appeals [1] - 17:5
appearances [1] - 2:6
application [3] - 16:19, 17:16, 33:24
applied [1] - 11:21
applies [2] - 15:3, 15:14
apply [1] - 18:16
applying [2] - 4:10, 8:21
appropriate [3] - 12:14, 18:24, 25:2
April [3] - 6:22, 6:24, 32:13
arguing [1] - 24:10
argument [23] - 3:16, 4:12, 4:15, 6:8, 7:16, 7:17, 7:21, 7:24, 8:5, 9:12, 14:23, 15:13, 20:3, 20:9, 22:10, 22:16, 24:9, 27:21, 28:10, 30:16, 31:4, 32:21, 32:23

ARGUMENT [1] - 1:11
arguments [2] - 13:21, 22:18
arrived [1] - 18:2
aside [1] - 10:7
assert [7] - 4:23, 8:25, 19:9, 19:11, 21:2, 27:16, 31:11
asserted [3] - 25:12, 30:22, 30:24
asserting [2] - 4:17, 21:16
assertion [1] - 4:12
assessment [1] - 27:21
assume [2] - 16:21, 17:10
assuming [1] - 16:17
attempt [3] - 14:3, 14:4, 14:10
attention [2] - 33:19, 34:2
Attorneys [2] - 1:15, 1:18
attorneys [1] - 18:25
authority [8] - 6:7, 6:10, 6:12, 7:18, 7:25, 21:25, 22:2, 34:21
authorize [2] - 16:22, 17:11
available [1] - 20:8
Avenue [1] - 1:15
aware [4] - 6:9, 7:4, 7:12, 8:10
Baker [2] - 28:15, 28:25
bar [1] - 30:15
based [5] - 3:25, 7:24, 8:14, 8:15, 8:17, 20:18, 21:4, 21:5, 21:19, 23:23, 27:21, 29:7, 29:8, 30:20, 32:14
basis [5] - 5:6, 14:23, 21:16, 28:15, 34:21
beating [1] - 25:8
BEFORE [1] - 1:12
beholder [1] - 31:19
below [5] - 5:9, 17:23, 17:24, 17:25
between [1] - 21:18
boils [1] - 7:17
bound [1] - 30:10
breath [1] - 6:10
brief [1] - 28:12
briefing [2] - 2:24, 13:15
briefly [1] - 28:8
briefs [2] - 22:17, 24:19
bring [2] - 5:6, 28:22
Brooklyn [4] - 1:5, 9:20, 9:21, 10:5
brought [1] - 5:7
Brundage [1] - 28:24
business [1] - 3:4
BY [4] - 1:16, 1:20, 1:20, 1:21
cake [1] - 24:15
Caldwell [2] - 28:15, 28:25
Caldwell-Baker [2] - 28:15, 28:25
California [6] - 1:18, 1:19, 10:1, 10:5, 32:19, 33:4
callout [1] - 18:19
Carolina [1] - 13:19
case [55] - 2:23, 3:10, 5:6, 6:11, 6:18, 6:20, 6:24, 7:20, 7:22, 8:3, 9:3, 9:4, 9:14, 9:19, 10:4, 12:7, 12:8, 13:14, 13:17, 13:24, 14:13, 14:14, 14:15, 15:12, 15:22, 18:19, 18:21, 20:3, 20:20, 22:6, 22:16, 23:6, 23:7, 24:17, 24:18, 27:13, 27:19, 28:16, 28:20,

28:24, 28:25, 29:11, 30:6, 30:8, 31:20, 32:9, 32:21, 33:1, 33:22, 34:2, 34:3, 34:24, 35:1
**cases** [17] - 6:9, 7:11, 7:14, 7:19, 11:1, 13:4, 13:14, 14:12, 14:15, 19:20, 22:17, 24:2, 25:19, 26:16, 28:12, 32:22, 34:7
**CAUSE** [1] - 1:11
**cert** [1] - 20:10
**certain** [2] - 15:19, 25:5
**certainly** [1] - 26:19
**certiorari** [1] - 27:2
**CG** [1] - 14:13
**challenge** [5] - 3:25, 5:13, 8:15, 29:7, 30:7
**change** [28] - 3:25, 4:3, 4:7, 4:25, 5:17, 5:18, 5:20, 8:16, 8:17, 9:8, 11:5, 11:12, 12:9, 13:23, 15:16, 15:18, 16:2, 18:21, 19:6, 23:1, 23:4, 24:11, 24:12, 24:19, 29:15
**changed** [8] - 3:11, 9:6, 15:1, 15:9, 15:21, 15:25, 16:4, 19:19
**changing** [5] - 8:20, 15:20, 19:18, 19:23, 33:23
**CHARLES** [1] - 1:20
**Charles** [1] - 2:10
**Circuit** [37] - 4:13, 5:8, 5:25, 6:19, 6:23, 7:2, 7:22, 12:6, 12:9, 12:13, 12:15, 12:20, 12:23, 12:25, 13:3, 13:23, 14:4, 14:10, 14:21, 14:22, 15:12, 15:15, 15:22, 15:24, 17:21, 19:2, 19:6, 19:20, 21:11, 21:23, 21:24, 22:2, 22:24, 29:20, 30:10, 33:19, 34:21
**circuit** [6] - 7:18, 9:1, 9:5, 11:3, 19:20, 25:22
**Circuit's** [2] - 13:10, 14:6
**circuits** [1] - 20:1
**circumstances** [1] - 20:22
**cite** [4] - 13:14, 13:16, 28:12, 28:15
**citing** [1] - 28:25
**Civil** [3] - 2:3, 24:3, 34:6
**CIVIL** [1] - 1:11
**claim** [6] - 29:10, 30:19, 30:21, 30:24, 32:3, 32:4
**clear** [10] - 4:6, 7:25, 8:19, 8:20, 10:23, 13:23, 19:22, 30:23, 31:23
**clearly** [7] - 4:10, 9:1, 9:4, 12:20, 26:11, 26:14, 27:5
**Code** [2] - 14:14, 17:2
**coming** [1] - 13:15
**commences** [1] - 31:21
**complaining** [1] - 9:22
**complaint** [17] - 3:21, 5:22, 6:17, 6:25, 7:8, 23:17, 23:20, 24:14, 24:24, 25:13, 25:14, 31:22, 31:25, 32:4, 32:13, 34:25
**completely** [1] - 7:23
**Computer** [1] - 1:25
**Computer-aided** [1] - 1:25
**computerized** [1] - 1:24
**conceivable** [1] - 34:21

**concerns** [1] - 11:22
**concludes** [2] - 13:22, 17:1
**conclusion** [2] - 14:9, 18:2
**conferences** [2] - 26:23, 32:6
**Congress** [2] - 16:21, 17:10
**congressional** [2] - 13:25, 14:7
**connection** [1] - 32:8
**consider** [1] - 31:8
**considered** [1] - 13:20
**constitute** [1] - 28:22
**constitutes** [1] - 13:22
**construction** [1] - 29:10
**construed** [1] - 7:15
**contest** [2] - 27:9, 34:4
**context** [1] - 15:17
**continued** [2] - 27:11, 29:22
**continues** [1] - 14:2
**contrary** [3] - 9:1, 12:22, 34:5
**control** [1] - 11:1
**controlling** [5] - 5:24, 12:1, 12:3, 12:13, 12:15, 12:19, 12:21, 17:3, 19:2, 22:23, 30:3, 30:10
**corporate** [1] - 20:19
**Corporation** [1] - 14:15
**corporation** [3] - 3:7, 3:9, 5:3
**counsel** [1] - 2:5
**couple** [1] - 33:14
**COURT** [50] - 1:1, 2:12, 2:14, 2:16, 3:12, 3:15, 3:20, 4:2, 4:18, 4:21, 5:11, 6:2, 6:5, 6:17, 6:23, 8:10, 9:16, 10:12, 10:16, 11:15, 11:17, 12:15, 12:18, 16:6, 18:7, 18:10, 18:13, 19:15, 21:1, 22:9, 22:14, 22:20, 23:14, 23:17, 23:19, 23:22, 24:1, 24:23, 25:1, 25:8, 25:11, 26:2, 26:10, 26:13, 28:7, 30:19, 31:17, 33:10, 33:12, 34:9
**Court** [93] - 1:22, 1:23, 3:11, 4:8, 4:10, 4:13, 4:24, 5:18, 5:25, 6:23, 7:2, 7:10, 7:15, 7:22, 7:23, 7:25, 8:21, 9:3, 9:4, 9:6, 9:7, 10:17, 10:18, 10:21, 10:23, 12:1, 12:9, 12:19, 12:21, 13:5, 13:9, 13:11, 13:13, 13:22, 14:3, 14:5, 14:23, 14:24, 15:1, 15:5, 15:8, 15:14, 15:19, 15:23, 16:5, 16:8, 16:12, 16:14, 17:1, 17:5, 17:8, 17:15, 17:19, 17:22, 17:25, 19:4, 19:7, 19:10, 19:12, 19:13, 19:18, 19:19, 19:22, 20:2, 20:8, 20:9, 20:10, 20:21, 21:11, 21:12, 21:14, 21:15, 21:19, 21:23, 21:24, 21:25, 22:2, 22:3, 22:23, 25:18, 27:1, 29:24, 30:6, 30:8, 30:12, 32:22, 34:21, 34:22, 34:24, 35:2
**court** [28] - 2:1, 4:9, 6:7, 6:18, 6:19, 6:24, 7:6, 7:18, 8:1, 9:1, 9:20, 11:3, 13:9, 13:21, 17:22, 17:24, 21:22, 21:23, 21:24, 22:1, 24:13, 25:22, 28:3, 31:25, 32:17, 32:25, 33:1, 34:22
**court's** [1] - 14:16
**Court's** [10] - 3:5, 8:14, 8:18, 13:8, 14:1, 14:8, 14:20, 16:7, 33:18, 34:1
**Courthouse** [1] - 1:5

**COURTROOM** [1] - 2:2
**courts** [7] - 3:1, 5:9, 9:2, 9:5, 11:4, 14:17, 17:25
**covered** [1] - 16:17
**CROSBY** [9] - 1:16, 2:7, 6:21, 25:24, 26:9, 26:11, 26:14, 33:14, 35:9
**Crosby** [1] - 2:7
**CRR** [1] - 1:22
**Curran** [1] - 2:11
**CURRAN** [1] - 1:20
**current** [1] - 12:13
**DATONICS** [1] - 1:3
**dead** [1] - 25:9
**deal** [2] - 24:2, 32:11
**dealing** [3] - 14:18, 21:18, 32:9
**dealt** [4] - 16:8, 16:9, 16:10, 16:12
**December** [4] - 7:7, 20:11, 26:5
**decide** [1] - 24:7
**decided** [10] - 4:8, 6:18, 7:6, 7:22, 9:7, 9:8, 11:4, 20:6, 28:11
**deciding** [1] - 17:25
**decision** [16] - 4:13, 8:14, 8:18, 12:21, 12:24, 12:25, 13:8, 14:1, 14:20, 14:21, 16:7, 20:9, 22:21, 30:11, 33:19, 34:23
**decisions** [3] - 14:19, 21:19, 21:25
**declared** [2] - 6:12, 6:13
**Defendant** [1] - 1:18
**defendant** [7] - 1:9, 3:2, 3:3, 32:21, 32:23, 32:25, 33:3
**defendant's** [2] - 20:6, 28:17
**Defendants** [1] - 1:17
**defendants** [5] - 19:9, 20:14, 20:17, 20:21, 29:2
**defense** [22] - 5:13, 6:3, 7:9, 8:25, 20:7, 20:8, 20:22, 21:2, 21:4, 21:13, 21:17, 21:19, 24:4, 24:6, 25:12, 27:25, 28:6, 29:1, 30:21, 30:23, 31:2
**defenses** [2] - 6:5, 30:25
**defensive** [2] - 26:15, 26:17
**define** [4] - 16:20, 16:24, 17:9, 17:18
**definite** [1] - 28:17
**definition** [1] - 20:19
**denied** [3] - 5:23, 35:4, 35:5
**deny** [1] - 12:12
**DEPUTY** [1] - 2:2
**deserves** [1] - 8:15
**designed** [2] - 11:1, 16:11
**despite** [1] - 6:6
**determination** [1] - 34:11
**determine** [1] - 13:25
**development** [1] - 14:17
**different** [3] - 8:2, 16:16
**differently** [1] - 11:4
**difficulty** [2] - 9:21, 10:4
**directly** [1] - 12:22
**disagree** [7] - 10:18, 10:19, 10:20, 11:18, 15:2, 21:15, 21:22
**disagreed** [2] - 8:1, 14:5
**discharging** [1] - 21:3
**discovery** [1] - 29:11
**discretion** [1] - 33:20

discussion [1] - 31:18
discussions [1] - 32:7
disingenuous [1] - 4:5
dismiss [19] - 2:19, 7:8, 20:12, 23:23, 24:13, 25:13, 25:15, 25:17, 26:18, 27:19, 28:11, 28:14, 28:18, 28:23, 30:18, 32:2, 32:3, 35:4
dismissed [1] - 24:20
dispute [9] - 2:21, 2:22, 3:16, 3:17, 15:20, 24:22, 24:23, 25:2, 26:20
disputed [1] - 4:25
disrupt [1] - 34:22
district [16] - 3:22, 3:23, 6:18, 6:19, 6:24, 7:6, 9:1, 11:4, 13:21, 14:13, 14:17, 17:11, 21:22, 21:24, 22:1
DISTRICT [3] - 1:1, 1:1, 1:12
District [4] - 13:19, 31:22, 33:22, 34:3
districts [1] - 16:22
docket [2] - 32:5, 32:10
doctrine [9] - 4:19, 4:20, 11:21, 12:3, 13:1, 18:15, 18:16, 29:6, 31:10
done [8] - 22:11, 22:14, 23:15, 24:12, 24:21, 27:18, 28:5, 29:21
doubt [1] - 7:14
down [2] - 7:17, 10:14
drastic [1] - 4:3
drastically [1] - 3:11
draw [2] - 33:18, 34:1
due [3] - 4:4, 8:3, 17:21
early [1] - 25:12
Eastern [2] - 31:22, 34:3
EASTERN [1] - 1:1
eating [1] - 24:16
educate [1] - 10:18
effect [4] - 10:25, 14:6, 26:3, 28:13
either [4] - 9:19, 24:23, 25:5, 31:3
Elbit [1] - 34:2
EMANUEL [1] - 1:17
Emanuel [1] - 2:10
encourage [2] - 19:8, 19:9
end [1] - 27:6
entire [1] - 6:10
entry [1] - 32:10
equitable [6] - 4:19, 4:20, 18:15, 18:16, 29:6, 31:11
equity [2] - 5:21, 11:20
erroneously [1] - 7:22
ESQ [4] - 1:16, 1:20, 1:20, 1:21
essentially [9] - 4:15, 7:16, 7:17, 7:21, 8:3, 8:5, 10:9, 17:17, 29:22
established [1] - 3:3
et [1] - 2:4
evidence [1] - 9:23
exact [5] - 16:20, 16:24, 17:9, 17:13, 17:18
exactly [4] - 12:17, 16:11, 21:12, 22:1
example [1] - 5:4
exclusive [1] - 17:3
excuse [1] - 30:17
exhausted [1] - 33:8
existed [2] - 4:11, 8:21

existence [2] - 7:10
existing [3] - 27:21, 27:22, 28:1
exists [3] - 3:21, 3:23, 31:19
expand [1] - 33:21
expanding [1] - 33:23
explicitly [4] - 6:12, 6:13, 7:11, 8:12
expressed [1] - 26:25
expressing [1] - 24:25
extend [2] - 7:2, 32:1
extending [1] - 17:14
extension [2] - 27:22, 28:1
eyes [1] - 31:19
face [1] - 35:2
fact [10] - 3:17, 6:6, 7:4, 7:21, 9:22, 24:3, 27:11, 28:12, 34:11, 34:20
failed [2] - 27:10, 28:4
failing [1] - 31:3
fails [1] - 25:16
failure [3] - 32:2, 32:4, 35:5
fair [4] - 15:4, 32:16, 32:20, 33:4
fairness [12] - 4:20, 11:21, 29:6, 29:25, 30:1, 31:10, 31:18, 31:20, 33:7, 35:6
faith [1] - 27:20
FanDuel [1] - 14:13
far [5] - 4:7, 4:11, 7:6, 7:15, 19:24
February [2] - 26:4, 32:12
federal [1] - 31:6
Federal [28] - 5:8, 5:25, 12:6, 12:9, 12:13, 12:15, 12:20, 12:23, 12:25, 13:2, 13:10, 13:23, 14:4, 14:6, 14:10, 14:21, 14:22, 15:12, 15:15, 15:22, 15:24, 19:2, 19:6, 22:24, 24:3, 29:20, 30:10, 34:6
file [1] - 7:2
filed [17] - 6:17, 6:25, 8:11, 13:16, 14:16, 20:14, 21:6, 25:7, 25:14, 26:5, 26:6, 26:18, 27:3, 29:2, 31:25, 34:25
files [1] - 31:22
filing [5] - 20:17, 26:21, 28:10, 28:14, 30:18
finally [5] - 16:12, 27:3, 32:14, 32:23, 34:1
first [12] - 3:15, 11:14, 13:12, 13:24, 15:7, 15:22, 18:3, 18:14, 20:10, 26:11, 26:15, 26:17
flew [1] - 35:2
Floor [1] - 1:19
flyer [1] - 5:17
focus [2] - 11:13, 11:15
focused [1] - 12:25
following [1] - 31:24
FOR [1] - 1:11
forget [1] - 28:2
forgetting [2] - 18:21, 30:20
forgive [2] - 3:13, 19:15
forth [2] - 2:24, 11:24
forward [3] - 2:5, 26:23, 26:24
Fourco [17] - 4:9, 6:13, 7:10, 7:13, 8:6, 9:8, 14:1, 14:11, 15:14, 15:22, 16:9, 16:10, 17:1, 17:7, 18:1, 21:9, 25:18
Francisco [1] - 1:19

free [1] - 10:20
Friday [1] - 1:7
frivolous [1] - 19:2
fulfilled [1] - 28:2
full [1] - 27:5
fully [1] - 6:9
future [2] - 19:10, 23:11
gee [1] - 10:2
Gen [1] - 13:17
general [1] - 10:24
generally [1] - 30:21
given [4] - 8:25, 10:20, 25:18
Glass [2] - 14:1, 14:11
GLASSER [1] - 1:12
Godfrey [1] - 2:7
GODFREY [1] - 1:14
Gold [1] - 32:7
good-faith [1] - 27:20
gotchas [1] - 29:5
Grant [1] - 1:22
granted [2] - 20:10, 27:1
grounds [1] - 33:21
Group [2] - 2:8
guess [3] - 26:5, 29:4, 31:7
H(1 [1] - 34:19
H(1)(b)II [1] - 34:19
half [2] - 9:21, 35:1
Handheld [1] - 14:14
hanging [1] - 8:11
happy [2] - 2:17, 25:24
hear [2] - 2:17, 9:18
heard [4] - 13:24, 26:24, 33:22, 33:24
hearing [4] - 2:16, 25:23
Heartland [35] - 3:10, 4:3, 4:6, 4:9, 5:12, 5:23, 6:18, 6:19, 7:1, 7:5, 8:16, 8:19, 9:3, 12:4, 12:7, 13:8, 13:14, 13:22, 14:22, 15:23, 16:12, 16:13, 17:20, 19:23, 20:9, 20:11, 20:13, 23:24, 24:7, 27:2, 29:8, 29:13, 30:11, 31:16
hello [1] - 2:9
hold [1] - 17:2
holding [2] - 13:20, 28:21
Holding [5] - 13:23, 14:2, 14:8, 14:9, 30:3
Honor [49] - 2:9, 2:15, 2:18, 2:21, 3:19, 4:1, 4:16, 4:20, 5:16, 5:21, 6:21, 8:9, 9:15, 10:11, 10:14, 11:11, 11:12, 11:19, 11:24, 12:2, 13:13, 13:15, 14:13, 14:19, 16:5, 18:9, 18:16, 18:25, 19:4, 20:25, 23:7, 23:13, 23:25, 24:11, 24:20, 25:10, 25:24, 26:9, 26:25, 27:18, 28:12, 28:20, 29:16, 30:9, 30:13, 30:17, 33:14, 35:8, 35:9
HONORABLE [1] - 1:12
hope [1] - 19:9
horrible [1] - 10:6
horse [1] - 25:9
hundreds [1] - 5:16
Ian [1] - 2:7
IAN [1] - 1:16
idea [1] - 25:21

*AImondnet, Inc. vs. Yanoct Inc.*

4

**idiot** [1] - 17:23
**ignore** [1] - 8:7
**ignoring** [4] - 7:23, 8:6, 20:1
**Illinois** [1] - 28:16
**impermissibly** [1] - 14:10
**impression** [3] - 13:24, 15:23, 30:1
**improper** [9] - 2:20, 2:23, 3:18, 20:7, 20:22, 28:23, 30:12, 31:1, 32:14
**inappropriate** [3] - 21:2, 24:8, 25:7
**INC** [2] - 1:3, 1:8
**include** [1] - 31:3
**including** [4] - 8:13, 8:18, 31:8, 35:6
**inconvenient** [2] - 9:23, 32:20
**Incorporated** [2] - 2:3, 2:4
**incorporation** [1] - 5:5
**indicate** [1] - 6:7
**indicated** [2] - 26:21, 35:5
**indisputable** [2] - 10:20, 11:2
**inequitable** [1] - 30:15
**infringement** [4] - 16:20, 17:3, 17:9, 31:21
**instead** [1] - 29:22
**intact** [1] - 25:19
**intended** [6] - 16:19, 16:22, 16:24, 17:8, 17:11, 17:16, 17:17, 26:20, 27:16
**INTENT** [1] - 1:3
**interest** [1] - 11:21
**interesting** [7] - 9:2, 9:11, 9:16, 9:18, 10:3, 22:10, 31:18
**International** [1] - 20:4
**interpret** [1] - 14:4
**interpretation** [11] - 3:5, 3:11, 5:1, 13:10, 13:12, 14:6, 15:2, 15:7, 16:3, 30:14, 31:7
**interpreted** [4] - 2:25, 10:21, 13:3, 13:5
**interpreting** [4] - 14:16, 19:7
**interrupt** [1] - 3:12
**interrupted** [1] - 11:8
**interrupting** [1] - 19:16
**intervening** [2] - 13:22, 15:6
**involved** [1] - 24:18
**IQ** [1] - 1:3
**issue** [33] - 3:1, 5:24, 6:1, 6:2, 7:20, 8:3, 8:4, 8:11, 8:23, 9:9, 9:13, 11:4, 11:12, 11:14, 11:17, 11:20, 12:11, 16:8, 16:9, 18:6, 18:11, 20:13, 20:18, 22:5, 22:25, 23:1, 23:3, 23:4, 23:11, 23:13, 29:13, 29:23, 34:12
**issues** [1] - 26:22
**January** [6] - 26:6, 26:7, 27:3, 29:9, 29:17, 31:14
**John** [1] - 2:11
**JOHN** [1] - 1:21
**judge** [4] - 17:23, 21:24, 32:11, 33:20
**JUDGE** [1] - 1:12
**Judge** [1] - 32:7
**judgment** [2] - 17:5, 29:3
**judicial** [1] - 10:6
**July** [3] - 20:4, 20:6, 26:18
**June** [2] - 31:23, 32:14
**jurisdiction** [8] - 3:7, 3:9, 5:3, 5:10,

13:6, 15:11, 28:19, 29:1
**jurisprudential** [1] - 9:12
**Justice** [1] - 8:19
**keep** [2] - 9:13, 31:25
**Kennedy** [1] - 28:24
**kind** [1] - 18:8
**known** [5] - 5:19, 20:13, 20:14, 20:17, 25:6
**Krieger** [1] - 28:24
**labor** [1] - 11:18
**lack** [2] - 5:13, 28:18
**language** [4] - 7:13, 8:13, 15:10, 22:8
**last** [6] - 2:24, 3:5, 4:2, 4:25, 20:4, 29:20
**law** [71] - 3:25, 4:4, 4:7, 4:11, 4:24, 5:4, 5:7, 5:17, 5:24, 5:25, 8:16, 8:17, 8:20, 8:21, 9:9, 9:17, 11:5, 11:12, 12:1, 12:3, 12:6, 12:14, 12:16, 12:19, 12:20, 13:8, 13:23, 15:1, 15:3, 15:9, 15:10, 15:16, 15:18, 15:20, 15:21, 15:25, 16:2, 16:13, 18:22, 19:1, 19:2, 19:7, 19:18, 19:19, 19:20, 19:23, 19:24, 21:5, 21:8, 22:24, 23:4, 24:11, 24:12, 24:19, 25:3, 25:6, 27:21, 27:22, 28:1, 28:11, 29:16, 29:19, 30:2, 30:3, 30:10, 34:18
**lawyer** [5] - 6:9, 9:2, 10:8, 21:3
**lawyers** [5] - 9:19, 10:8, 10:18, 19:25, 28:5
**layman** [2] - 9:17, 10:2
**learned** [3] - 17:22, 17:24, 17:25
**least** [2] - 4:11, 19:17
**leave** [1] - 7:14
**legal** [1] - 33:15
**legions** [1] - 26:16
**legitimate** [1] - 21:16
**LEO** [1] - 1:12
**light** [1] - 12:21
**limit** [1] - 10:25
**limits** [4] - 16:20, 16:24, 17:9, 17:18
**list** [1] - 10:15
**listed** [3] - 21:17, 31:1, 31:2
**litigate** [1] - 27:13
**litigated** [1] - 20:13
**litigating** [8] - 9:20, 9:21, 10:4, 31:25, 32:17, 32:20, 33:1, 34:25
**litigation** [4] - 16:18, 16:25, 17:4, 17:18
**LLC** [2] - 1:3
**LLP** [2] - 1:14, 1:17
**Lockheed** [1] - 28:20
**look** [6] - 6:14, 14:20, 14:21, 16:3, 16:7, 31:20
**looked** [1] - 29:19
**looking** [3] - 16:1, 18:1
**lost** [2] - 5:24, 6:2
**lower** [2] - 6:7, 8:1
**MacNeil** [1] - 33:19
**magistrate** [1] - 32:11
**manifestly** [1] - 4:23
**March** [6] - 6:17, 6:20, 20:15, 31:23, 32:1
**matter** [4] - 5:21, 13:24, 24:3, 34:11

**matters** [1] - 32:8
**mcKEE** [1] - 1:21
**McKee** [1] - 2:11
**mean** [5] - 5:16, 5:18, 7:15, 10:22, 15:10
**means** [4] - 5:9, 8:7, 21:15, 25:19
**meant** [2] - 5:5, 7:14
**mentioned** [2] - 16:23, 17:12
**merely** [1] - 14:3
**merits** [2] - 2:22, 3:16
**middle** [1] - 11:9
**might** [9] - 9:16, 10:2, 12:9, 19:7, 19:10, 21:24, 23:1, 25:25, 29:17
**mischief** [1] - 19:8
**misspoke** [1] - 34:9
**modified** [1] - 21:21
**moment** [1] - 34:25
**month** [5] - 6:25, 7:1, 7:5, 20:4
**months** [2] - 25:14, 31:24
**most** [1] - 23:8
**motion** [42] - 2:3, 2:14, 2:19, 2:20, 2:22, 7:2, 7:3, 7:7, 7:8, 12:2, 14:16, 20:12, 20:19, 23:23, 26:17, 26:20, 26:21, 26:24, 27:4, 27:10, 28:10, 28:14, 28:17, 28:21, 28:23, 29:2, 29:17, 30:18, 32:1, 32:2, 32:3, 32:10, 32:12, 32:14, 33:5, 33:18, 33:21, 33:23, 33:25, 35:4
**move** [6] - 10:5, 26:15, 26:17, 26:23, 32:18
**moved** [2] - 25:13, 28:18
**moving** [3] - 25:15, 25:17, 32:24
**MR** [52] - 2:7, 2:9, 2:13, 2:15, 2:18, 3:14, 3:19, 4:1, 4:16, 4:19, 4:22, 5:15, 6:4, 6:16, 6:21, 8:9, 9:15, 10:11, 10:13, 11:11, 11:16, 11:19, 12:17, 12:23, 18:5, 18:8, 18:11, 18:14, 20:24, 22:5, 22:13, 22:15, 22:21, 23:16, 23:18, 23:21, 23:25, 24:10, 24:25, 25:4, 25:10, 25:24, 26:9, 26:11, 26:14, 28:8, 31:7, 33:8, 33:11, 33:14, 35:8, 35:9
**must** [4] - 17:6, 27:8, 30:22, 30:24
**namely** [1] - 25:17
**necessitate** [1] - 14:8
**need** [1] - 34:13
**needs** [1] - 26:15
**Nevada** [1] - 14:14
**never** [4] - 9:6, 15:23, 16:4, 26:4
**NEW** [1] - 1:1
**new** [3] - 14:17, 17:19, 28:9
**New** [4] - 1:5, 9:25, 31:22, 33:22
**newly** [1] - 14:4
**Next** [1] - 13:17
**nice** [2] - 10:16, 31:17
**non** [1] - 33:24
**North** [1] - 13:19
**notable** [1] - 2:20
**nothing** [4] - 8:24, 9:17, 14:9, 17:19
**notice** [27] - 11:23, 12:7, 12:11, 18:17, 22:15, 22:25, 23:5, 23:9, 23:12, 23:18, 23:22, 24:7, 24:17, 26:4, 26:7, 26:19, 27:14, 27:15, 29:12, 30:5, 30:9, 30:16,

31:12, 31:13, 31:14
**notion** [2] - 27:14, 33:17
**notwithstanding** [1] - 29:23
**nullity** [1] - 33:18
**numbers** [1] - 16:16
**NyCal** [1] - 33:22
**object** [2] - 22:22, 27:10
**objection** [2] - 26:15, 27:17
**obligation** [4] - 24:13, 27:20, 27:24, 28:2
**obligations** [1] - 28:3
**observation** [2] - 4:3, 10:24
**observes** [1] - 20:21
**obviously** [1] - 8:10
**OF** [2] - 1:1, 1:11
**officer** [1] - 24:13
**officers** [1] - 28:3
**Official** [1] - 1:23
**old** [2] - 13:1, 15:3
**one** [5] - 5:15, 9:16, 10:16, 27:8, 30:23
**open** [1] - 2:1
**operated** [1] - 30:14
**operating** [1] - 5:1
**opined** [1] - 15:24
**opinion** [1] - 17:22
**opinions** [1] - 13:21
**opposes** [1] - 23:23
**opposing** [1] - 13:21
**opposite** [2] - 21:12, 26:21
**ORAL** [1] - 1:1
**order** [3] - 13:25, 27:7, 32:11
**Orthosie** [1] - 34:2
**outcome** [3] - 18:20, 30:7, 31:16
**outset** [1] - 29:11
**overrule** [5] - 4:13, 14:3, 21:25, 22:2, 34:22
**overruled** [1] - 19:3
**overruling** [1] - 15:14
**overturn** [1] - 14:10
**overturned** [1] - 21:20
**p.m** [3] - 1:8, 2:1, 35:10
**page** [3] - 28:13, 28:20, 28:25
**papers** [1] - 11:25
**paragraph** [2] - 3:20, 24:24
**particular** [1] - 3:1
**parties** [4] - 19:5, 30:1, 31:25, 32:16
**party** [4] - 5:15, 11:22, 31:2, 33:20
**passage** [1] - 15:19
**patent** [11] - 6:11, 11:1, 14:7, 16:17, 16:20, 16:24, 17:3, 17:9, 17:18, 20:20, 31:21
**patience** [1] - 33:9
**PATRICK** [1] - 1:20
**Patrick** [1] - 2:11
**peep** [1] - 26:18
**people** [2] - 5:16, 6:5
**perfectly** [6] - 10:3, 21:4, 21:13, 21:16, 21:19
**Performance** [1] - 13:17
**perhaps** [4] - 6:7, 6:9, 10:18, 34:9

**period** [2] - 27:6, 32:8
**permitting** [1] - 33:20
**personal** [8] - 3:7, 3:9, 5:2, 5:10, 13:6, 15:10, 28:19, 29:1
**persuasive** [1] - 6:8
**philosophic** [1] - 9:12
**place** [2] - 3:4, 33:4
**plaintiff** [16] - 2:8, 2:21, 3:7, 3:16, 5:5, 5:11, 18:17, 22:11, 22:13, 23:14, 23:15, 23:16, 23:22, 23:23, 23:25, 31:21
**Plaintiffs** [3] - 1:4, 1:14, 1:15
**play** [1] - 23:12
**pleading** [6] - 12:12, 24:5, 30:22, 30:24, 30:25, 31:4, 31:15
**point** [12] - 12:2, 15:19, 18:14, 18:15, 21:18, 22:11, 22:13, 24:16, 25:4, 25:5, 27:18, 28:14
**pointed** [3] - 15:13, 15:15, 24:19
**points** [2] - 18:12, 33:15
**portion** [1] - 22:19
**position** [1] - 19:3
**possibility** [1] - 27:23
**postdated** [1] - 13:4
**potentially** [1] - 28:5
**precise** [2] - 7:16, 20:18
**precisely** [2] - 4:8, 17:7
**preclude** [1] - 6:3
**precludes** [1] - 7:24
**predict** [1] - 23:11
**prejudice** [2] - 18:18, 30:3
**preserve** [1] - 28:5
**pretty** [2] - 10:2, 30:23
**prevailing** [1] - 15:8
**prevent** [1] - 8:24
**prevented** [3] - 25:15, 25:20, 25:21
**primarily** [1] - 13:9
**problem** [1] - 32:18
**procedurally** [1] - 27:17
**procedure** [1] - 31:6
**Procedure** [2] - 24:4, 34:6
**proceeded** [2] - 26:22, 26:23
**proceedings** [1] - 29:9
**Proceedings** [2] - 1:24, 35:10
**produced** [1] - 1:25
**Products** [2] - 13:17, 14:14
**professional** [1] - 21:3
**proper** [3] - 3:2, 3:8, 34:4
**protective** [1] - 32:10
**provide** [2] - 24:4, 31:13
**provided** [3] - 22:25, 23:8, 23:12
**provides** [2] - 26:12, 26:14
**providing** [1] - 13:5
**provision** [4] - 5:14, 6:11, 17:3, 17:14
**provisions** [1] - 17:5
**purported** [1] - 27:7
**purportedly** [1] - 27:12
**purpose** [2] - 16:11, 31:13
**purposes** [2] - 20:19, 34:5
**pursue** [1] - 29:23

**put** [12] - 12:12, 18:18, 23:5, 24:6, 26:4, 26:7, 26:19, 27:14, 27:15, 30:5, 31:14, 34:15
**qua** [1] - 33:23
**questioned** [1] - 27:18
**questions** [1] - 25:25
**Quinn** [1] - 2:10
**QUINN** [1] - 1:17
**quite** [2] - 7:19, 26:20
**quote** [1] - 13:20
**quoted** [1] - 22:8
**raise** [2] - 7:9, 27:25
**raised** [2] - 24:5, 27:9
**rather** [1] - 22:21
**read** [3] - 16:14, 16:15, 22:17
**reading** [2] - 7:13, 15:4
**reads** [1] - 21:5
**ready** [1] - 2:16
**reaffirmed** [2] - 4:9, 6:13
**really** [8] - 4:12, 9:9, 9:24, 10:19, 17:23, 19:15, 19:16
**reason** [3] - 14:25, 16:21, 17:10
**reasonable** [1] - 27:21
**reasons** [2] - 20:10, 35:5
**recent** [1] - 20:3
**recognize** [1] - 8:23
**recognizes** [1] - 10:17
**record** [5] - 2:6, 33:16, 34:8, 34:15, 35:6
**recorded** [1] - 1:24
**Reebok** [7] - 20:4, 20:16, 22:1, 22:6, 23:6, 23:7, 34:20
**refer** [5] - 30:2, 34:18, 34:19, 34:20
**reference** [1] - 17:22
**referring** [2] - 13:4, 17:12
**refers** [1] - 33:20
**reflected** [1] - 34:8
**regardless** [1] - 30:13
**regular** [1] - 3:3
**rejected** [2] - 13:10, 14:22
**rejecting** [1] - 15:13
**rejection** [1] - 14:8
**rejects** [1] - 20:9
**relatively** [1] - 14:17
**reliance** [1] - 27:11
**relied** [3] - 10:8, 11:6, 19:25
**relief** [2] - 30:21, 30:24
**rely** [1] - 21:13
**relying** [2] - 7:17, 35:1
**Remley** [1] - 28:20
**reply** [4] - 20:6, 28:12, 28:21, 28:25
**Reporter** [2] - 1:22, 1:23
**represent** [1] - 2:13
**required** [2] - 18:24, 30:23
**requires** [2] - 4:12, 4:20
**research** [1] - 21:7
**reservation** [1] - 31:8
**reserve** [7] - 12:10, 20:22, 23:7, 27:7, 27:8, 27:22
**reserved** [7] - 22:7, 23:6, 24:25, 29:7, 33:6, 34:10

Case: 18-103   Document: 2   Page: 160   Filed: 10/20/2017
*Almondnet, Inc. vs. Yahoo! Inc.*

6

**reserves** [1] - 3:24
**reserving** [10] - 8:12, 8:13, 18:20, 23:1, 23:10, 26:7, 27:15, 29:14, 31:15, 34:4
**residency** [1] - 20:19
**resides** [6] - 3:2, 3:6, 5:2, 5:5, 5:9, 15:10
**resources** [1] - 10:7
**respect** [16] - 3:17, 4:2, 4:4, 6:10, 6:11, 7:20, 8:4, 8:7, 10:7, 17:21, 21:8, 26:8, 31:5, 32:6, 33:17
**respectful** [1] - 17:24
**respond** [3] - 8:9, 20:24, 30:19
**responding** [1] - 20:16
**response** [1] - 26:10
**responsibility** [1] - 21:4
**responsive** [5] - 24:5, 30:22, 30:25, 31:4, 31:15
**result** [5] - 12:20, 29:8, 30:17, 30:18
**reverse** [1] - 19:7
**reversed** [2] - 17:6, 21:21
**review** [1] - 32:5
**revised** [1] - 16:17
**rights** [4] - 18:20, 26:8, 27:12, 31:15
**rise** [1] - 2:2
**risks** [1] - 24:17
**RPR** [1] - 1:22
**Rule** [12] - 5:6, 26:11, 26:14, 27:20, 27:24, 28:17, 28:23, 30:20, 31:3, 34:18, 34:19
**rule** [2] - 6:12, 31:6
**ruled** [3] - 12:2, 19:4, 22:23
**Rules** [2] - 24:3, 34:6
**run** [1] - 34:5
**San** [1] - 1:19
**satisfied** [2] - 5:2, 10:4
**Seattle** [1] - 1:16
**Second** [1] - 33:19
**Section** [1] - 16:17
**Sections** [1] - 3:22
**sections** [1] - 3:24
**see** [2] - 22:17, 34:12
**SENIOR** [1] - 1:12
**sense** [1] - 8:25
**sentence** [2] - 11:9, 27:6
**separate** [1] - 18:22
**September** [1] - 1:7
**set** [3] - 2:24, 11:24, 12:4
**several** [1] - 20:10
**shall** [1] - 30:2
**sheet** [1] - 32:5
**shouted** [1] - 22:12
**side** [2] - 9:19, 12:8
**sides** [1] - 30:14
**sidetrack** [1] - 18:8
**similar** [1] - 20:22
**simply** [3] - 25:11, 25:12, 28:4
**Simpson** [1] - 13:17
**sine** [1] - 33:23
**situation** [1] - 4:22
**skepticism** [1] - 26:25
**sole** [1] - 17:2

**someplace** [1] - 9:24
**somewhere** [1] - 4:7
**soon** [1] - 20:20
**sorry** [3] - 6:22, 11:8, 26:13
**sorts** [1] - 19:8
**Southern** [2] - 28:16, 33:22
**specific** [6] - 9:13, 10:25, 16:9, 16:15, 18:18, 18:19
**specifically** [8] - 10:24, 12:7, 18:23, 20:16, 22:7, 22:25, 24:4, 25:1
**start** [2] - 3:15, 10:6
**started** [1] - 18:15
**state** [3] - 2:5, 5:5, 32:3
**statement** [3] - 4:5, 22:6, 28:18
**statements** [1] - 13:7
**states** [1] - 13:20
**STATES** [2] - 1:1, 1:12
**States** [12] - 1:5, 3:8, 3:10, 7:24, 8:1, 10:21, 12:19, 17:2, 20:2, 21:14, 22:3, 35:3
**status** [1] - 26:23
**statute** [16] - 2:25, 3:1, 5:2, 10:25, 11:1, 13:1, 13:2, 14:5, 14:7, 15:6, 15:25, 16:3, 16:17, 17:12, 17:13, 31:9
**statutes** [2] - 16:15, 29:5
**stay** [1] - 25:16
**stenography** [1] - 1:24
**still** [3] - 9:8, 15:3, 25:19
**Stonite** [16] - 4:8, 4:11, 6:13, 7:9, 7:13, 8:6, 9:7, 10:23, 16:7, 16:9, 16:15, 16:25, 18:1, 19:24, 21:8, 25:18
**stop** [2] - 22:9, 27:6
**story** [1] - 9:18
**strange** [1] - 5:11
**Street** [1] - 1:18
**submission** [1] - 13:18
**submit** [3] - 15:4, 16:1, 18:22
**subsequent** [1] - 28:22
**subsequently** [1] - 28:18
**substantive** [1] - 29:9
**suddenly** [1] - 32:18
**suggest** [1] - 16:6
**suggesting** [1] - 11:17
**Suite** [1] - 1:15
**suits** [4] - 16:21, 16:22, 17:10, 17:11
**SULLIVAN** [1] - 1:17
**summary** [1] - 29:3
**superseded** [1] - 14:1
**supplement** [1] - 13:16
**supplemental** [1] - 13:18
**supplemented** [2] - 10:22, 17:4
**supported** [1] - 28:11
**suppose** [2] - 31:4, 31:18
**Supreme** [69] - 3:11, 4:8, 4:10, 4:13, 4:23, 5:17, 7:10, 7:15, 7:23, 7:25, 8:14, 8:18, 9:3, 9:4, 9:6, 9:7, 10:21, 12:9, 12:19, 12:21, 13:4, 13:7, 13:9, 13:11, 13:13, 14:1, 14:3, 14:5, 14:8, 14:20, 14:23, 14:24, 15:1, 15:5, 15:8, 15:14, 15:19, 15:23, 16:5, 16:8, 17:15, 17:25, 19:4, 19:7, 19:10, 19:13, 19:18,

19:19, 19:22, 20:1, 20:8, 20:10, 20:21, 21:11, 21:14, 21:19, 21:25, 22:3, 22:23, 25:18, 27:1, 29:24, 30:6, 30:8, 30:11, 32:22, 34:22, 34:24, 35:2
**survived** [2] - 16:19, 17:16
**SUSMAN** [1] - 1:14
**Susman** [1] - 2:7
**TC** [27] - 3:10, 4:3, 4:6, 4:9, 5:12, 5:23, 8:16, 9:2, 12:7, 13:8, 13:13, 13:22, 14:21, 15:23, 16:12, 16:13, 17:19, 19:22, 20:9, 20:13, 23:23, 24:7, 27:2, 29:8, 29:13, 30:11, 31:16
**technical** [1] - 29:5
**Technology** [1] - 14:13
**terminated** [1] - 32:12
**terms** [1] - 31:20
**terribly** [1] - 6:8
**Texas** [1] - 34:3
**THE** [50] - 1:12, 2:12, 2:14, 2:16, 3:12, 3:15, 3:20, 4:2, 4:18, 4:21, 5:11, 6:2, 6:5, 6:17, 6:23, 8:10, 9:16, 10:12, 10:16, 11:15, 11:17, 12:15, 12:18, 16:6, 18:7, 18:10, 18:13, 19:15, 21:1, 22:9, 22:14, 22:20, 23:14, 23:17, 23:19, 23:22, 24:1, 24:23, 25:1, 25:8, 25:11, 26:2, 26:10, 26:13, 28:7, 30:19, 31:17, 33:10, 33:12, 34:9
**theme** [1] - 29:4
**therefore** [3] - 14:2, 17:6
**they've** [1] - 9:19
**thinks** [1] - 21:4
**Third** [1] - 1:15
**Thomas** [1] - 8:20
**thousands** [1] - 5:16
**three** [2] - 25:13, 31:24
**timeline** [1] - 6:14
**Tinnus** [1] - 34:2
**today** [1] - 2:19
**took** [2] - 8:2, 18:8
**track** [1] - 10:19
**TRANSCRIPT** [1] - 1:11
**Transcript** [1] - 1:24
**Transcription** [1] - 1:25
**TRP** [1] - 20:4
**try** [1] - 5:17
**trying** [1] - 25:5
**turned** [1] - 27:1
**twice** [1] - 19:17
**two** [4] - 9:19, 18:11, 25:13, 26:9
**U.S.C** [1] - 3:22
**ultimately** [2] - 14:5, 26:24
**unambiguously** [1] - 27:5
**unavailable** [1] - 5:13
**uncertain** [1] - 25:2
**uncovered** [2] - 21:8, 21:9
**under** [10] - 3:1, 3:22, 3:24, 5:1, 12:6, 12:13, 19:1, 22:23, 30:1, 31:9
**understood** [2] - 30:8, 30:9
**undisturbed** [1] - 4:14
**unfair** [1] - 4:23
**UNITED** [2] - 1:1, 1:12

*Almondnet, Inc. vs. Yahoo! Inc.*

**United** [12] - 1:5, 3:8, 3:10, 7:23, 8:1, 10:21, 12:19, 17:2, 20:2, 21:14, 22:3, 35:2
**unless** [2] - 19:3, 33:6
**unlike** [1] - 23:6
**up** [8] - 14:25, 15:21, 22:16, 24:7, 29:24, 30:6, 31:23
**upcoming** [2] - 8:14, 8:18
**URQUHART** [1] - 1:17
**utter** [1] - 11:9
**valid** [5] - 21:4, 21:13, 21:16, 21:19
**validity** [1] - 6:6
**variety** [1] - 32:8
**VE** [11] - 7:20, 8:25, 9:5, 10:9, 13:23, 14:2, 14:8, 14:9, 17:25, 19:20, 30:2
**venue** [77] - 2:20, 2:22, 2:25, 3:2, 3:3, 3:8, 3:17, 3:21, 3:23, 3:25, 4:4, 5:13, 5:14, 5:23, 6:11, 7:9, 7:20, 8:4, 8:15, 9:10, 9:12, 10:10, 10:24, 10:25, 12:2, 12:13, 12:14, 13:6, 14:7, 16:20, 16:24, 17:3, 17:9, 17:14, 17:18, 18:24, 20:7, 20:12, 20:20, 20:23, 21:8, 21:18, 22:18, 22:22, 23:10, 24:8, 24:14, 24:21, 24:22, 25:2, 25:7, 25:17, 25:18, 26:8, 26:19, 26:20, 26:22, 27:5, 27:9, 27:17, 27:23, 28:4, 28:23, 29:8, 29:21, 29:23, 30:7, 30:12, 31:1, 32:15, 32:21, 34:4, 34:5, 34:12, 35:5
**VERHOEVEN** [45] - 1:20, 2:9, 2:13, 2:15, 2:18, 3:14, 3:19, 4:1, 4:16, 4:19, 4:22, 5:15, 6:4, 6:16, 8:9, 9:15, 10:11, 10:13, 11:11, 11:16, 11:19, 12:17, 12:23, 18:5, 18:8, 18:11, 18:14, 20:24, 22:5, 22:13, 22:15, 22:21, 23:16, 23:18, 23:21, 23:25, 24:10, 24:25, 25:4, 25:10, 28:8, 31:7, 33:8, 33:11, 35:8
**Verhoeven** [1] - 2:10
**versus** [8] - 2:4, 13:17, 14:13, 14:14, 20:4, 28:16, 28:20, 28:24
**viable** [1] - 28:6
**view** [8] - 7:19, 8:2, 9:6, 9:8, 11:18, 12:18, 34:17, 34:18
**voluntarily** [1] - 28:13
**waive** [5] - 18:23, 19:11, 20:7, 23:5, 23:13
**waived** [15] - 8:4, 8:8, 9:9, 10:10, 23:24, 24:2, 24:5, 24:6, 24:8, 24:9, 26:4, 27:17, 28:10, 34:12
**waiver** [25] - 4:16, 11:13, 11:20, 11:22, 12:11, 12:24, 18:5, 18:11, 18:22, 22:4, 22:5, 23:3, 23:4, 23:12, 24:3, 24:16, 28:15, 28:16, 28:22, 29:1, 29:15, 29:16, 29:25, 31:4, 34:18
**waivers** [1] - 29:6
**waives** [1] - 31:2
**waiving** [1] - 27:12
**warranted** [1] - 28:1
**Washington** [1] - 1:16
**waste** [1] - 10:6
**week** [1] - 14:19

**welcome** [1] - 2:12
**Western** [1] - 13:19
**withdraw** [3] - 24:1, 28:13, 32:3
**withdrawal** [1] - 33:17
**withdrawing** [1] - 28:21
**withdrawn** [5] - 23:17, 23:19, 26:25, 27:4, 29:2
**withdrew** [1] - 28:17
**witnesses** [1] - 9:23
**word** [1] - 3:6
**write** [3] - 34:10, 34:13, 34:17
**writing** [1] - 34:15
**Yahoo** [6] - 2:4, 2:13, 3:21, 3:23, 3:24, 8:15
**YAHOO** [1] - 1:8
**year** [10] - 9:20, 21:6, 21:7, 27:3, 29:9, 31:24, 32:17, 32:24, 35:1
**years** [9] - 2:25, 3:5, 4:14, 5:1, 12:6, 15:9, 15:25, 22:24, 29:21
**YORK** [1] - 1:1
**York** [4] - 1:5, 9:25, 31:22, 33:23

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ALMONDNET, INC., DATONICS, LLC,
and INTENT IQ, LLC,

               Plaintiffs,                              ORDER
                                                  16-CV-1557 (ILG)(SMG)

               - against -

YAHOO! INC.,

               Defendant.
-------------------------------------------------------x
GLASSER, Senior United States District Judge:

       The defendant has moved this Court for an Order that would dismiss this case which has

been litigated here since March 2016.  The motion is predicated upon an assertion that venue is

improperly laid here, made in the wake of *TC Heartland LLC v. Kraft Foods Group Brands LLC,*

137 S. Ct. 1514 (2017).

       Oral argument on the motion was heard on September 1, 2017.  At its conclusion, at the

Court's request, the plaintiff submitted a proposed Order, ECF 84, which fairly summarizes the

record of that argument, but is not signed, to avoid a whiff of plagiarism.  In its stead, I direct this

modest substitute be entered.

       For all the reasons reflected on the record of that hearing, the motion to dismiss is

DENIED.  The plaintiffs' cross-motion to transfer is, therefore, DENIED as moot.


       SO ORDERED.

Dated:       Brooklyn, New York
              September 7, 2017           _____/s/_____
                                         I.  Leo Glasser
                                         Senior United States District Judge

October 6, 2017


Magistrate Judge Steven M. Gold
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 13D South
Brooklyn, New York 11201


Re:    *AlmondNet, Inc. et al v. Yahoo! Inc.*, No. 1:16-cv-01557-ILG-SMG (E.D.N.Y.)

Dear Magistrate Judge Gold:

Pursuant to the Court's September 29, 2017 Order the parties have met and conferred regarding a proposed amendment to the schedule in connection with Plaintiffs' supplementation of their response to Yahoo's Interrogatory No. 2.  Per the Court's directive, the parties respectfully request the following amendments to the case schedule:

| Event | Current Date | Proposed New Date |
|---|---|---|
| Plaintiffs to Provide Substantive Response to Yahoo's Interrogatory No. 2 | | October 20, 2017 |
| Yahoo to serve Preliminary Election of Asserted Prior Art complying with Phased Limits Order | October 10, 2017 | November 14, 2017 |
| Plaintiffs to file opening claim construction brief per P.R. 4-5(a) | November 3, 2017 | December 8, 2017 |
| Yahoo to file response to opening claim construction brief per P.R. 4-5(b) | November 17, 2017 | December 22, 2017 |
| Plaintiffs to file reply to response to opening claim construction brief per P.R. 4-5(c) | November 27, 2017 | January 10, 2018 |
| Hearing on claim construction | December 11, 2017, if available | January 26, 2018, if available |
| Status conference | January 10, 2018, if available | February 26, 2018, if available |

Respectfully submitted,

_/s/ Ian B. Crosby_
Ian B. Crosby
(Admitted pro hac vice)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
(206) 516-3880
icrosby@susmangodfrey.com

Counsel for Plaintiffs

_/s/ Patrick D. Curran_
Patrick D. Curran
patrickcurran@quinnemanuel.com
QUINN EMANUEL URQUHART &
 SULLIVAN LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

Counsel for Yahoo! Inc.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ALMONDNET, INC., DATONICS, LLC, and INTENT IQ, LLC, | |
| Plaintiffs, | Civil Action No. 16-cv-1557-ILG-SMG |
| v. | **Jury Trial Demanded** |
| YAHOO! INC., | |
| Defendant. | |

## YAHOO! INC.'S NOTICE OF WITHDRAWAL OF MOTION TO DISMISS

Defendant Yahoo! Inc. ("Yahoo") filed a motion to dismiss the Complaint on July 11, 2016. (Dkt. 22.) Subsequent to that motion, on October 28, Yahoo indicated in a joint update letter to the Court that Yahoo was withdrawing its motion in light of supplemental disclosures by AlmondNet, subject to Yahoo's reservations of rights – including Yahoo's right to strike infringement contentions that fail to meet the requirements of the patent local rules, or to seek early summary judgment of non-infringement based on AlmondNet's theories of infringement. (Dkt. 40 at 1.) To the extent necessary, and to avoid any potential for confusion, Yahoo is now filing this formal notice of withdrawal for its pending motion (Dkt. 22), subject to its reservation of rights.

1

Dated: December 13, 2016

Respectfully submitted,

By: /s/ Patrick D. Curran
Charles Verhoeven
Jennifer A. Kash (admitted *pro hac vice*)
Brian E. Mack (admitted *pro hac vice*)
QUINN EMANUEL URQUHART &
     SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600

Patrick D. Curran
John T. McKee
QUINN EMANUEL URQUHART &
     SULLIVAN LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

*Attorneys for Yahoo! Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Patrick D. Curran, hereby certify that on December 13, 2016, I electronically filed the foregoing document using the Court's CM/ECF system, which will send a notice of electronic filing to all persons registered for ECF.

December 13, 2016                                      _/s/ Patrick D. Curran_____

3

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d).

The petition contains **7,683** words according to Microsoft Word's Word Count tool, excluding the parts of the petition exempted by Rule.

2. This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(c)(2).

  **X**  The petition has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in a 14 point Times New Roman font or

\_\_\_\_\_  The petition has been prepared in a monospaced typeface using _____ _____in a \_\_\_ characters per inch_____ font.

October 20, 2017          /s/*Charles K. Verhoeven*
Date

Name: Charles K. Verhoeven
Attorney for Petitioner Yahoo Holdings, Inc.

1

# CERTIFICATE OF SERVICE

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
Misc. No. _____
----------------------------------------------------------------)
IN RE YAHOO HOLDINGS, INC.,
                                   *Petitioner.*
----------------------------------------------------------------)

     I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

     Counsel Press was retained by QUINN EMANUEL URQUHART & SULLIVAN, LLP, attorneys for Petitioners to print this document.  I am an employee of Counsel Press.

     On the **20th day of October, 2017**, I served the within **Petition for Writ of Mandamus** upon:

William Christopher Carmody
Ian B. Crosby
Mark Howard Hatch-Miller
Susmen Godfrey LLP
1301 Avenue of the Americas
32nd floor
New York, NY 10019
Tel.: 212-336-8330
Fax: 212-336-8340
bcarmody@susmangodfrey.com
icrosby@susmangodfrey.com
mhatch-miller@susmangodfrey.com

Louis James Hoffman
Hoffman Patent Firm
7689 East Paradise Lane
Suite 2
Scottsdale, AZ 85260
Tel.: 480-948-3295
Fax: 480-948-3387
louis@valuablepatents.com

**via Express Mail,** by causing 2 true copies of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Additional, a copy will be sent to these U.S. District Judges:

Hon. Leo I. Glasser
U.S. District Judge
U.S. District Court for the
Eastern District of New York
225 Cadman Plaza East
Courtroom 8B South
Brooklyn, New York 11201

**via Express Mail,** by causing 2 true copies of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Unless otherwise noted, the required copies have been filed via the Court's CM/ECF on this date.

October 20, 2017

John C. Kruesi, Jr.
Counsel Press